# 24-1241

## In the
## United States Court of Appeals for the Second Circuit

CASE LEROY,

*Plaintiff - Appellant*,

v.

LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT,
JOHN P. EVANS, in his capacity as Superintendent of Schools of
Livingston Manor Central School District,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Southern District of New York, 7:21-cv-06008-NSR-AEK

## JOINT APPENDIX OF APPELLANT CASE LEROY
## Volume 1 of 2 (Pages A-1 to A-296)

CHELSEA WEISBORD
STEVEN C. STERN
SOKOLOFF STERN LLP
179 Westbury Avenue, Suite 201
Carle Place, New York 11514
(516) 334-4500
*Attorneys for Defendants-Appellees*

ADAM EZRA SCHULMAN
HAMILTON LINCOLN LAW
INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
(610) 457-0856

– and –

JEROME T. DORFMAN
LAW OFFICES OF
JEROME T. DORFMAN
8 Breezy Hill Road
Parksville, New York 12768
(845) 747-9403

*Attorneys for Plaintiff-
Appellant Case Leroy*

i

## TABLE OF CONTENTS

**Page**

District Court Docket Entries .................................... A-1

Notice of Removal, by Defendants, filed
July 13, 2021.......................................... A-15

Exhibit A to Notice -
Summons and Verified Complaint, dated
June 16, 2021 ......................................... A-18

Exhibit B to Notice -
Amended Verified Complaint, dated July 1, 2021 . A-33

Verified Answer, filed August 13, 2021 .................... A-48

Notice of Motion, by Defendants, for an Order
granting Summary Judgment, dated
March 24, 2023, filed June 12, 2023 .................... A-57

Declaration of Chelsea Weisbord, for Defendants, in
Support of Motion, dated March 24, 2023, filed
June 12, 2023 ......................................... A-59

Exhibit A to Weisbord Declaration -
Amended Verified Complaint, dated July 1, 2021
(Reproduced herein at pp. A-33-A-47)

Exhibit B to Weisbord Declaration -
Verified Answer, filed August 13, 2021
(Reproduced herein at pp. A-48-A-56)

Exhibit C to Weisbord Declaration -
Excerpts of Deposition Transcript of Case Leroy,
dated August 5, 2022 ............................. A-66

Exhibit D to Weisbord Declaration -
Excerpts of Deposition Transcript of Case Leroy,
dated September 16, 2022...................................... A-137

ii

**Page**

Exhibit E to Weisbord Declaration -
Excerpts of Deposition Transcript of Gordon
Leroy, dated September 20, 2022 ......................... A-160

Exhibit F to Weisbord Declaration -
Excerpts of Deposition Transcript of Amy Leroy,
dated October 21, 2022............................................ A-173

Exhibit G to Weisbord Declaration -
Excerpts of Deposition Transcript of Student A,
dated November 8, 2022........................................ A-186

Exhibit H to Weisbord Declaration -
Excerpts of Deposition Transcript of Student B,
dated November 8, 2022........................................ A-232

Exhibit I to Weisbord Declaration -
Hearing Transcript, dated April 27, 2021 .............. A-256

Exhibit J to Weisbord Declaration -
Photograph posted on Snapchat Account, dated
April 19, 2021........................................................ A-288

Exhibit K to Weisbord Declaration -
Photograph posted by Student A, on Snapchat
Account, dated April 19, 2021 .............................. A-290

Exhibit L to Weisbord Declaration -
Photograph taken March 25, 2021 ........................ A-292

Exhibit M to Weisbord Declaration -
Email from Jillian Hoag to Shirlee Davis, dated
April 20, 2021........................................................ A-294

Exhibit N to Weisbord Declaration -
Email to Shirlee Davis, dated April 19, 2021 ........ A-297

Exhibit O to Weisbord Declaration -
Email to Christian Towsley, dated April 19, 2021 . A-302

iii

|  | Page |
|---|---|
| Exhibit P to Weisbord Declaration - Email to Shirlee Davis, dated April 19, 2021 ........ | A-302 |
| Exhibit Q to Weisbord Declaration - Email from Stand Against Racism in Education ("SARE") to Christopher Hubert and others, dated April 19, 2021 ............................................ | A-306 |
| Exhibit R to Weisbord Declaration - Email from Student to Shirlee Davis, dated April 19, 2021........................................................ | A-309 |
| Exhibit S to Weisbord Declaration - Email from Student to Shirlee Davis, dated April 19, 2021........................................................ | A-312 |
| Exhibit T to Weisbord Declaration - Various Emails from Students to Shirlee, Davis.... | A-316 |
| Exhibit U to Weisbord Declaration - Email from Payton Powell to John Evans and Shirlee Davis, dated April 19, 2021 ...................... | A-327 |
| Exhibit V to Weisbord Declaration - Email from Courtney Lambert to John Evans and Shirlee Davis, dated April 19, 2021 ...................... | A-331 |
| Exhibit W to Weisbord Declaration - Email from Jaspreet Gill to John Evans and Shirlee Davis, dated April 19, 2021 ...................... | A-337 |
| Exhibit X to Weisbord Declaration - Email from Meagan Edwards to John Evans and Shirlee Davis, dated April 20, 2021 ...................... | A-340 |
| Exhibit Y to Weisbord Declaration - Email from Student to Shirlee Davis, dated April 20, 2021........................................................ | A-343 |

iv

**Page**

Exhibit Z to Weisbord Declaration -
Email from Hannah Tuso to John Evans and
Shirlee Davis, dated April 20, 2021 ...................... A-345

Exhibit AA to Weisbord Declaration -
Email from Grady Park to John Evans, dated
April 20, 2021 ......................................................... A-347

Exhibit BB to Weisbord Declaration -
Email from Sophia Xiomara to John Evans and
Shirlee Davis, dated April 20, 2021 ...................... A-351

Exhibit CC to Weisbord Declaration -
Email from Mykenzi Williams to John Evans,
dated April 20, 2021 ............................................... A-353

Exhibit DD to Weisbord Declaration -
Email from Dylan Parks to John Evans, Shirlee
Davise and others, dated April 20, 2021 ............... A-355

Exhibit EE to Weisbord Declaration -
Email from Joya Maritza to John Evans and
Shirlee Davis, dated April 20, 2021 ...................... A-362

Exhibit FF to Weisbord Declaration -
Email from Kelsie Nolan to John Evans and
Shirlee Davis, dated April 20, 2021 ...................... A-364

Exhibit GG to Weisbord Declaration -
Email from Catherine Skalda to John Evans,
Shirlee Davise and others, dated April 20, 2021 ... A-366

Exhibit HH to Weisbord Declaration -
Email from Elena Haskins to John Evans and
Shirlee Davis, dated April 21, 2021 ...................... A-368

Exhibit II to Weisbord Declaration -
Email Chain between John Evans, Jay Quintance
and Robert Dufour, dated April 20, 2021 .............. A-372

v

**Page**

Exhibit JJ to Weisbord Declaration -
Letter from John P. Evans to Livington Manor
Central School District, dated April 20, 2021........ A-375

Exhibit KK to Weisbord Declaration -
Scripts prepared for District Secretaries ............... A-377

Exhibit LL to Weisbord Declaration -
Letter from Shirlee Davis to Mr. and Mrs. Leroy,
dated April 21, 2021 ............................................. A-379

Exhibit MM to Weisbord Declaration -
Confidential Investigation Report prepared by
Bethany A. Centrone............................................. A-381

Exhibit NN to Weisbord Declaration -
Letter from John P. Evans to Gordon and Amy
Leroy, dated April 23, 2021 .................................. A-455

Exhibit OO to Weisbord Declaration -
Finding of Fact and Recommendation to the
Superintendent of Schools Livingston Manor
Central School District ......................................... A-458

Exhibit PP to Weisbord Declaration -
Letter from John P. Evans to Gordon and Amy
Leroy, dated April 28, 2021 .................................. A-463

Exhibit QQ to Weisbord Declaration -
Holding of Long-Term Suspension in Abeyance
and Contract of Conduct, signed May 9, 2021 ...... A-466

Affidavit of John Evans, Defendant, in Support of
Motion, sworn to March 24, 2023, filed
June 12, 2023 ........................................................ A-472

Affidavit of Shirlee Davis, for Defendants, in
Support of Motion, sworn to March 24, 2023,
filed June 12, 2023................................................ A-480

vi

**Page**

Affidavit of Christian Towsley, for Defendants, in
  Support of Motion, sworn to March 23, 2023,
  filed June 12, 2023 ................................................. A-484

Defendants' Local Rule 56.1 Statement of
  Undisputed Material Facts, dated March 24,
  2023, filed June 12, 2023 ...................................... A-487

Defendants' Response to Plaintiff's Statement of
  Material Facts, dated March 24, 2023 .................. A-515

Declaration of Chelsea Weisbord, for Defendants, in
  Further Support of Motion, dated June 9, 2023,
  filed June 12, 2023 ................................................. A-519

Exhibit VV to Weisbord Declaration -
  Excerpts from Telephone Conference Transcript,
  dated May 5, 2022 ................................................. A-528

Exhibit WW to Weisbord Declaration -
  Excerpt from the Livingston Manor Central
  School District's Code of Conduct ........................ A-532

Declaration of Steven C. Stern, for Defendants, in
  Support of Motion, dated June 9, 2023, filed
  June 12, 2023 .......................................................... A-533

Reply Declaration of Jerome T. Dorfman, for
  Plaintiff, in Support of Motion and in Reply to
  Opposition, dated May 19, 2023, filed
  June 12, 2023 (Omitted herein)

Exhibit 1 to Dorfman Reply Declaration -
  Use of Force Essay by Case Leroy ........................ A-536

Statement of Material Facts, by Plaintiff, filed
  June 23, 2023 .......................................................... A-538

vii

**Page**

Declaration of Jerome T. Dorfman, for Plaintiff, in
    Support of his Motion for Summary Judgment,
    dated January 30, 2023, filed June 23, 2023.......... A-541

Exhibit 1 to Dorfman Declaration -
Amended Verified Complaint, dated July 1, 2021
(Reproduced herein at pp. A-33-A-47)

Notice of Appeal, filed May 3, 2024 ........................ A-547

Plaintiff's Response to Defendant's Statement of
    Material Facts, dated May 19, 2023, filed
    June 3, 2024 ........................................................ A-549

Bench Decision, dated June 25, 2021, filed
    June 3, 2024 ........................................................ A-584

A-1

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:21−cv−06008−NSR−AEK

| | |
|---|---|
| Leroy v. Livingston Manor Central School District et al | Date Filed: 07/13/2021 |
| Assigned to: Judge Nelson Stephen Roman | Date Terminated: 04/08/2024 |
| Referred to: Magistrate Judge Andrew E. Krause | Jury Demand: None |
| Case in other court:  Sullivan County, Supreme Court, E2021−968 | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |
| Cause: 42:1983 Civil Rights Act | |

**Plaintiff**

**Case Leroy**                     represented by **Jerome T. Dorfman**
Law Offices of Jerome Dorfman
8 Breezy Hill Road
Parksville, NY 12768
845−747−9403
Email: jdlawny@verizon.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Livingston Manor Central School**      represented by **Chelsea Ella Weisbord**
**District**                                Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, NY 11514
(516)−334−4500
Fax: (516)−334−4501
Email: cweisbord@sokoloffstern.com
*ATTORNEY TO BE NOTICED*

**Steven Charles Stern**
Sokoloff Stern LLP
179 Westbury Avenue,
Carle Place, NY 11514
(516) 334−4500
Fax: (516) 334−4501
Email: sstern@sokoloffstern.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**John P. Evans**                  represented by **Chelsea Ella Weisbord**
*in his capacity as Superintendent of*      (See above for address)
*Schools of Livingston Manor Central*        *ATTORNEY TO BE NOTICED*
*School District*

**Steven Charles Stern**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/13/2021 | 1 | NOTICE OF REMOVAL from Supreme Court, County of Sullivan. Case Number: E2021−968. (Filing Fee $ 402.00, Receipt Number ANYSDC−24788040).Document filed by John P. Evans, Livingston Manor Central School District. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Stern, Steven) (Entered: 07/13/2021) |

A-2

| 07/13/2021 | 2 | CIVIL COVER SHEET filed..(Stern, Steven) (Entered: 07/13/2021) |
|---|---|---|
| 07/14/2021 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Steven Charles Stern. The party information for the following party/parties has been modified: Livingston Manor Central School District. The information for the party/parties has been modified for the following reason/reasons: party text was omitted;. (pc) (Entered: 07/14/2021) |
| 07/14/2021 | | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Steven Charles Stern. The following case opening statistical information was erroneously selected/entered: Fee Status code due (due);. The following correction(s) have been made to your case entry: the Fee Status code has been modified to pd (paid);. (pc) (Entered: 07/14/2021) |
| 07/14/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above−entitled action is assigned to Judge Nelson Stephen Roman. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district−judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf−related−instructions..(pc) (Entered: 07/14/2021) |
| 07/14/2021 | | Magistrate Judge Andrew E. Krause is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018−06/AO−3.pdf. (pc) (Entered: 07/14/2021) |
| 07/14/2021 | | Case Designated ECF. (pc) (Entered: 07/14/2021) |
| 07/20/2021 | 3 | LETTER MOTION for Extension of Time *until August 13, 2021* addressed to Judge Nelson Stephen Roman from Steven C. Stern dated July 20, 2021. Document filed by John P. Evans, Livingston Manor Central School District..(Stern, Steven) (Entered: 07/20/2021) |
| 07/20/2021 | 4 | ORDER granting 3 Letter Motion for Extension of Time. The Court grants Defendants' first request for an extension (to which Plaintiff consents): Defendants shall answer or seek leave to file a motion to dismiss on or before August 13, 2021. Defendants are directed to serve this memorandum endorsement on Plaintiff and to file proof of service on the docket. Plaintiff is directed to file a notice of appearance on the docket. The Clerk of Court is directed to terminate the motion at ECF No. 3. (Motions due by 8/13/2021.) (Signed by Judge Nelson Stephen Roman on 7/20/2021) (rro) (Entered: 07/20/2021) |
| 07/20/2021 | | Set/Reset Deadlines: John P. Evans answer due 8/13/2021; Livingston Manor Central School District answer due 8/13/2021. (rro) (Entered: 07/20/2021) |
| 07/22/2021 | 5 | NOTICE OF APPEARANCE by Chelsea Ella Weisbord on behalf of John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 07/22/2021) |
| 07/22/2021 | 6 | AFFIDAVIT OF SERVICE of Endorsed Letter − Order granting 3 Letter Motion for Extension of Time (Dkt. Ent. 4) served on Case Leroy on July 22, 2021. Service was made by MAIL. Document filed by John P. Evans, Livingston Manor Central School District..(Stern, Steven) (Entered: 07/22/2021) |
| 08/10/2021 | 7 | NOTICE OF APPEARANCE by Jerome T. Dorfman on behalf of Case Leroy..(Dorfman, Jerome) (Entered: 08/10/2021) |
| 08/13/2021 | 8 | ANSWER to Complaint. Document filed by John P. Evans, Livingston Manor Central School District..(Stern, Steven) (Entered: 08/13/2021) |
| 11/09/2021 | 9 | ORDER: The Court waives the Initial Pre−trial Conference and directs the parties to jointly complete a Case Management Plan and Scheduling Order (blank form attached hereto). Said Scheduling Order shall be filed on the docket November 16, 2021. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Andrew E. Krause for general pretrial purposes. The |

A-3

|  |  | parties are directed to contact Judge Krause within seven (7) business days of the date of the Order of Reference to schedule a conference. (Signed by Judge Nelson Stephen Roman on 11/9/2021) (ate) (Entered: 11/09/2021) |
|---|---|---|
| 11/16/2021 | 10 | PROPOSED SCHEDULING ORDER. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 11/16/2021) |
| 04/22/2022 | 11 | CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.) This case is to be tried to a jury. Non–expert depositions shall be completed by May 13, 2022. Expert Deposition due by 8/15/2022. Discovery due by 8/17/2022. Telephone Conference set for 9/28/2022 at 12:00 PM before Judge Nelson Stephen Roman. This conference will be held by AT&T Teleconference. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336–1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 4/22/22) (yv) (Entered: 04/25/2022) |
| 04/22/2022 | 12 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non–dispositive pretrial motions, and settlement). Referred to Magistrate Judge Andrew E. Krause. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 4/22/22) (yv) (Entered: 04/25/2022) |
| 04/26/2022 | 13 | SCHEDULING ORDER: This matter has been referred to Magistrate Judge Andrew E. Krause for general pretrial supervision. ECF No. 12. A telephonic status conference before Magistrate Judge Krause is hereby scheduled for Friday, May 5, 2022, at 11:00 a.m. To access the teleconference, please follow these directions: (1) dial the meeting number: (877) 336–1831; (2) enter the access code: 2751700; and (3) press pound (#) to enter the teleconference as a guest. Should counsel experience any technical issues with the teleconferencing system, please contact Chambers at (914) 390–4070. Telephone Conference set for 5/5/2022 at 11:00 AM before Magistrate Judge Andrew E. Krause. (Signed by Magistrate Judge Andrew E. Krause on 4/26/2022) (ate) (Entered: 04/26/2022) |
| 04/26/2022 | 14 | ORDER: In order to facilitate the progress of pre–trial discovery of this litigation in a just, speedy and inexpensive manner, to ensure compliance with the case management plan, and to prevent the accumulation of unresolved discovery issues, the procedures set forth in this order will be followed for the resolution of discovery disputes. (Signed by Judge Andrew L. Carter, Jr on 4/26/2022) (ate) (Entered: 04/26/2022) |
| 04/28/2022 | 15 | LETTER MOTION to Compel Case LeRoy to Discovery addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated April 28, 2022. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 04/28/2022) |
| 04/28/2022 | 16 | ORDER terminating 15 Letter Motion to Compel. Plaintiff's counsel must respond to this letter by May 3, 2022. The parties should be prepared to discuss these matters at the May 5, 2022 status conference. The Court intends to resolve all outstanding scheduling issues at that time. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause)(Text Only Order) (Krause, Andrew) (Entered: 04/28/2022) |
| 05/02/2022 | 17 | ORDER: The scheduling order at ECF No. 13 mistakenly indicated that the upcoming status conference before Magistrate Judge Krause would take place on Friday, May 5, 2022 at 11:00 a.m. To be clear, the conference will take place on THURSDAY, May 5, 2022, at 11:00 a.m. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause) (Text Only Order) (Krause, Andrew) (Entered: 05/02/2022) |
| 05/05/2022 | 18 | LETTER addressed to Magistrate Judge Andrew E. Krause from Jerome T. Dorfman dated 5/3/22 re: Letter motion to compel discovery. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 05/05/2022) |
| 05/05/2022 |  | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 5/5/2022. Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 5/5/2022. Jerome Dorfman |

A-4

| | | appeared by telephone on behalf of the plaintiff. Chelsea Weisbord appeared by telephone on behalf of the defendant. The plaintiff is directed to serve, by 5/12/2022, initial Fed. R. Civ. P. 26(a)(1)(A) disclosures, along with any initial requests for production and interrogatories. The plaintiff is further directed to respond to the defendants initial discovery requests by 5/12/2022. A letter from the defendant raising any affirmative discovery disputes is to be filed by 6/6/2022; any responsive letter from the plaintiff is to be filed by 6/10/2022. Next conference to be held on 6/14/2022 at 11:00 a.m., in person in Courtroom 250 if there are any discovery disputes; by telephone, using the same teleconference line as the 5/5/2022 conference, if there are not. (Court Reporter AT&T) (sbr) (Entered: 05/06/2022) |
|---|---|---|
| 05/06/2022 | 19 | PROPOSED CASE MANAGEMENT PLAN. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 05/06/2022) |
| 05/06/2022 | 20 | CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried by a jury. Joinder of additional parties must be accomplished by December 17, 2021. Amended pleadings may be filed until February 4, 2022. By June 6, 2022, defendants shall submit a letter to the Court to address any outstanding discovery deficiencies in advance of the June 14, 2022 status conference; plaintiff shall submit any response to the letter by June 10, 2022. Non−expert depositions shall be completed by July 13, 2022. This conference will be held by AT&T Teleconference. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336−1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. SO ORDERED. Amended Pleadings due by 2/4/2022. Expert Deposition due by 9/14/2022. Discovery due by 9/14/2022. Status Conference set for 6/14/2022 at 11:00 AM before Magistrate Judge Andrew E. Krause. Telephone Conference set for 9/28/2022 at 12:00 PM before Judge Nelson Stephen Roman. (Signed by Magistrate Judge Andrew E. Krause on 5/6/2022) (tg) (Entered: 05/06/2022) |
| 06/02/2022 | 21 | LETTER addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated 06/06/2022 re: outstanding discovery deficiencies in advance of the June 14, 2022 status conference. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/06/2022) |
| 06/14/2022 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 6/14/2022. Plaintiff's counsel failed to appear. Chelsea Weisbord appeared on behalf of the defendants. Adjourned to 6/17/22 at 10:30 am. Parties are directed to call the teleconference line at 877−336−1831, access code 2751700. (Court Reporter AT&T) (sbr) (Entered: 06/14/2022) |
| 06/14/2022 | 22 | LETTER addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated 06/14/2022 re: documents requested by Court in advance of upcoming status conference. Document filed by John P. Evans, Livingston Manor Central School District. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Weisbord, Chelsea) (Entered: 06/14/2022) |
| 06/14/2022 | 23 | ORDER: Plaintiff's counsel failed to appear at the telephonic status conference that was scheduled for June 14, 2022. Accordingly, the status conference is hereby rescheduled for Friday, June 17, 2022, at 10:30 a.m. and shall once again take place via teleconference, as set forth below. On or before June 16, 2022, Plaintiff must file a letter responding to Defendants' June 6, 2022 letter (ECF No. 21), which raised certain disputes regarding Plaintiff's discovery responses. These issues will be addressed at the June 17, 2022 conference. Counsel should be prepared to discuss the issues in greater detail. If Plaintiff fails to respond to the June 6, 2022 letter, the Court may deem him to have waived any argument in response to the issues identified by Defendants in the June 6, 2022 letter. In addition, on or before June 15, 2022, Defendants are directed to file the following documents referenced in their June 6, 2022 letter: (1) Plaintiff's Rule 26(a)(1) disclosures; (2) Defendants interrogatories; and (3) Plaintiff's responses to Defendants' interrogatories. These documents should be filed on ECF as three exhibits to a new letter. To access the teleconference on June 17, 2022, please follow these directions: (1) dial the meeting number: (877) 336−1831; (2) enter the access code: 2751700; and (3) press pound (#) to enter the teleconference as a guest. Should counsel experience any technical issues with the teleconferencing system, please |

A-5

| | | contact Chambers at (914) 390−4070. (Status Conference set for 6/17/2022 at 10:30 AM before Magistrate Judge Andrew E. Krause.) (Signed by Magistrate Judge Andrew E. Krause on 6/14/2022) (tro) (Entered: 06/14/2022) |
|---|---|---|
| 06/16/2022 | 24 | LETTER addressed to Magistrate Judge Andrew E. Krause from Jerome T. Dorfman dated 6/16/22 re: Letter motion to compel discovery. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 06/16/2022) |
| 06/17/2022 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 6/17/2022. Jerome Dorfman appeared by telephone on behalf of the plaintiff. Chelsea Weisbord appeared by telephone on behalf of the defendants. By 6/24/22, in accordance with Rule 34(b)(2) of the Federal Rules of Civil Procedure, the plaintiff is to respond by letter to the defendants document demands. By 7/1/22, the plaintiff is to serve amended interrogatory responses on the defendants with respect to interrogatory numbers 7, 8, 15, 17, and 21. The defendants are to file a revised proposed case management plan by 6/24/22. The parties are to file letters regarding any outstanding discovery disputes by 7/13/22; responsive letters are to be filed by 7/15/22. Adjourned to 7/18/22 at 12:30 pm. Parties are directed to call the same teleconference number as the 6/17/22 conference. (Court Reporter AT&T) (sbr) (Entered: 06/17/2022) |
| 07/01/2022 | 25 | PROPOSED SCHEDULING ORDER. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 07/01/2022) |
| 07/01/2022 | 26 | AMENDED CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried by a jury. Joiner of additional parties must be accomplished by December 17, 2021. Amended pleadings may be filed until February 4, 2022. Non−expert depositions shall be completed by August 15, 2022. This conference will be held by AT&T Teleconference. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336−1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. SO ORDERED. Expert Deposition due by 9/26/2022. Discovery due by 10/14/2022. Status Conference set for 7/18/2022 at 12:30 PM before Magistrate Judge Andrew E. Krause. Telephone Conference set for 9/28/2022 at 12:00 PM before Judge Nelson Stephen Roman. (Signed by Magistrate Judge Andrew E. Krause on 7/1/2022) (tg) (Entered: 07/01/2022) |
| 07/13/2022 | 27 | LETTER addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated July 13, 2022 re: outstanding discovery disputes. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 07/13/2022) |
| 07/18/2022 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 7/18/2022. Jerome Dorfman appeared by telephone on behalf of the plaintiff. Chelsea Weisbord appeared by telephone on behalf of the defendants. During the conference, the parties reported that they have resolved the discovery issues raised by Defendants in ECF No. 27. Adjourned to 9/8/22 at 11:00 am. Parties are directed to call the same teleconference number as the 7/18/22 conference. (Court Reporter AT&T) (sbr) (Entered: 07/18/2022) |
| 08/08/2022 | 28 | LETTER MOTION to Compel *Discovery and To Request An Extension of the Fact Discovery Deadline* addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated August 8, 2022. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 08/08/2022) |
| 08/11/2022 | 29 | ORDER: On Friday, August 5, 2022, the parties contacted Chambers by telephone regarding a discovery dispute that had arisen during the deposition of the Plaintiff. Because the Court was conducting a trial and was not available to address the matter, the parties were instructed to submit letters explaining the dispute. Defendants were directed to file their letter by August 8, 2022, and they did so timely. See ECF No. 28. Plaintiff was directed to respond by August 10, 2022, but Plaintiff has neither submitted a response nor requested an extension. The Court sua sponte extends Plaintiff's deadline to respond to August 12, 2022. If Plaintiff fails to respond, the Court will treat Defendants' applications as unopposed. Even if Plaintiff responds, the Court may rule on Defendants' applications without the need for a conference. |

A-6

| | | |
|---|---|---|
| | | (HEREBY ORDERED by Magistrate Judge Andrew E. Krause) (Text Only Order) (md) (Entered: 08/11/2022) |
| 08/12/2022 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 5/5/22 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Arends−Dieck, Christina) (Entered: 08/12/2022) |
| 08/12/2022 | 31 | TRANSCRIPT of Proceedings re: conference held on 5/5/2022 before Magistrate Judge Andrew E. Krause. Court Reporter/Transcriber: Christina Arends−Dieck, (914) 390−4103. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/2/2022. Redacted Transcript Deadline set for 9/12/2022. Release of Transcript Restriction set for 11/10/2022..(Arends−Dieck, Christina) (Entered: 08/12/2022) |
| 08/12/2022 | 32 | COUNTER LETTER MOTION to Compel Plaintiff to Testify *by defendant* addressed to Magistrate Judge Andrew E. Krause from Jerome Dorfman dated 8/10/22. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 08/12/2022) |
| 08/18/2022 | 33 | ORDER granting 28 Letter Motion to Compel. Defendants' letter motion (ECF No. 28) is GRANTED and Plaintiff's "counter motion" (ECF No. 29) is DENIED. (1) Plaintiff's relevance objection to Defendants' line of deposition questioning regarding the March 2021 photograph is overruled. "Plaintiff's counsel did not assert a privilege, a court limitation, or a Rule 30(d)(3) motion. Instead, Plaintiff's counsel instructed [Mr. Leroy] not to answer based on relevancy grounds, notwithstanding the fact that it is improper to instruct a witness not to answer a question on the basis of relevance." Fashion Exchange LLC v. Hybrid Promotions, LLC, 333 F.R.D. 302, 307 (S.D.N.Y. 2019) (quotation marks omitted). Counsel's arguments in support of his objection (ECF No. 29) are unavailing. The use of March 2021 photograph, and any testimony about the circumstances surrounding that photograph, may or may not be appropriate at trial, and those questions can be litigated at or around the time of trial via motions in limine or objections in court. At this stage of the proceedings, it is certainly reasonable for Defendants to question Plaintiff about this subject at his deposition. (2) Plaintiff's counsel does not even respond to the assertion that his client did not perform any searches of his electronic devices and/or social media accounts for the information requested during discovery. The fact that no such searches were conducted, given the nature of the discovery demands, is unacceptable. Plaintiff is hereby ordered to search his electronic devices and social media accounts for any information responsive to Defendants' document requests or interrogatories. Any responsive material must be produced by September 9, 2022; if there is no responsive material, Plaintiff's counsel must confirm this in writing to Defendants' counsel by that same date. If Plaintiff fails to comply with this order, the Court will consider whether sanctions are appropriate. To be clear, the Court is allowing this three−week period of time for review in recognition of the fact that Plaintiff is on active military duty and accordingly, that an earlier compliance deadline might be logistically problematic. No extensions of the September 9, 2022 deadline will be granted based solely on Plaintiff's active duty status. (3) The deadline to complete fact discovery is hereby extended to October 14, 2022. The status conference with Magistrate Judge Krause currently scheduled for September 8, 2022 is hereby ADJOURNED to October 13, 2022 at 11:30 a.m. In addition, the parties are directed to write to Judge Romn to request that the post−discovery conference with Judge Romn (see ECF No. 26 Paragraph 21) be rescheduled to a date after the deadline for completion of all discovery. (4) The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 28 and 29. SO ORDERED. (Signed by Magistrate Judge Andrew E. Krause on 8/18/2022) (tg) (Entered: 08/18/2022) |
| 08/18/2022 | | Set/Reset Deadlines: ( Fact Discovery due by 10/14/2022.), Set/Reset Hearings:( Telephone Conference set for 10/13/2022 at 11:30 AM before Magistrate Judge Andrew E. Krause.) (tg) (Entered: 08/18/2022) |
| 09/20/2022 | 34 | RESCHEDULING ORDER: In light of the recent Coronavirus Disease 2019 ("COVID−19") pandemic affecting New York, and given the directives provided by |

A-7

| | | the Chief Judge of the United States District Court for the Southern District of New York to limit in−person court appearances due to the risk presented by COVID−19, and in light of the extension of discovery deadlines, it is hereby ORDERED that the above case scheduled for a Status Conference on September 28, 2022 is adjourned until December 2, 2022 at 12:00 pm to be held via teleconference. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336−1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. ( Telephone Conference set for 12/2/2022 at 12:00 PM before Judge Nelson Stephen Roman.) (Signed by Judge Nelson Stephen Roman on 9/20/2022) (ate) (Entered: 09/20/2022) |
|---|---|---|
| 09/22/2022 | 35 | LETTER MOTION for Extension of Time to Complete Discovery addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated 09/22/2022. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 09/22/2022) |
| 09/22/2022 | 36 | ORDER granting 35 Letter Motion for Extension of Time to Complete Discovery. The deadline to complete discovery is EXTENDED to November 11, 2022. Additionally, the October 13, 2022 telephonic status conference before Magistrate Judge Krause is ADJOURNED to November 9, 2022 at 10:30 a.m. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause)(Text Only Order) (md) (Entered: 09/22/2022) |
| 11/09/2022 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 11/9/2022. Jerome Dorfman appeared by telephone on behalf of the plaintiff. Chelsea Weisbord appeared by telephone on behalf of the defendants. The overall discovery deadline is extended to November 30, 2022 for the limited purpose of resolving the outstanding matters discussed on the record. No further extensions will be granted. By November 10, 2022, Plaintiff must respond to Defendants supplemental discovery demands. Any letters regarding outstanding discovery disputes are due by November 14, 2022; responses are due by November 16, 2022. Next conference scheduled for November 28, 2022 at 11:00 a.m. in person at the White Plains federal courthouse. (Court Reporter AT&T) (sbr) (Entered: 11/09/2022) |
| 11/18/2022 | 37 | ORDER: At the November 9, 2022 conference, and as memorialized in the minute entry from that conference, the Court set a deadline of November 14, 2022 for the parties to submit letters to raise any disputes regarding the final outstanding discovery issues that were addressed at the conference. No such letters have been received, nor has either side requested any extension of the November 14, 2022 deadline. The Court therefore assumes that the parties have resolved these disputes without the need for further Court intervention, in which case there may no longer be any need for the November 28, 2022 in−person conference before Magistrate Judge Krause. By no later than Monday, November 21, 2022, the parties must submit a joint letter confirming that discovery in this matter should be deemed completed and the November 28, 2022 conference should be adjourned. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause) (Text Only Order) (Krause, Andrew) (Entered: 11/18/2022) |
| 11/21/2022 | 38 | LETTER MOTION to Compel Defendant to Response to interrogatories *by plaint₁if* addressed to Magistrate Judge Andrew E. Krause from Jerome T. Dorfman dated 11/21/2022. Document filed by Case Leroy. (Attachments: # 1 Exhibit Deficiency letter to Chelsea Weisbord, # 2 Exhibit Defendant's response to plaintiff's deficiency letter, # 3 Exhibit Plaintiff's Interrogatories to defendant, # 4 Exhibit Defendant's responses to plaintiff's interrogatories).(Dorfman, Jerome) (Entered: 11/21/2022) |
| 11/22/2022 | 39 | ORDER: The Court has received and reviewed the parties' November 21, 2022 submission (ECF No. 38). As an initial matter, Plaintiff's affirmative dispute letter should have been filed via ECF on November 14, 2022 — this is what was discussed at the November 9 conference, is how all discovery disputes have been brought to the Court's attention throughout this case (see, e.g., ECF Nos. 15, 21), and is consistent with this Court's discovery protocol order (ECF No. 14). Nevertheless, the Court will accept Plaintiff's letter at ECF No. 38, along with the "deficiency letter" at ECF No. 38−1, as Plaintiff's affirmative dispute letter. The Court will also accept Defendants' November 18, 2022 response to the "deficiency letter" (ECF No. 38−2) as Defendants' response to the dispute letter. Defendants may submit a further short response, if they believe such submission is necessary, by November 25, 2022. The in−person conference on November 28, 2022 at 11:00 a.m. will go forward as scheduled. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause) (Text Only Order) |

A-8

| | | |
|---|---|---|
| | | (Krause, Andrew) (Entered: 11/22/2022) |
| 11/25/2022 | 40 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Andrew E. Krause from Chelsea Weisbord dated November 25, 2022 re: 38 LETTER MOTION to Compel Defendant to Response to interrogatories *by plaintiff* addressed to Magistrate Judge Andrew E. Krause from Jerome T. Dorfman dated 11/21/2022. . Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 11/25/2022) |
| 11/28/2022 | 41 | ENDORSED LETTER addressed to Magistrate Judge Andrew E. Krause from Steven C. Stern dated 11/28/2022 re: This firm represents the defendants in this case. Due to a family emergency, Ms. Weisbord is unable to attend today's status conference. Since she is the attorney most familiar with the discovery issues we anticipate were to be addressed at the conference, we respectfully request that the appearance be adjourned to another date convenient to the court, but preferably not this week. We have notified plaintiff's counsel of this issue. ENDORSEMENT: APPLICATION GRANTED. The November 28, 2022 conference is hereby adjourned to Thursday, December 8, 2022 at 11:00 a.m. As previously contemplated, the conference will take place in person at the White Plains federal courthouse. The Court extends its best wishes to Ms. Weisbord and her family. SO ORDERED. ( Status Conference set for 12/8/2022 at 11:00 AM before Magistrate Judge Andrew E. Krause.) (Signed by Magistrate Judge Andrew E. Krause on 11/28/2022) (tg) (Entered: 11/28/2022) |
| 11/29/2022 | 42 | RESCHEDULING ORDER: In light of the recent Coronavirus Disease 2019 ("COVID−19") pandemic affecting New York, and in light of the extension of the final discovery conference before Magistrate Judge Krause, it is hereby ORDERED that the above case scheduled for a Status Conference on December 2, 2022 is adjourned until December 21, 2022 at 11:00 am to be held via teleconference. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336−1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. ( Telephone Conference set for 12/21/2022 at 11:00 AM before Judge Nelson Stephen Roman.) (Signed by Judge Nelson Stephen Roman on 11/29/2022) (ate) (Entered: 11/29/2022) |
| 12/08/2022 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 12/8/2022. Jerome Dorfman appeared on behalf of the plaintiff. Chelsea Weisbord appeared on behalf of the defendants. Discovery disputes resolved on the record. Discovery in this matter is now closed. Adjourned without date. (Court Reporter Courtflow) (sbr) (Entered: 12/08/2022) |
| 12/09/2022 | 43 | ORDER denying 38 Letter Motion to Compel. Plaintiff's motion is DENIED for the reasons set forth on the record at the December 8, 2022 conference. (HEREBY ORDERED by Magistrate Judge Andrew E. Krause)(Text Only Order) (Krause, Andrew) (Entered: 12/09/2022) |
| 12/14/2022 | 44 | ADJOURNMENT ORDER: In light of the anticipated motion practice, the telephonic Status Conference scheduled for December 21, 2022 is adjourned sine die. (Signed by Judge Nelson Stephen Roman on 12/14/2022) (ate) (Entered: 12/14/2022) |
| 12/16/2022 | 45 | LETTER MOTION for Conference *re − anticipation of moving for summary judgment motion* addressed to Judge Nelson Stephen Roman from Steven C. Stern dated December 16, 2022. Document filed by John P. Evans, Livingston Manor Central School District..(Stern, Steven) (Entered: 12/16/2022) |
| 12/16/2022 | 46 | **FILING ERROR − DEFICIENT DOCKET ENTRY** − LETTER MOTION for Leave to File Request to file motion for summary judgment addressed to Judge Nelson Stephen Roman from Jerome Dorfman dated 12/16/22. Document filed by Case Leroy..(Dorfman, Jerome) Modified on 12/19/2022 (db). (Entered: 12/16/2022) |
| 12/19/2022 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT − DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Jerome T. Dorfman to RE−FILE Document 46 LETTER MOTION for Leave to File Request to file motion for summary judgment addressed to Judge Nelson Stephen Roman from Jerome Dorfman dated 12/16/22. ERROR(S): No signature or s/. (db)** (Entered: 12/19/2022) |

A-9

| 12/19/2022 | 47 | LETTER MOTION for Leave to File Motion for summary judgment addressed to Judge Nelson Stephen Roman from Jerome Dorfman dated December 16, 2022. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 12/19/2022) |
|---|---|---|
| 12/20/2022 | | ***DELETED DOCUMENT. Deleted document number 48 Opinion and Order. The document was incorrectly filed in this case. (ate) (Entered: 12/20/2022) |
| 12/20/2022 | 48 | ORDER terminating 45 Letter Motion for Conference re − anticipation of moving for summary judgment motion addressed to Judge Nelson Stephen Roman from Steven C. Stern dated December 16, 2022., 47 LETTER MOTION for Leave to File Motion for summary judgment addressed to Judge Nelson Stephen Roman from Jerome Dorfman dated December 16, 2022. ; granting 47 Letter Motion for Leave to File Document. The Court has reviewed Defendants' attached letter motion for leave to file a motion for summary judgment, dated December 16, 2022 (ECF No. 45), as well as Plaintiff's attached letter motion for leave to file a motion for summary judgment, dated December 16, 2022 (ECF No. 47.) The Court waives the premotion conference requirement and grants the parties leave to file their moving papers pursuant to the following briefing schedule: Plaintiff shall serve (not file) its motion for summary judgment on January 30, 2023; Defendants shall serve (not file) their opposition papers and cross−motion for summary judgment on March 20, 2023 Plaintiff shall serve (not file) its reply papers and opposition to Defendant's cross−motion for summary judgment on April 21, 2023; and Defendants shall serve their cross−reply on May 8, 2023. The parties are directed to file all motion papers on the cross−reply date, May 8, 2023. As the motion papers are served, the parties are directed to provide two hard courtesy copies to chambers. The parties are further directed to provide the Court with an electronic courtesy copy of the motion papers are they are served per this Court's local emergency civil rules. The Clerk of the Court is respectfully requested to terminate the motions at ECF Nos. 45 and 47. (Signed by Judge Nelson Stephen Roman on 12/20/2022) (ate) (Entered: 12/20/2022) |
| 12/20/2022 | | Set/Reset Deadlines: Motions due by 5/8/2023. (ate) (Entered: 12/20/2022) |
| 03/15/2023 | 49 | LETTER MOTION for Extension of Time to cross−move for summary judgment and oppose to plaintiff's motion for partial summary judgment addressed to Judge Nelson Stephen Roman from Chelsea Weisbord dated March 15, 2023. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 03/15/2023) |
| 03/15/2023 | 50 | ORDER granting 49 Letter Motion for Extension of Time. The Court has reviewed Defendants' attached letter motion for a short extension to file their opposition papers and cross−motion for summary judgment, dated March 15, 2023 (ECF No. 49). In light of Plaintiff's consent, the parties are granted leave to file their remaining moving papers pursuant to the following schedule: Defendants shall serve (not file) their opposition papers and cross−motion for summary judgment on March 24, 2023; Plaintiff shall serve (not file) its reply papers and opposition to Defendant's cross−motion for summary judgment on April 28, 2023; and Defendants shall serve their cross−reply on May 12, 2023. The parties are directed to file all motion papers on the cross−reply date, May 12 2023. As the motion papers are served, the parties are directed to provide two hard courtesy copies to chambers. The parties are further directed to provide the Court with an electronic courtesy copy of the motion papers are they are served per this Court's local emergency civil rules. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 49. Motions due by 5/12/2023. (Signed by Judge Nelson Stephen Roman on 3/15/2023) (ate) (Entered: 03/15/2023) |
| 04/27/2023 | 51 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 50 Order on Motion for Extension of Time,,,,, to May 12, 2023 addressed to Judge Nelson Stephen Roman from Jerome T. Dorfman dated April 27, 2023. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 04/27/2023) |
| 04/28/2023 | 52 | ORDER granting 51 Letter Motion for Extension of Time to File Response/Reply re 51 CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 50 Order on Motion for Extension of Time, to May 12, 2023 addressed to Judge Nelson Stephen Roman from Jerome T. Dorfman dated April 27, 2023. The Court GRANTS Plaintiff's consented−to request. Plaintiff shall serve (not file) its reply papers and opposition to Defendant's cross−motion for summary judgment on May 12, 2023 and Defendant shall serve its cross−reply on May 26, 2023. The parties are |

A-10

| | | |
|---|---|---|
| | | directed to file all motion papers on the cross−reply date, May 26 2023. As the motion papers are served, the parties are directed to provide two hard courtesy copies to chambers. The parties are further directed to provide the Court with an electronic courtesy copy of the motion papers are they are served per this Court's local emergency civil rules. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 51. (Signed by Judge Nelson Stephen Roman on 4/28/2023) (ate) (Entered: 04/28/2023) |
| 04/28/2023 | | Set/Reset Deadlines: Motions due by 5/26/2023. (ate) (Entered: 04/28/2023) |
| 05/11/2023 | 53 | LETTER MOTION for Extension of Time to File Response/Reply *to defendant's motion for summary judgment* addressed to Judge Nelson Stephen Roman from Jerome T. Dorfman dated May 11, 2023. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 05/11/2023) |
| 05/31/2023 | 54 | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Nelson Stephen Roman from Chelsea Weisbord dated 05/31/2023. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 05/31/2023) |
| 05/31/2023 | 55 | ORDER terminating 53 Letter Motion for Extension of Time to File Response/Reply re 53 LETTER MOTION for Extension of Time to File Response/Reply *to defendant's motion for summary judgment* addressed to Judge Nelson Stephen Roman from Jerome T. Dorfman dated May 11, 2023., 54 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Nelson Stephen Roman from Chelsea Weisbord dated 05/31/2023. ; granting 54 Letter Motion for Extension of Time to File Response/Reply re 53 LETTER MOTION for Extension of Time to File Response/Reply *to defendant's motion for summary judgment* addressed to Judge Nelson Stephen Roman from Jerome T. Dorfman dated May 11, 2023., 54 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Nelson Stephen Roman from Chelsea Weisbord dated 05/31/2023. Defendants' consented−to request is GRANTED. Defendants shall serve their cross−reply on June 9, 2023 The parties are directed to file all motion papers on the cross−reply date, June 9, 2023. As the motion papers are served, the parties are directed to provide two hard courtesy copies to chambers. The parties are further directed to provide the Court with an electronic courtesy copy of the motion papers are they are served per this Court's local emergency civil rules. The Clerk of the Court is respectfully requested to terminate the motion at ECF Nos. 53 and 54. (Signed by Judge Nelson Stephen Roman on 5/31/2023) (ate) (Entered: 05/31/2023) |
| 05/31/2023 | | Set/Reset Deadlines: Motions due by 6/9/2023. (ate) (Entered: 05/31/2023) |
| 06/08/2023 | 56 | LETTER MOTION for Leave to File Excess Pages addressed to Judge Nelson Stephen Roman from Chelsea Weisbord dated 06/08/2023. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/08/2023) |
| 06/08/2023 | 57 | ORDER granting 56 Letter Motion for Leave to File Excess Pages. The Court GRANTS Defendants' request to file a reply brief of up to 13 pages in order for Defendants to fully respond to Plaintiff's arguments. The Clerk of the Court is kindly directed to terminate the motion at ECF No. 56. (Signed by Judge Nelson Stephen Roman on 6/8/2023) (ate) Modified on 6/9/2023 (ate). (Entered: 06/09/2023) |
| 06/09/2023 | 58 | MOTION for Summary Judgment . Document filed by Case Leroy. Return Date set for 6/9/2023 at 05:00 PM..(Dorfman, Jerome) (Entered: 06/09/2023) |
| 06/09/2023 | 59 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** MOTION for Summary Judgment *Declaration in Support of Motion*. Document filed by Case Leroy. Responses due by 1/30/2023 Return Date set for 6/9/2023 at 05:00 PM. (Attachments: # 1 Exhibit Amended Verified Complaint).(Dorfman, Jerome) Modified on 6/22/2023 (db). (Entered: 06/09/2023) |
| 06/09/2023 | 60 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** MOTION for Summary Judgment . Document filed by Case Leroy. Return Date set for 6/9/2023 at 05:00 PM..(Dorfman, Jerome) Modified on 6/22/2023 (db). (Entered: 06/09/2023) |

A-11

| 06/09/2023 | 61 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** MOTION for Summary Judgment . Document filed by Case Leroy. Return Date set for 6/9/2023 at 05:00 PM. (Attachments: # 1 Affidavit Certificate of Service).(Dorfman, Jerome) Modified on 6/22/2023 (db). (Entered: 06/09/2023) |
|---|---|---|
| 06/09/2023 | 62 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** MOTION for Summary Judgment *Statement of Material Facts*. Document filed by Case Leroy. Return Date set for 6/9/2023 at 05:00 PM..(Dorfman, Jerome) Modified on 6/22/2023 (db). (Entered: 06/09/2023) |
| 06/12/2023 | 63 | MOTION for Summary Judgment . Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 64 | DECLARATION of Chelsea Weisbord in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District. (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E, # 6 Exhibit Ex. F, # 7 Exhibit Ex. G, # 8 Exhibit Ex. F, # 9 Exhibit Ex. I, # 10 Exhibit Ex. J, # 11 Exhibit Ex. K, # 12 Exhibit Ex. L, # 13 Exhibit Ex. M, # 14 Exhibit Ex. N, # 15 Exhibit Ex. O, # 16 Exhibit Ex. P, # 17 Exhibit Ex. Q, # 18 Exhibit Ex. R, # 19 Exhibit Ex. S, # 20 Exhibit Ex. T, # 21 Exhibit Ex. U, # 22 Exhibit Ex. V, # 23 Exhibit Ex. W, # 24 Exhibit Ex. X, # 25 Exhibit Ex. Y, # 26 Exhibit Ex. Z, # 27 Exhibit Ex. AA, # 28 Exhibit Ex. BB, # 29 Exhibit Ex. CC, # 30 Exhibit Ex. DD, # 31 Exhibit Ex. EE, # 32 Exhibit Ex. FF, # 33 Exhibit Ex. GG, # 34 Exhibit Ex. HH, # 35 Exhibit Ex. II, # 36 Exhibit Ex. JJ, # 37 Exhibit Ex. KK, # 38 Exhibit Ex. LL, # 39 Exhibit Ex. MM, # 40 Exhibit Ex. NN, # 41 Exhibit Ex. OO, # 42 Exhibit Ex. PP, # 43 Exhibit Ex. QQ).(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 65 | AFFIDAVIT of John Evans in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 66 | AFFIDAVIT of Shirlee Davis in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 67 | AFFIDAVIT of Christian Towsley in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 68 | RULE 56.1 STATEMENT. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 69 | RESPONSE to Motion re: 62 MOTION for Summary Judgment *Statement of Material Facts*. . Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 70 | MEMORANDUM OF LAW in Support re: 63 MOTION for Summary Judgment . . Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 71 | DECLARATION of Chelsea Weisbord in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District. (Attachments: # 1 Exhibit Ex. VV, # 2 Exhibit Ex. WW).(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 72 | DECLARATION of Steven C. Stern in Support re: 63 MOTION for Summary Judgment .. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 73 | REPLY MEMORANDUM OF LAW in Support re: 63 MOTION for Summary Judgment . . Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 06/12/2023) |
| 06/12/2023 | 74 | MOTION for Summary Judgment *Reply declaration*. Document filed by Case Leroy. Return Date set for 6/9/2023 at 11:59 PM. (Attachments: # 1 Exhibit Plaintiff's essay).(Dorfman, Jerome) (Entered: 06/12/2023) |

A-12

| 06/12/2023 | 75 | MOTION for Summary Judgment *Reply Memorandum of Law*. Document filed by Case Leroy. Return Date set for 6/9/2023 at 11:59 PM..(Dorfman, Jerome) (Entered: 06/12/2023) |
|---|---|---|
| 06/12/2023 | 76 | MOTION for Summary Judgment *Certificate of Service of Reply Papers*. Document filed by Case Leroy. Return Date set for 6/9/2023 at 11:59 PM..(Dorfman, Jerome) (Entered: 06/12/2023) |
| 06/22/2023 | | ***NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR. Notice to Attorney Jerome T. Dorfman to RE−FILE Document 61 MOTION for Summary Judgment . 59 MOTION for Summary Judgment *Declaration in Support of Motion*. Use the event type Declaration in Support of Motion found under the event list Replies, Opposition and Supporting Documents. (db) (Entered: 06/22/2023)** |
| 06/22/2023 | | ***NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR. Notice to Attorney Jerome T. Dorfman to RE−FILE Document 60 MOTION for Summary Judgment . Use the event type Memorandum in Support of Motion found under the event list Replies, Opposition and Supporting Documents. (db) (Entered: 06/22/2023)** |
| 06/22/2023 | | ***NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR. Notice to Attorney Jerome T. Dorfman to RE−FILE Document 62 MOTION for Summary Judgment *Statement of Material Facts*. Use the event type Rule 56.1 Statement found under the event list Other Answers. (db) (Entered: 06/22/2023)** |
| 06/23/2023 | 77 | DECLARATION of Jerome T. Dorfman in Support re: 59 MOTION for Summary Judgment *Declaration in Support of Motion*.. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 06/23/2023) |
| 06/23/2023 | 78 | RULE 56.1 STATEMENT. Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 06/23/2023) |
| 06/23/2023 | 79 | MEMORANDUM OF LAW in Support re: 60 MOTION for Summary Judgment . . Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 06/23/2023) |
| 06/23/2023 | 80 | DECLARATION of Jerome T. Dorfman in Support re: 59 MOTION for Summary Judgment *Declaration in Support of Motion*.. Document filed by Case Leroy. (Attachments: # 1 Exhibit Amended Verified Complaint).(Dorfman, Jerome) (Entered: 06/23/2023) |
| 07/14/2023 | 81 | ORDER terminating 74 Motion for Summary Judgment. The Clerk of the Court is directed to terminate this motion at ECF No. 74, as it is not a motion; rather, it is a declaration that supports the motion filed at ECF No. 58. (Signed by Judge Nelson Stephen Roman on 7/14/2023) (ate) (Entered: 07/14/2023) |
| 07/14/2023 | 82 | ORDER terminating 75 Motion for Summary Judgment. The Clerk of the Court is directed to terminate this motion at ECF No. 75, as it is not a motion; rather, it is a brief that supports the motion filed at ECF No. 58. (Signed by Judge Nelson Stephen Roman on 7/14/2023) (ate) (Entered: 07/14/2023) |
| 07/14/2023 | 83 | ORDER terminating 76 Motion for Summary Judgment. The Clerk of the Court is directed to terminate this motion at ECF No. 76, as it is not a motion; rather, it is a certificate of service that relates to the motion filed at ECF No. 58. (Signed by Judge Nelson Stephen Roman on 7/14/2023) (ate) (Entered: 07/14/2023) |
| 08/24/2023 | 84 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 12/8/22 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Arends−Dieck, Christina) (Entered: 08/24/2023) |
| 08/24/2023 | 85 | TRANSCRIPT of Proceedings re: conference held on 12/8/2022 before Magistrate Judge Andrew E. Krause. Court Reporter/Transcriber: Christina Arends−Dieck, (914) 390−4103. Transcript may be viewed at the court public terminal or purchased through |

A-13

| | | |
|---|---|---|
| | | the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/14/2023. Redacted Transcript Deadline set for 9/25/2023. Release of Transcript Restriction set for 11/22/2023..(Arends−Dieck, Christina) (Entered: 08/24/2023) |
| 04/05/2024 | 86 | OPINION & ORDER re: 58 MOTION for Summary Judgment . filed by Case Leroy, 63 MOTION for Summary Judgment . filed by John P. Evans, Livingston Manor Central School District. For the foregoing reasons, the Defendants' motion for summary judgment is granted and Plaintiff's cross−motion for partial summary judgment is denied. Plaintiff's causes of action are dismissed in their entirety. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 58 and 63, to enter judgment in favor of the Defendants, and to terminate the action. (Signed by Judge Nelson Stephen Roman on 4/5/2024) (ate) Transmission to Orders and Judgments Clerk for processing. (Entered: 04/05/2024) |
| 04/08/2024 | 87 | CLERK'S JUDGMENT re: 86 Memorandum & Opinion in favor of Livingston Manor Central School District, John P. Evans against Case Leroy. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion & Order dated April 5, 2024, the Defendants' motion for summary judgment is granted and Plaintiff's cross−motion for partial summary judgment is denied. Plaintiff's causes of action are dismissed in their entirety; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 4/8/2024) (Attachments: # 1 Appeal Package) (km) (Entered: 04/08/2024) |
| 04/08/2024 | | Terminate Transcript Deadlines (km) (Entered: 04/08/2024) |
| 04/22/2024 | 88 | BILL OF COSTS NOTICE OF TAXATION to recover costs against Case Leroy. Document filed by John P. Evans, Livingston Manor Central School District. The Clerk may tax costs 14 days after this filing. Objections to Bill of Costs due by 5/6/2024.(Weisbord, Chelsea) (Entered: 04/22/2024) |
| 04/22/2024 | 89 | DECLARATION of Chelsea Weisbord in Support re: 88 Bill of Costs Notice of Taxation,. Document filed by John P. Evans, Livingston Manor Central School District. (Attachments: # 1 Exhibit Ex. A − Complaint, # 2 Exhibit Ex. B − Amended Complaint, # 3 Exhibit Ex. C − Opinion and Order − April 5, 2024, # 4 Exhibit Ex. D − Clerk of the Court − Judgment, # 5 Exhibit Ex. E − Bill of Costs, # 6 Exhibit Ex. F − Depositions Invoices, # 7 Exhibit Ex. G − Supreme Judicial Invoice (JG), # 8 Exhibit Ex. H − Supreme Judicial Invoice (MM)).(Weisbord, Chelsea) (Entered: 04/22/2024) |
| 04/22/2024 | 90 | NOTICE of Notice of Motion for Bill of Costs re: 88 Bill of Costs Notice of Taxation, 89 Declaration in Support,.. Document filed by John P. Evans, Livingston Manor Central School District..(Weisbord, Chelsea) (Entered: 04/22/2024) |
| 05/03/2024 | 91 | **FILING ERROR − NO ORDER SELECTED FOR APPEAL** − NOTICE OF APPEAL. Document filed by Case Leroy. Filing fee $ 605.00, receipt number ANYSDC−29308581. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Dorfman, Jerome) Modified on 5/3/2024 (tp). (Entered: 05/03/2024) |
| 05/03/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Jerome Dorfman to RE−FILE Document No. 91 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re−file the appeal using the event type Notice of Appeal found under the event list Appeal Documents − attach the correct signed PDF − select the correct named filer/filers − select the correct order/judgment being appealed − Do Not Pay The Appeal Fee Again. (tp)** (Entered: 05/03/2024) |
| 05/03/2024 | 92 | NOTICE OF APPEAL from 87 Clerk's Judgment,, 86 Memorandum & Opinion,,. Document filed by Case Leroy. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Dorfman, Jerome) (Entered: 05/03/2024) |
| 05/03/2024 | | Appeal Fee Paid electronically via Pay.gov for: 92 Notice of Appeal. Filing fee $ 605.00. Pay.gov receipt number ANYSDC−29308581, paid on 5/3/2024. (tp) (Entered: 05/03/2024) |
| 05/03/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 92 Notice of Appeal. (tp) (Entered: 05/03/2024) |

A-14

| 05/03/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 92 Notice of Appeal filed by Case Leroy were transmitted to the U.S. Court of Appeals. (tp) (Entered: 05/03/2024) |
|---|---|---|
| 05/08/2024 | 93 | MOTION to Amend/Correct *the Record under FRAP 10(e)*. Document filed by Case Leroy. (Attachments: # 1 Exhibit Exhibit 2 to declaration of Jerome T. Dorfman in support of summary judgment, # 2 Exhibit Plaintiff's response to defendant's Rule 56.1 Statement).(Dorfman, Jerome) (Entered: 05/08/2024) |
| 05/17/2024 | | ***NOTICE TO ATTORNEY REGARDING REJECTION OF BILL OF COSTS NOTICE OF TAXATION FOR NON−COMPLIANCE WITH LOCAL RULE 54.1: Notice to Attorney Chelsea Weisbord, document 88 Bill of Costs Notice of Taxation, was rejected by the Clerk's Office for the following reason: there is an appeal to the appellate court appealing the entry of final judgment pending in the case. The filer must wait until the appellate court has issued the mandate. Please refile the Bill of Costs Notice of Taxation within 30 days of entry of the mandate in the Southern District of New York. (fk) (Entered: 05/17/2024) |
| 05/23/2024 | 94 | ORDER terminating 93 Motion to Amend/Correct 93 MOTION to Amend/Correct *the Record under FRAP 10(e)*. The Court is in receipt of the attached motion from Plaintiff, dated May 8, 2024, seeking an order from the Court to correct or amend the record for appeal of the Court's Opinion & Order granting Defendants' motion for summary judgment and denying Plaintiff's cross−motion for summary judgment. The Court directs Plaintiff to re−file the following documents on ECF: (1) Declaration of Jerome T. Dorfman in Support of Motion for Summary Judgment, with all accompanying exhibits; and (2) Plaintiff's Response to Defendants' Rule 56.1 Statement. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 93. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 5/23/2024) (mml) (Entered: 05/23/2024) |
| 06/03/2024 | 95 | MOTION for Summary Judgment . Document filed by Case Leroy. (Attachments: # 1 Exhibit Amended verified complaint, # 2 Exhibit Transcript of bench decision).(Dorfman, Jerome) (Entered: 06/03/2024) |
| 06/03/2024 | 96 | MOTION for Summary Judgment . Document filed by Case Leroy..(Dorfman, Jerome) (Entered: 06/03/2024) |

A-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CASE LEROY,

                            Plaintiff,

           -against-

LIVINGSTON   MANOR   CENTRAL   SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of Schools of Livingston Manor Central
School District,

                       Defendants.
-----------------------------------------------------------------X

**NOTICE OF REMOVAL**

Docket No:

Defendant LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and JOHN P. EVANS, by and through their attorneys, SOKOLOFF STERN LLP, as and for their Notice of Removal set forth as follows:

1.    Plaintiff commenced this action in the Supreme Court of the State of New York, County of Sullivan on June 16, 2021. (A copy of the Summons and Verified Complaint is attached as Exhibit A.)

2.    The Complaint sought relief, pursuant to 42 U.S.C. § 1983, for alleged violations of plaintiff's right to free speech and expression under the First Amendment of the United States Constitution. (Ex. A, ¶¶ 5, 7, 30–32, 35.)

3.    Plaintiff filed an Amended Verified Complaint on July 2, 2021. (A copy of the Amended Verified Complaint is attached as Exhibit B.)

4.    Like the original Complaint, the Amended Verified Complaint alleges, pursuant to 42 U.S.C. § 1983, violations of plaintiff's right to free speech and expression under the First Amendment to the United States Constitution. (Ex. B, ¶¶ 5, 7, 30-32, 35.)

1

A-16

5.      This case, therefore, falls within this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

6.      Defendants are entitled to remove this action, pursuant to 28 U.S.C. § 1441(a), which provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

7.      A notice of removal shall be filed within 30 days after receipt by a defendant of a copy of the initial pleadings. See 28 U.S.C. § 1446(b)(1), (2). Defendant Livingston Manor Central School District first received notice of this lawsuit via service of process on the District Clerk on June 16, 2021. Defendant Superintendent John P. Evans signed an Acknowledgment of Service that was filed by Plaintiff with the Sullivan County Clerk via NYSCEF on June 17, 2021. Less than 30 days have elapsed since service; therefore, removal is timely and proper.

8.      The parties reside in Sullivan County, and the alleged conduct giving rise to plaintiff's claims occurred in Sullivan County, which is within the Southern District of New York. Therefore, removal to the courthouse of the Southern District of New York is proper.

9.      All defendants consent to removal of this action.

2

A-17

WHEREFORE, Defendants respectfully request that the above-captioned proceeding, now pending in the Supreme Court of the State of New York, County of Sullivan, be removed therefrom to this Court.

Dated: Carle Place, New York
July 13, 2021

SOKOLOFF STERN LLP
*Attorneys for Defendants*
*Livingston Manor Central School District*
*and John P. Evans*

By:    Steven C. Stern
Chelsea Weisbord
179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500
File No. 210106

TO:

All counsel of record (via ECF)

Law Offices of Jerome T. Dorfman
*Attorneys for Plaintiff*
8 Breezy Hill Road
Parksville, NY 12768

3

A-18

# EXHIBIT A

A-19

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1    Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 2 of 15
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

Index # E2021-968

06/16/2021

- - - - - - - - - - - - - - - - - - - - - - - x

CASE LEROY,

                       Plaintiff,

          - against-

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS in his capacity as
Superintendent of Schools of Livingston
Manor Central School District

                      Defendants

Plaintiff designates Sullivan County
as the place of trial

The basis of venue is plaintiff's
residence

**SUMMONS**

Plaintiff resides at
175 Covered Bridge Road
Livingston Manor, NY 12758

- - - - - - - - - - - - - - - - - - - - - - - x

To the above named defendants

     You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiffs' attorney within 20 days after service of this summons, exclusive of the date of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York), and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint

Dated June 14, 2021

                                **JEROME T. DORFMAN, ESQ.**
                                Attorney for Plaintiffs
                                8 Breezy Hill Road
                                Parksville, NY 12768
                                (845)747-9403

A-20

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1

INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

- - - - - - - - - - - - - - - - - - - - - - x

CASE LEROY,

Index # E2021-968

Plaintiff,

- against -

**VERIFIED
COMPLAINT**

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of Schools of Livingston Manor Central
School District,

Defendants

- - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, by his attorney, Jerome T. Dorfman, complaining of the defendants,

respectfully alleges, as follows:

1  At all of the times hereinafter mentioned, plaintiff was and still is a resident

of the State of New York, County of Sullivan and a student at Livingston Manor High

School

2. Upon information and belief, at all of the times hereinafter mentioned,

defendant LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT (hereinafter

referred to as "the School District") was and still is a government entity organized

and existing pursuant to the laws of the State of New York

A-21

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008 Document 1-1 Filed 07/13/21 Page 4 of 15

3. Upon information and belief, at all of the times hereinafter mentioned, defendant JOHN P. EVANS (hereinafter referred to as "Evans") was and still is a resident of the State of New York and the Superintendent of Schools of the School District.

4. This is an action for a permanent injunction and money damages arising out of injury and damage suffered by Plaintiff Case LeRoy as the result of the unconstitutional actions of the above-named defendants in suspending the plaintiff from school and from school activities in the last two months of his senior year.

5. This action is brought pursuant to the First Amendment to the United States Constitution, which provides that, "Congress shall make no law ... abridging the freedom of speech."

6. This action is also brought pursuant to Constitution of the State of New York Art. I § 8, providing that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects ... and no law shall be passed to restrain or abridge the liberty of speech or of the press."

7. This action is also brought pursuant to 42 U.S.C. §§ 1983, which provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

2

A-22

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 1    Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 5 of 15   RECEIVED NYSCEF: 06/16/2021

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

8. Plaintiff brings this action for money damages, as well as for 1) immediate reinstatement of his rights and privileges as a student, 2) a declaration that the acts of the defendants were unconstitutional, 3) for the complete expungement of any reference to his suspension from attending classes and from participation in school activities from his transcripts and student files, and 4) for changes in the policies and procedures of the School District, so that the same does not happen to his sibling or any other student.

9. Plaintiff also brings this action for money damages for defendants' defamation of him, exposing him to public ridicule and threats of violence against him.

## FACTS

10. Plaintiff has been a student in the School District throughout his elementary and secondary education career and has been a member of the high school's football and baseball teams.

11. Plaintiff is also a student in a "public safety" program given by BOCES.

3

A-23

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 1    Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 6 of 15   RECEIVED NYSCEF: 06/16/2021

12. Prior to April 28, 2021, plaintiff has never been the subject of disciplinary action against him.

13. On or about April 19, 2021, plaintiff was with several friends, having driven the sister of one of them to dance class. The friend who drove them asked him to look under his car to determine the cause of a noise he had heard.

14. While plaintiff was looking under the car, one of his friends posed on his back, stating that he was under arrest "for dating a minor", the reference being to the fact that plaintiff was dating a young girl under the age of majority.

15. Another of his friends took a photograph of them on the ground and sent it to plaintiff.

16. Going along with the joke, plaintiff posted the photograph to Snapchat, adding the caption, "Cops got another" to it.

17. Minutes later he saw that his friend had re-posted the photograph, changing the caption to "Another on down" and adding a "Black Lives Matter" logo to it.

18. Plaintiff, realizing that the alterations to his original posting changed the entire context of it from being entirely ambiguous as to his intent, to one which could be misinterpreted as making a political statement, called his friend and told him to immediately remove the posting, which he did. Within 7 minutes of the original and the altered postings, both were deleted.

4

A-24

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 1                                                      RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 7 of 15

19. During that brief period of time, another student in plaintiff's school took a "screen shot" of the second, altered photograph. She then proceeded to add Plaintiff's name thereto, language decrying it as racist, and language urging others to bring it to the attention of school authorities. She then disseminated it to a large number of people, including Evans, through social media.

20. The next day Plaintiff was asked to come to the Evans' office, and was asked about the altered photographs. Upon information and belief, Evans had not seen the original photograph that had been posted by Plaintiff, only the one that was altered twice and re-posted by the other student. Plaintiff told him the circumstances under which the original photograph was taken, how it had been altered and re-posted, how it had been altered a second time, and that both the original photograph and his friend's altered one had been removed within minutes of its posting. Immediately after the interview, plaintiff was suspended from classes for 5 days.

21. At the hearing, Evans testified that on April 20, 2021, he convened an assembly of all of the students in grades 7 to 12 to address the matter. At the assembly, he told the students and faculty that "a lot of people viewed [the photographs] as racist in nature", that "it had no place in our school" and that "it was being addressed and being investigated." He then allowed some of the students to remain in the school gym and conduct their protest. By reason of the addition  of

5

A-25

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1

INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008 Document 1-1 Filed 07/13/21 Page 8 of 15

Plaintiff's name to the twice altered photograph, everyone knew that Plaintiff was one

of the individuals to whom he was referring. He also testified that he was aware that

harassing and threatening comments directed at Plaintiff had been posted on social

media.

22. On or about April 24, 2021, plaintiff's parents received a letter from Evans

containing 5 charges that were being brought against him and notifying them that a

hearing would be held with respect to them on April 27, 2021.

23. On April 27, 2021, plaintiff attended the hearing along with his parents. He

testified consistently with what he had told Evans, which Evans acknowledged in his

own testimony.

24. On April 28, 2021, the hearing examiner, Kate Reid, Esq., issued a

document entitled "Findings of Fact and Recommendation". In it she found plaintiff

guilty of the first charge of "Engaging in any willful act which disrupts the normal

operation of the school community" and the fifth charge of "Engage in off-campus

misconduct which interferes with, or can reasonably be expected to substantially

disrupt the educational process in the school or at a school function." She found

plaintiff not guilty of the three other charges. In particular, she did not find that

plaintiff discriminated against or harassed anyone and recommended that in addition

6

A-26

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1

INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

to the 5 day suspension which plaintiff had already served, that he be further suspended until May 21, 2021.

25. However, Evans did not fully adopt her recommendation and in addition to suspending plaintiff from attending classes through May 21, 2021, suspended him from participating in any school activities for the remainder of the school year, including sports, the school trip, the senior prom, and attending graduation ceremonies. Plaintiff was later allowed to attend classes on condition that he sign a student conduct agreement, which he did because the terms thereof did not include any prohibition that he would not otherwise observe. But the suspension from school activities was not rescinded.

26. Plaintiff appealed Evans' decision to the School Board, which refused to change the findings or the discipline imposed.

27. The original photograph which gave rise to plaintiff being disciplined was not taken on or even near school grounds, nor was it posted on any website created or sanctioned by the School District. Its content did not mention the school, any employee or staff member thereof, or any student. In short, there was no nexus whatsoever between the photograph and the School District.

7

A-27

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 1 Case 7:21-cv-06008 Document 1-1 Filed 07/13/21 Page 10 of 15
RECEIVED NYSCEF: 06/16/2021

**As and For a First Cause of Action For a Permanent Injunction against the School District and the Superintendent, Directing them to Restore Plaintiff's Rights and Privileges to Attend Classes and Participate in All School Activities and to Expunge Any Reference to His Suspension from His Transcripts and Student Files**

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 of this complaint, as though fully set forth herein.

29. The actions of the School District violated Plaintiff's constitutional right of freedom of speech under the Constitution of the State of New York Art. I § 8, which provides that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects ... and no law shall be passed to restrain or abridge the liberty of speech or of the press.

30. The actions of of the School District violated Plaintiff's constitutional right of freedom of speech under 42 U.S.C. §1983, which provides that

31. The actions of the School District violated Plaintiff's constitutional right of freedom of speech under First Amendment to the United States Constitution.

32. The actions of the School District violated Plaintiff's constitutional right of freedom of speech under 42 U.S.C. §§ 1983.

8

A-28

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008 Document 1-1 Filed 07/13/21 Page 11 of 15

33. By reason of the foregoing, Plaintiff is entitled to a permanent injunction against the School District, directing it to restore plaintiff's rights and privileges to attend classes and participate in all school activities and to expunge any reference to his suspension from his transcripts and student files.

### As and for a Second Cause of Action Against the School District and the Superintendent for Violation of Plaintiff's Civil Rights

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 of this complaint, as though fully set forth herein.

35. The suspension of Plaintiff for the posting of photographs that were characterized by Defendants as "racist" in nature violated Plaintiff's right of free speech and expression.

36. Even if the photographs posted by Plaintiff were racist in nature, which Plaintiff by no means concedes, Plaintiff had the unrestricted right to do so.

### As and For a Third Cause of Action Against the School District for Defamation of Plaintiff's Character

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this complaint, as though fully set forth herein.

9

A-29

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008 Document 1-1 Filed 07/13/21 Page 12 of 15

38. The School District had no interest in, or right to address or investigate the posting of these photographs, being that it took place entirely outside of school and not at a school function, did not utilize any school resources, and did not reference the school, its faculty, staff, or any student. By convening an assembly of all students in grades 7 through 12, and stating that "a lot of people viewed [the photographs] as racist in nature", that "it had no place in our school" and that "it was being addressed and being investigated", the Superintendent implicitly branded the photographs as racist in nature and placed the imprimatur of the School District behind that viewpoint.

39. The convening an assembly of all students in grades 7 through 12, at which the posting of the photographs was addressed, and the announcement that it was being investigated, necessarily implied that the Superintendent and the School District held an opinion that Plaintiff had engaged in racist conduct. The imposition of discipline against Plaintiff, of which the entire student body, parents, and others outside the school community became aware, as well as coverage by the press, including a local television station, cemented that opinion in their minds.

40. As the result of the statements of the Superintendent and actions of the School District, Plaintiff has been defamed and held up to public scorn and ridicule,

10

**A-30**

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 1   Case 7:21-cv-06008  Document 1-1  Filed 07/13/21  Page 13 of 15   RECEIVED NYSCEF: 06/16/2021

leading to the public posting of derogatory comments about him and his receiving death threats.

41. Plaintiff has suffered severe mental anguish and lasting damage to his reputation as the result of the statements of the Superintendent and the actions of the School District.

WHEREFORE, Plaintiff demands judgment as follows:

a. On his First Cause of Action, that the Defendants be permanently enjoined to 1) immediately reinstate all of his rights and privileges as a student, 2) the Court issue a declaration that the acts of the Defendants were unconstitutional, 3) for the complete expungement of any reference to his suspension from attending classes and from participation in school activities from his transcripts and student files, and 4) for changes in the policies and procedures of the School District, so that the same does not happen to his sibling or any other student.

b. On his Second Cause of Action, for money damages in an amount not less than $1 million for violation of his civil rights and punitive damages in an amount to be determined by the trier of fact,

11

A-31

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1

INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 14 of 15

c. On his Third Cause of Action, for money damages in an amount not

less than $1 million for defamation of Plaintiff's character and punitive

damages in an amount to be determined by the trier of fact,

together with the costs and disbursements of this action and reasonable attorney's fees

both under common law and pursuant to 42 U.S.C. §1988.

JEROME T. DORFMAN, ESQ.
Attorney for Plaintiff
8 Breezy Hill Road
Parksville, NY 12768
(845) 747-9403

12

A-32

FILED: SULLIVAN COUNTY CLERK 06/16/2021 01:26 PM
NYSCEF DOC. NO. 1
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008   Document 1-1   Filed 07/13/21   Page 15 of 15

## VERIFICATION

CASE LeROY, being duly sworn, states as follows:

I am the plaintiff in this action and have read the annexed complaint and know

the contents thereof and that the allegations therein are true to my knowledge.

_____
Case LeRoy

Sworn to before me this
/6   day of June, 2021

_____
Notary Public, State of New York

> LINDA J. FISK
> Notary Public, State of New York
> Sullivan County Clerk's #2338
> Commission Expires October 11, 2022

13

A-33

# EXHIBIT B

A-34

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40

INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 2 of 15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN
- - - - - - - - - - - - - - - - - - - - - -x

CASE LEROY,

                          Plaintiff,                    Index No. E-2021-968

              - against-                    **AMENDED VERIFIED**
                                            **COMPLAINT**

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of Schools of Livingston Manor Central
School District,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - -x

Plaintiff, by his attorney, Jerome T. Dorfman, complaining of the defendants,

respectfully alleges, as follows:

1. At all of the times hereinafter mentioned, plaintiff was and still is a resident

of the State of New York, County of Sullivan and a student at Livingston Manor High

School.

2. Upon information and belief, at all of the times hereinafter mentioned,

defendant LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT (hereinafter

referred to as "the School District") was and still is a government entity organized

and existing pursuant to the laws of the State of New York.

A-35

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM INDEX NO. E2021-968
NYSCEF DOC. NO. 40                                                           RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 3 of 15

3. Upon information and belief, at all of the times hereinafter mentioned, defendant JOHN P. EVANS (hereinafter referred to as "Evans") was and still is a resident of the State of New York and the Superintendent of Schools of the School District.

4. This complaint is being amended in view of the granting of a preliminary injunction against defendants, which allowed him to participate in graduation ceremonies, thereby rendering some of the injunctive relief that he sought moot, and in view of the disclosure of statements made by Evans to the press, as well as an essay written by plaintiff, in defendants' opposition papers to plaintiff's motion for a preliminary injunction.

5. This is an action for a permanent injunction and money damages arising out of injury and damage suffered by plaintiff Case LeRoy as the result of the unconstitutional actions of the above-named defendants in suspending the plaintiff from school and from school activities in the last two months of his senior year.

6. This action is brought pursuant to the First Amendment to the United States Constitution, which provides that, "Congress shall make no law ... abridging the freedom of speech."

7. This action is also brought pursuant to Constitution of the State of New York Art. I § 8, providing that, "Every citizen may freely speak, write and publish his or

2

A-36

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM          INDEX NO. E2021-968
NYSCEF DOC. NO. 40     Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 4 of 15   RECEIVED NYSCEF: 07/02/2021

her sentiments on all subjects ... and no law shall be passed to restrain or abridge the liberty of speech or of the press."

8. This action is also brought pursuant to 42 U.S.C. §§ 1983, which provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

9. Plaintiff brings this action for money damages, as well as for 1) a declaration that the acts of the defendants were unconstitutional, 2) for the complete expungement from his transcripts and student files of any reference to his suspension from attending classes and from participation in school activities, and 3) for changes in the policies and procedures of the School District, so that the same does not happen to his sibling or any other student.

10. Plaintiff also brings this action for money damages for defendants' defamation of him, exposing him to public ridicule and threats of violence against him.

3

A-37

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 5 of 15

## FACTS

11. Plaintiff has been a student in the School District throughout his elementary and secondary education career and has been a member of the high school's football and baseball teams.

12. Plaintiff is also a student in a "public safety" program given by BOCES, in connection with which he wrote an essay which he concluded by saying, "Therefore this is my personal opinion about the George Floyd case. I think it was going good until the end i dont (sic) think it was justified and I do believe that officer deserved jail time."

13. Prior to April 28, 2021, plaintiff has never been the subject of disciplinary action against him.

14. On or about April 19, 2021, plaintiff was with several friends, having driven the sister of one of them to dance class. The friend who drove them asked him to look under his car to determine the cause of a noise he had heard.

15. While plaintiff was looking under the car, one of his friends posed on his back, stating that he was under arrest "for dating a minor", the reference being to the fact that plaintiff was dating a young girl under the age of majority.

16. Another of his friends took a photograph of them on the ground and sent it to plaintiff.

4

A-38

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 6 of 15

17. Going along with the joke, plaintiff posted the photograph to Snapchat, adding the caption, "Cops got another" to it.

18. Minutes later he saw that his friend had re-posted the photograph, changing the caption to "Another one down" and adding a "Black Lives Matter" logo to it.

19. Plaintiff, realizing that the alterations to his original posting changed the entire context of it from being entirely ambiguous as to his intent, to one which could be misinterpreted as making a political statement, told his friend to immediately remove the posting, which he did. Within seven minutes of the original and the altered postings, both were deleted.

20. During that brief period of time, another student in plaintiff's school took a "screen shot" of the second, altered photograph, added plaintiff's name thereto, as well as language decrying it as racist and urging others to bring it to the attention of school authorities. She then disseminated it to a large number of people, including Evans, through social media.

21. The next day plaintiff was asked to come to Evans' office and was asked about the altered photographs. Upon information and belief, Evans had not seen the original photograph that had been posted by plaintiff, only the one that was altered twice and re-posted by the other student. Plaintiff told him the circumstances under which the original photograph was taken, how it had been altered and re-posted, how

5

A-39

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

it had been altered a second time, and that both the original photograph and his friend's altered one had been removed within minutes of its posting. Immediately after the interview, plaintiff was suspended from classes for five days.

22. On or about April 20, 2021, Evans gave a statement to the Hudson Valley News 12 television station (hereinafter "News 12"), which it included in a story bearing the headline, "4 Sullivan County HS students face disciplinary action for photos that mock George Floyd's death", saying, "On behalf of the Livingston Manor Central School District I apologize for this inappropriate student behavior. Racism cannot and will not be tolerated."

23. Upon information and belief, the only way News 12 could have known that plaintiff was facing discipline was for Evans to have informed them of that fact, as he was the only one who was empowered to discipline plaintiff for the one photograph that he posted.

24. Plaintiff's name having been placed on one or more of the altered photographs that were posted online, it was common knowledge that plaintiff was going to be one of the students who would be subjected to discipline by Evans.

25. The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99), prohibits public disclosure of potential or actual disciplinary

6

A-40

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
INDEX NO. E2021-968
NYSCEF DOC. NO. 40
Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 8 of 15
RECEIVED NYSCEF: 07/02/2021

action taken against any student without permission of the student's parents or a court order, neither of which was obtained by the Defendants.

26. By informing News 12 that students would be subjected to discipline, where plaintiff had been publicly identified as one of those students, Evans violated plaintiff's right to privacy under FERPA.

27. On or about April 24, 2021, plaintiff's parents received a letter from Evans containing five charges that were being brought against him and notifying them that a hearing would be held with respect to them on April 27, 2021.

28. On April 27, 2021, plaintiff attended the hearing along with his parents. He testified consistently with what he had told Evans in his interview, which Evans acknowledged in his own testimony.

29. At the hearing, Evans testified that on April 20, 2021, he convened an assembly of all of the students in grades 7 to 12 to address the matter. At the assembly, he told the students and faculty that "a lot of people viewed [the photographs] as racist in nature", that "it had no place in our school" and that "it was being addressed and being investigated." He then allowed some of the students to remain in the school gym and conduct a demonstration, which he and a guidance counselor supervised. By reason of the addition of plaintiff's name to the twice altered photograph, everyone knew that plaintiff was one of the individuals to whom

7

A-41

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40

INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 9 of 15

he was referring. He also testified that he was aware that harassing and threatening comments directed at plaintiff had been posted on social media.

30. On April 28, 2021, the hearing examiner, Kate Reid, Esq., issued a document entitled "Findings of Fact and Recommendation". In it she found plaintiff guilty of the first charge of "Engaging in any willful act which disrupts the normal operation of the school community" and the fifth charge of "Engage in off-campus misconduct which interferes with, or can reasonably be expected to substantially disrupt the educational process in the school or at a school function." She found plaintiff not guilty of the three other charges. In particular, she did not find that plaintiff discriminated against or harassed anyone and recommended that in addition to the five-day suspension which plaintiff had already served, that he be further suspended from attending classes until May 21, 2021.

31. However, Evans did not fully adopt her recommendation and, in addition to suspending plaintiff from attending classes through May 21, 2021, suspended him from participating in any extracurricular activities for the remainder of the school year, including sports, the senior trip, the senior prom, and attending graduation ceremonies. Plaintiff was later allowed to attend classes on condition that he sign a student conduct agreement, which he did because the terms thereof did not include

8

A-42

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM INDEX NO. E2021-968
NYSCEF DOC. NO. 40 Case 7:21-cv-06008-NSR-AEK Document 1-2 Filed 07/13/21 Page 10 of 15 RECEIVED NYSCEF: 07/02/2021

any prohibition that he would not otherwise have observed. But the suspension from extracurricular activities was not rescinded.

32. Plaintiff appealed Evans' decision to the School Board, which refused to change the findings or the discipline imposed.

33. The original photograph which gave rise to plaintiff being disciplined was not taken on or even near school grounds, nor was it posted on any website created or sanctioned by the School District. Its content did not mention the school, any employee or staff member thereof, or any student.

> **As and for a First Cause of Action for a Permanent Injunction against the School District and Evans, Directing Them to Expunge Any Reference to Plaintiff's Suspension from his Transcripts and Student Files and Enjoining Them from Disciplining Future Students for Conduct That Has No Nexus to the School**

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 of this complaint, as though fully set forth herein.

35. The actions of the School District in disciplining plaintiff violated his constitutional right of freedom of speech under the First Amendment to the United States Constitution.

9

A-43

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 11 of 15

36. The actions of the School District in disciplining plaintiff violated his right of freedom of speech under Article I § 8 of the Constitution of the State of New York.

37. By reason of the foregoing, plaintiff is entitled to a permanent injunction against the School District and Evans, directing them to expunge any reference to his suspension from his transcripts and student files and enjoining them from disciplining future students for conduct that has no nexus to the school.

### As and for a Second Cause of Action Against the School District and Evans for Violation of Plaintiff's Civil Rights

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 of this complaint, as though fully set forth herein.

39. The School District's suspension of plaintiff from classes and from extracurricular activities, including participating in the school's championship football game, the school's baseball team, the senior trip, the senior prom, and potentially in graduation ceremonies violated plaintiff's right of free speech and expression guaranteed to him under the First Amendment to the United States Constitution, entitling him to recover damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988.

40. The illegal and unjustified discipline of plaintiff constituted such an egregious breach of his civil rights that he is entitled to recover punitive damages.

10

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 12 of 15

### As and For a Third Cause of Action
### Against the School District for
### Defamation of Plaintiff's Character

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 of this complaint, as though fully set forth herein.

42. The School District had no interest in, or right to address or investigate the posting of the one photograph by plaintiff, being that it took place entirely outside of school and not at a school function, did not utilize any school resources, and did not reference the school, its faculty, staff, or any student. By convening an assembly of all students in grades 7 through 12, and stating that "a lot of people viewed [the photographs] as racist in nature", that "it had no place in our school" and that "it was being addressed and being investigated", Evans impliedly branded the one photograph that plaintiff had posted as racist in nature and placed the imprimatur of the School District behind that viewpoint.

43. The imposition of discipline against plaintiff, of which the entire student body, parents, and others outside the school community became aware, as well as coverage by the press, including News 12, cemented that opinion in their minds.

44. Evans' statement to News 12 characterized the one photograph that plaintiff posted as mocking George Floyd's death and racist.

11

A-45

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM INDEX NO. E2021-968
NYSCEF DOC. NO. 40                                                    RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 13 of 15

45. As the result of Evans' statements and the actions of the School District, plaintiff has been defamed and held up to public scorn and ridicule, leading to the public posting of derogatory comments about him and his receiving death threats.

46. Plaintiff has suffered severe mental anguish and lasting damage to his reputation as the result of Evans' statements and the actions of the School District.

47. Plaintiff is entitled to recover punitive damages for the egregious and flagrant defamation of him before the entire student body, as well as the substantial members of the public who viewed his statements on News 12.

WHEREFORE, plaintiff demands judgment as follows:

a. On his First Cause of Action, that a permanent injunction be issued against the Defendants, directing them to completely expunge from plaintiff's transcripts and student files any reference to his suspension from attending classes and participating in extracurricular activities, and enjoining them from disciplining future students for actions that have no nexus to the school;

b. On his Second Cause of Action, for compensatory damages in an amount not less than $1 million for violation of his civil rights, for punitive damages in an amount to be determined by the trier of fact, and for reasonable attorneys fees, in accordance with 42 U.S.C. §1988;

12

A-46

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM        INDEX NO. E2021-968
NYSCEF DOC. NO. 40                                      RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 14 of 15

   c. On his Third Cause of Action, for compensatory damages in an

amount not less than $1 million for defamation of plaintiff's character, for

punitive damages in an amount to be determined by the trier of fact, and

reasonable attorney's fees under common law;

together with the costs and disbursements of this action.

          JEROME T. DORFMAN, ESQ.
          Attorney for Plaintiff
          8 Breezy Hill Road
          Parksville, NY 12768
          (845) 747-9403

13

A-47

FILED: SULLIVAN COUNTY CLERK 07/02/2021 10:26 AM
NYSCEF DOC. NO. 40
INDEX NO. E2021-968
RECEIVED NYSCEF: 07/02/2021

Case 7:21-cv-06008-NSR-AEK   Document 1-2   Filed 07/13/21   Page 15 of 15

## VERIFICATION

CASE LeROY, being duly sworn, states as follows:

I am the plaintiff in this action and have read the annexed complaint and know

the contents thereof and that the allegations therein are true to my knowledge, except

those alleged upon information and belief, and as to those, I believe them to be true.

Case LeRoy

Sworn to before me this
1 st day of July, 2021

Notary Public, State of New York

LINDA J. FISK
Notary Public, State of New York
Sullivan County Clerk's #2338
Commission Expires October 11, 20__

14

A-48

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CASE LEROY,

       Plaintiff,

   -against-

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of Schools of Livingston Manor Central
School District,

       Defendants.
-----------------------------------------------------------------X

**ANSWER**

21-CV-6008 (NSR)

  Defendants LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and JOHN P. EVANS, by and through their attorneys, SOKOLOFF STERN LLP, hereby answer Plaintiff's Amended Verified Complaint as follows:

  1.  Deny the allegations set forth in paragraph "1" of the Amended Verified Complaint.

  2.  Admit the allegations set forth in paragraph "2" of the Amended Verified Complaint.

  3.  Admit the allegations set forth in paragraph "3" of the Amended Verified Complaint.

  4.  Deny the allegations set forth in paragraph "4" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

  5.  Deny the allegations set forth in paragraph "5" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

  6.  Deny the allegations set forth in paragraph "6" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

1

A-49

7.     Deny the allegations set forth in paragraph "7" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

8.     Deny the allegations set forth in paragraph "8" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

9.     Deny the allegations set forth in paragraph "9" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

10.    Deny the allegations set forth in paragraph "10" of the Amended Verified Complaint, except admit that plaintiff purports to bring this action as set forth therein.

11.    Admit the allegations set forth in paragraph "11" of the Amended Verified Complaint.

12.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "12" of the Amended Verified Complaint.

13.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "13" of the Amended Verified Complaint.

14.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "14" of the Amended Verified Complaint.

15.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Amended Verified Complaint.

16.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "16" of the Amended Verified Complaint.

17.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "17" of the Amended Verified Complaint.

18.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "18" of the Amended Verified Complaint.

2

A-50

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "19" of the Amended Verified Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "20" of the Amended Verified Complaint.

21.     Deny the allegations set forth in paragraph "21" of the Amended Verified Complaint.

22.     Deny the allegations set forth in paragraph "22" of the Amended Verified Complaint.

23.     Deny the allegations set forth in paragraph "23" of the Amended Verified Complaint.

24.     Deny the allegations set forth in paragraph "24" of the Amended Verified Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "25" of the Amended Verified Complaint, and respectfully refer all questions of law to the Court for adjudication.

26.     Deny the allegations set forth in paragraph "26" of the Amended Verified Complaint.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "27" of the Amended Verified Complaint.

28.     Deny the allegations set forth in paragraph "28" of the Amended Verified Complaint and respectfully refer the Court to the referenced transcript for its true and accurate contents.

A-51

29. Deny the allegations set forth in paragraph "29" of the Amended Verified Complaint, and respectfully refer the Court to the referenced transcript for its true and accurate contents.

30. Deny the allegations set forth in paragraph "30" of the Amended Verified Complaint, and respectfully refer the Court to the referenced document for its true and accurate contents.

31. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "31" of the Amended Verified Complaint, except admit Evans did not fully adopt the hearing officer's recommendations, that Plaintiff was suspended from extracurricular activities including sports, the senior trip, and the senior prom, and that he was permitted to attend classes pursuant to a student conduct agreement he signed.

32. Admit the allegations set forth in paragraph "32" of the Amended Verified Complaint.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "33" of the Amended Verified Complaint, except admit the photograph was not posted on any website created or sanctioned by the School District.

34. In response to the allegations set forth in paragraph "34" of the Amended Verified Complaint, Defendants repeat, reiterate, and reallege the responses set forth in paragraphs "1" through "33" of this answer as if fully set forth herein.

35. Deny the allegations set forth in paragraph "35" of the Amended Verified Complaint.

36. Deny the allegations set forth in paragraph "36" of the Amended Verified Complaint.

4

A-52

37.     Deny the allegations set forth in paragraph "37" of the Amended Verified Complaint.

38.     In response to the allegations set forth in paragraph "38" of the Amended Verified Complaint, Defendants repeat, reiterate, and reallege the responses set forth in paragraphs "1" through "37" of this answer as if fully set forth herein.

39.     Deny the allegations set forth in paragraph "39" of the Amended Verified Complaint.

40.     Deny the allegations set forth in paragraph "40" of the Amended Verified Complaint.

41.     In response to the allegations set forth in paragraph "41" of the Amended Verified Complaint, Defendants repeat, reiterate, and reallege the responses set forth in paragraphs "1" through "40" of this answer as if fully set forth herein.

42.     Deny the allegations set forth in paragraph "42" of the Amended Verified Complaint.

43.     Deny the allegations set forth in paragraph "43" of the Amended Verified Complaint.

44.     Deny the allegations set forth in paragraph "44" of the Amended Verified Complaint.

45.     Deny the allegations set forth in paragraph "45" of the Amended Verified Complaint.

46.     Deny the allegations set forth in paragraph "46" of the Amended Verified Complaint.

47.     Deny the allegations set forth in paragraph "47" of the Amended Verified Complaint.

A-53

## AS FOR THE FIRST AFFIRMATIVE DEFENSE

48.     The Amended Verified Complaint fails to state a claim upon which relief may be granted.

## AS FOR THE SECOND AFFIRMATIVE DEFENSE

49.     At all times relevant to the acts alleged in the Amended Verified Complaint, Defendants, their agents and officials, acted reasonably, properly, and in the lawful exercise of their discretion.

## AS FOR THE THIRD AFFIRMATIVE DEFENSE

50.     The Amended Verified Complaint indicates John P. Evans is named in his official capacity, which is the same as a suit against the School District. If Evans was named in his individual capacity, however, he would be entitled to qualified immunity from suit and liability.

## AS FOR THE FOURTH AFFIRMATIVE DEFENSE

51.     Plaintiff's constitutional rights were neither violated by any policy, practice, custom, or procedure of the Livingston Manor Central School District, nor by anyone with final policymaking authority.

## AS FOR THE FIFTH AFFIRMATIVE DEFENSE

52.     Defendants have not violated any rights, privileges or immunities under the Constitution or laws of the United States or the State of New York or any political subdivision thereof, nor have they violated any Act of Congress providing for the protection of civil rights.

## AS FOR THE SIXTH AFFIRMATIVE DEFENSE

53.     Plaintiff has unclean hands.

## AS FOR THE SEVENTH AFFIRMATIVE DEFENSE

A-54

54. Any injury alleged to have been sustained resulted from the Plaintiff's own culpable conduct, or the culpable conduct of third parties, and was not the proximate result of any act of the answering Defendants.

### AS FOR THE EIGHTH AFFIRMATIVE DEFENSE

55. Plaintiff's claims are barred, in whole or in part, by his failure to comply with General Municipal Law §§ 50-e, 50-i, 50-h, and Education Law § 3813.

### AS FOR THE NINTH AFFIRMATIVE DEFENSE

56. The alleged defamatory statements are protected by absolute and qualified privileges.

### AS FOR THE TENTH AFFIRMATIVE DEFENSE

57. Plaintiff's defamation claim fails because the complaint fails to identify alleged statements that are defamatory in character, the time when such alleged defamatory statements were made, and the parties to whom the alleged defamatory statements were published.

### AS FOR THE ELEVENTH AFFIRMATIVE DEFENSE

58. Plaintiff failed to mitigate his damages, if any, as claimed in this action.

### AS FOR THE TWELFTH AFFIRMATIVE DEFENSE

59. Defendants' actions were reasonably related to legitimate pedagogical concerns.

### AS FOR THE THIRTEENTH AFFIRMATIVE DEFENSE

60. Punitive damages are not available against municipal entities and officials sued in their official capacity.

### AS FOR THE FOURTEENTH AFFIRMATIVE DEFENSE

61. Defendants did not engage in any conduct that would warrant an award of punitive damages.

7

A-55

AS FOR THE FIFTEENTH AFFIRMATIVE DEFENSE

62.     Plaintiff failed to comply with the administrative prerequisites to suit.

AS FOR THE SIXTEENTH AFFIRMATIVE DEFENSE

63.     The Court lacks subject matter jurisdiction over Plaintiff's defamation claim.

AS FOR THE SEVENTEENTH AFFIRMATIVE DEFENSE

64.     The alleged defamatory statements involved matters of public interest or public concern.

AS FOR THE EIGHTEENTH AFFIRMATIVE DEFENSE

65.     The alleged defamatory statements were made without malice, and without knowledge they were false or reckless disregard for their falsity.

AS FOR THE NINETEENTH AFFIRMATIVE DEFENSE

66.     The alleged defamatory statements did not expose Plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons.

AS FOR THE TWENTIETH AFFIRMATIVE DEFENSE

67.     The alleged defamatory statements are not capable of being proven false.

AS FOR THE TWENTY-FIRST AFFIRMATIVE DEFENSE

68.     Plaintiff did not sustain actual damages as a result of the alleged defamatory statements.

AS FOR THE TWENTY-SECOND AFFIRMATIVE DEFENSE

69.     Plaintiff's claims for injunctive relief are moot.

8

A-56

WHEREFORE, Defendants demand judgment dismissing Plaintiff's Amended Verified Complaint and denying all relief requested therein, together with such other and further relief as the Court deems just, equitable and proper.

Dated: Carle Place, New York
      August 13, 2021

SOKOLOFF STERN LLP
*Attorneys for Defendants*
*Livingston Manor Central School District*
*and John P. Evans*

By:   Steven C. Stern
     Chelsea Weisbord
     179 Westbury Avenue
     Carle Place, NY 11514
     (516) 334-4500
     File No. 210106

TO:
All counsel of record (via ECF)

A-57

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CASE LEROY,

<table>
<tr><td></td><td></td></tr>
</table>

|  |  |
|---|---|
| Plaintiff, | **NOTICE OF MOTION FOR SUMMARY JUDGMENT** |
| -against- | Docket No.<br>21-cv-6008 (NSR) (AEK) |
| LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and JOHN P. EVANS, in his capacity as Superintendent of Schools of Livingston Manor Central School District, |  |
| Defendants. |  |

-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that, upon the Local Rule 56.1 Statement of Undisputed Material Facts; the Declaration of Chelsea Weisbord; the affidavits of John Evans, Shirlee Davis, and Christian Towsley, and the exhibits attached thereto; the accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment; and upon all pleadings and proceedings heretofore had herein, Defendants' will move this Court before the Honorable Nelson Stephen Román at the United States District Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601, on a date and time to be determined by the Court, for an Order pursuant to Fed. R. Civ. P. 56, granting summary judgment in Defendants' favor and awarding such other and further relief as this Court deems just, equitable, and proper.

**PLEASE TAKE FURTHER NOTICE** that answering papers shall be served by April 28, 2023.

1

A-58

**PLEASE TAKE FURTHER NOTICE** that reply papers, if any, shall be served by May 12, 2023.

Dated: Carle Place, New York
　　　March 24, 2023

　　　　　　　　　　　　　　　　SOKOLOFF STERN LLP
　　　　　　　　　　　　　　　　*Attorneys for Defendants*

　　　　　　　　　　　　By:　　Steven C. Stern
　　　　　　　　　　　　　　　　Chelsea Weisbord
　　　　　　　　　　　　　　　　179 Westbury Avenue
　　　　　　　　　　　　　　　　Carle Place, NY  11514
　　　　　　　　　　　　　　　　(516) 334-4500
　　　　　　　　　　　　　　　　File No. 210106

TO:　　All counsel of record [via ECF]

2

A-59

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
CASE LEROY,

                          Plaintiff,

           -against-

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of Schools of Livingston Manor Central
School District,

                       Defendants.
--------------------------------------------------------------------X

**ATTORNEY
DECLARATION**

Docket No: 21-cv-6008 (NSR)
(AEK)

CHELSEA WEISBORD, an attorney duly admitted to practice before this Court, declares the following to be true, under penalty of perjury:

1.     I am a member of Sokoloff Stern LLP, attorneys for Defendants Livingston Manor Central School District and John Evans in the above-captioned action, and I am familiar with the facts of this case.

2.     I submit this Declaration, the attached exhibits, the attached affidavits,[1] and the accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in opposition to Plaintiff's Partial Motion for Summary Judgment.

3.     The attached exhibits are relevant to Defendants' motions. The exhibits are accurate copies of what they purport to be.[2]

4.     Attached as Exhibit A is a copy of Plaintiff's Amended Verified Complaint, dated July 1, 2021.

5.     Annexed as Exhibit B is a copy of Defendants' Verified Answer to the Amended

---

[1] These affidavits are necessary because Plaintiff's counsel took no depositions in this case.

[2] In accordance with Section 3(G)(iv) of the Court's Individual Practices, we have not attached complete transcripts of depositions or the Superintendent's hearing, but have attached only pages containing relevant testimony to which Defendants cited to in their 56.1 Statement of Facts and/or memorandum of law..

A-60

Verified Complaint, dated August 13, 2021.

6.      Attached as Exhibit C are excerpts from the transcript of Day 1 of the deposition of Plaintiff Case Leroy, dated August 5, 2022.

7.      Attached as Exhibit D are excerpts from the transcript of Day 2 of the deposition of Plaintiff Case Leroy, dated September 16, 2022.

8.      Attached as Exhibit E are excerpts from the transcript of the deposition of Gordon Leroy, dated September 20, 2022.

9.      Attached as Exhibit F are excerpts from the transcript of the deposition of Amy Leroy, dated October 21, 2022.

10.     Attached as Exhibit G are excerpts from the transcript of the deposition of Student A, dated November 8, 2022.

11.     Attached as Exhibit H are excerpts from the transcript of the deposition of Student B, dated November 8, 2022.

12.     Attached as Exhibit I is a certified transcript of Plaintiff's Superintendent's hearing, which was held on April 27, 2021.

13.     Attached as Exhibit J is a photo, bearing page number D00121, that plaintiff Case Leroy posted on his Snapchat account on April 19, 2021 with the caption "Cops got another."

14.     Attached as Exhibit K is a photo, bearing page number D00122, that Student A posted on his Snapchat account on April 19, 2021 with a Black Lives Matter logo and the caption "Another one down."

15.     Attached as Exhibit L is a photo, bearing page number D00123, that Plaintiff took on March 25, 2021.

16.     Attached as Exhibit M is an email from High School English Teacher Jillian Hoag to Principal Shirlee Davis forwarding an April 19 email from a student, dated April 20, 2021 and

2

A-61

bearing page numbers D00072-73.

17.     Attached as Exhibit N is an email from a student to Principal Shirlee Davis with a follow up email exchange between Principal Shirlee Davis and Superintendent John Evans about the student's email, dated April 19, 2021 and bearing page numbers D00032-35.

18.     Attached as Exhibit O is an email from a student to Principal Shirlee Davis and High School Guidance Counselor Christian Towsley and an email from Principal Davis in response, dated April 19, 2021, bearing page numbers D00036-38.

19.     Attached as Exhibit P is an email from a student to Principal Shirlee Davis and an email from Principal Davis in response, dated April 19, 2021 and bearing page numbers D00045-46.[3]

20.     Attached as Exhibit Q is an email from a Stand Against Racism in Education ("SARE") email address to Superintendent John Evans and several other District administrators and an email from Superintendent Evans in response, dated April 19, 2021 and bearing page numbers D00007-8.

21.     Attached as Exhibit R is an email from a student to Principal Shirlee Davis and an email from Principal Davis in response, dated April 19, 2021 and bearing page numbers D00039-41.

22.     Attached as Exhibit S is an email from a student to Principal Shirlee Davis and an email from Principal Davis in response, dated April 19, 2021, and bearing page numbers D00063-65.

23.     Attached as Exhibit T are emails from a student to Principal Shirlee Davis, dated April 19 and April 20, 2021, and bearing page numbers D00047 and D00058-62.

---

[3] The photo attached to this email was provided to the District with the visible redactions, which appear to have been made with a black sharpie.

3

A-62

24.    Attached as Exhibit U is an email from Payton Powell to Superintendent John Evans and Principal Shirlee Davis and an email from Superintendent Evans in response, dated April 19, 2021, and bearing page numbers D00009-11.

25.    Attached as Exhibit V an email from Courtney Lambert to Superintendent John Evans and Principal Shirlee Davis and an email from Superintendent Evans in response, dated April 19, 2021, and bearing page numbers D00012-16.

26.    Attached as Exhibit W is an email from Jaspreet Gill to Superintendent John Evans and Principal Shirlee Davis and an email from Principal Davis in response, dated April 19, 2021, and bearing page numbers D00048-49.

27.    Attached as Exhibit X is an email from K-8 School Counselor Meagan Edwards to Superintendent John Evans and Principal Shirlee Davis forwarding an email she received from Balvina Garcia, dated April 20, 2021, and bearing page numbers D00017-18.

28.    Attached as Exhibit Y is an email from a female student to Principal Shirlee Davis, dated April 20, 2021, and bearing page number D00071.

29.    Attached as Exhibit Z an email from a Hannah Tuso to Superintendent John Evans Principal Shirlee Davis, and High School Guidance Counselor Christian Towsley, dated April 20, 2021, and bearing page number D00019.

30.    Attached as Exhibit AA an email from Grady Park to Superintendent John Evans and an email from Superintendent Evans in response, dated April 20, 2021, and bearing page numbers D00020-22.

31.    Attached as Exhibit BB an email from Sophia Xiomara to Superintendent John Evans and Principal Shirlee Davis and an email from Superintendent Evans in response, dated April 20, 2021 and bearing page number D00023.

32.    Attached as Exhibit CC an email from Mykenzi Williams to Superintendent John

4

A-63

Evans and an email from Superintendent Evans in response, dated April 20, 2021 and bearing page number D00024.

33.    Attached as Exhibit DD an email from Dylan Parks to Superintendent John Evans, Principal Shirlee Davis, K-8 Guidance Counselor Danielle Dalcero, High School Guidance Counselor Christian Towsley, and District Clerk Jane Mann with an email from Superintendent Evans in response, dated April 20, 2021 and bearing page numbers D00025-30.

34.    Attached as Exhibit EE email from Joya Maritza to Superintendent John Evans and Principal Shirlee Davis and an email from Superintendent Evans in response, dated April 20, 2021 and bearing page number D00031.

35.    Attached as Exhibit FF is an email from Kelsie Nolan to Superintendent John Evans and Principal Shirlee Davis and an email from Superintendent Evans in response, dated April 20, 2021 and bearing page number D00075.

36.    Attached as Exhibit GG is an email from Catherine Skalda to Superintendent John Evans, Principal Shirlee Davis, and High School Guidance Counselor Christian Towsley and am email from Superintendent Evans in response, dated April 20, 2021 and bearing page number D00076.

37.    Attached as Exhibit HH is an email from Elena Haskins to Superintendent John Evans and Principal Shirlee Davis and an email from Principal Davis in response, dated April 21, 2021, and bearing page numbers D00050-52.

38.    Attached as Exhibit II is an email chain between District Superintendent Evans, Jay Quintance (President of SUNY Sullivan), and Superintendent John Evans and Robert Dufour (District Superintendent for Sullivan BOCES), dated April 20, 2021, and bearing page numbers D00077-78.

39.    Attached as Exhibit JJ is an April 20, 2021 letter, bearing page number D00090,

A-64

from Superintendent Evans to the Livingston Manor School Community which was posted on the District's Website on April 20.

40.     Attached as Exhibit KK are scripts, bearing page number D00212, that were prepared for District secretaries to read from when fielding calls about the incident.

41.     Attached as Exhibit LL is a letter from Principal Shirlee Davis to Gordon and Amy Leroy, dated April 21, 2021 and bearing page number D00089.

42.     Attached as Exhibit MM is a Confidential Investigator Report prepared by Investigatory Bethany A. Centrone with attached Exhibits A through F and bearing page numbers D00111-183.

43.     Attached as Exhibit NN is a letter from Superintendent John Evans to Gordon and Amy Leroy containing charges and notice of a Superintendent's Hearing, dated April 23, 2021, and bearing page numbers D00103-104.

44.     Attached as Exhibit OO is a copy of the Findings of Fact and Recommendation to the Superintendent of Schools Livingston Manor Central School District prepared by Kate I. Reid, the Hearing Officer at plaintiff Case Leroy's Superintendent Hearing, dated April 28, 2021, and bearing page numbers D000184-187.

45.     Attached as Exhibit PP is a letter from Superintendent John Evans to Gordon and Amy Leroy, dated April 28, 2021, and bearing page numbers D00091-92.

6

A-65

46.    Attached as Exhibit QQ is a Holding of Long-Term Suspension in Abeyance and Contract of Conduct, bearing page numbers D00105-109, that was signed by plaintiff Case Leroy on May 9, 2021.

Dated: Carle Place, New York
       March 24, 2023

SOKOLOFF STERN LLP
*Attorneys for Defendants*

*Chelsea Weisbord*

By:    Chelsea Weisbord
       179 Westbury Avenue
       Carle Place, NY 11514
       (516) 334-4500
       File No. 210106

TO:
All counsel of record (via ECF)

7

A-66

# EXHIBIT C

A-67

```
 1                                          1

 2   UNITED STATES DISTRICT COURT

 3   SOUTHERN DISTRICT OF NEW YORK

 4   ----------------------------------------x

 5   CASE LEROY,

 6                         Plaintiff,

 7            -against-

 8   LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and

 9   JOHN P. EVANS, in his capacity as

10   Superintendent of Schools of Livingston Manor

11   Central School District,

12                         Defendants.

13   ----------------------------------------x

14

15                 ZOOM TELECONFERENCE

16                 AUGUST 5, 2022

17                 10:13 A.M.

18

19        EXAMINATION BEFORE TRIAL OF CASE

20   LEROY, the Plaintiff in the above-entitled

21   action, held at the above date and time,

22   pursuant to Notice, taken via Zoom

23   teleconference, before Holly Daloia Osteen, a

24   Reporter and Notary Public of the State of

25   New York.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-68

```
 1                                                        2

 2      A P P E A R A N C E S:

 3

 4         JEROME DORFMAN, ESQ.

 5              Attorneys for Plaintiff

 6              8 Breezy Hill Road

 7              Parkville, New York 12768

 8         BY:  JEROME DORFMAN, ESQ.

 9

10

11         SOKOLOFF STERN, LLP

12              Attorneys for Defendant

13              179 Westbury Avenue

14              Carle Place, New York 11514

15         BY:  CHELSEA WEISBORD, ESQ.

16

17

18      ALSO PRESENT:

19         BRIANNA STUPARICH

20

21

22

23

24

25
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-69

```
                                                              3
1

2                        S T I P U L A T I O N S

3

4              IT IS HEREBY STIPULATED AND AGREED

5        by and between the attorneys for the

6        respective parties herein, that filing,

7        sealing and certification be and the

8        same are hereby waived.

9

10             IT IS FURTHER STIPULATED AND AGREED

11       that all objections, except as to the

12       form of the question shall be reserved

13       to the time of the trial.

14

15             IT IS FURTHER STIPULATED AND AGREED

16       that the within deposition may be signed

17       and sworn to before any officer authorized

18       to administer an oath, with the same force

19       and effect as if signed and sworn to before

20       the Court.

21

22             That a copy of this examination shall

23       not be furnished without charge to the

24       attorney representing the witness

25       testifying herein.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-70

```
 1                                          4
 2   C A S E     L E R O Y,
 3               the witness herein, having been
 4               first duly sworn by a Notary Public
 5               of the State of New York, was
 6               examined and testified as follows:
 7   BY THE REPORTER:
 8       Q.    Please state your name for the
 9   record.
10       A.    Case Leroy.
11       Q.    Please state your address for the
12   record.
13       A.    175 Covered Road, Livingston Manor,
14   New York 12758.
15               MS. WEISBORD:  Good morning.
16               My name is Chelsea Weisbord.
17               I'm an attorney with Sokoloff
18               Stern.  I represent the Livingston
19               Central School District and John
20               Evans in this lawsuit.
21               I'm going to be asking you
22               some questions today regarding this
23               litigation.
24               Have you ever given sworn
25               testimony before?
```

A-71

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 6 of 71

```
 1                         Case Leroy              36
 2          Q.    Yes.
 3          A.    I would say probably about four,
 4    five years.
 5          Q.    Generally, how often do you post on
 6    SnapChat?
 7          A.    Probably like four days out of the
 8    week, ma'am.
 9          Q.    How many friends do you have on
10    SnapChat?
11          A.    I don't know, ma'am.
12          Q.    Can you give like a range?
13          A.    Anywhere in between 60 and
14    100, ma'am.
15          Q.    What I'm going to do is leave an
16    insert in the transcript for you to fill out
17    the exact number at a later date.
18          A.    Yes, ma'am.
19    (INSERT):_____
20          Q.    If you were to look at your
21    SnapChat account, would you be able to
22    confirm the exact amount of friends you have?
23          A.    I'm not to sure how to do that, but
24    I can go through and count them, ma'am.
25          Q.    Now, in April 2021, did you have
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-72

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 7 of 71

```
1                        Case Leroy              37
2   around the same number of friends between 60
3   and 100?
4        A.   Less -- yeah.  I would say around
5   the same amount, ma'am.
6        Q.   Can you tell me generally the types
7   of people that make up your SnapChat friends?
8             Like, are they students, family,
9   friends, adults or something else?
10       A.   Right now, a lot of the people are
11  people I'm on base with and high school
12  friends, ma'am.
13       Q.   So the people who you serve in the
14  Military with, are they people that you added
15  more recently?
16       A.   Yes, ma'am.
17       Q.   In April 2021, tell me just
18  generally who made up your SnapChat friend
19  group:  Students, friends, adults, something
20  else?
21       A.   Just a lot of my friends from like
22  different schools and like a couple of family
23  members, ma'am.
24       Q.   At that time, how many of your
25  fellow students would you say you were
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-73

```
1                          Case Leroy                    38
2     SnapChat friends with?
3          A.    A good amount, ma'am.
4          Q.    Can you tell me how many people
5     were in your graduating class?
6          A.    A lot.  I don't know the exact
7     number, ma'am.
8          Q.    Is it more or less than 100?
9          A.    Less, ma'am.
10               Am I allowed to give an estimate
11    for this, too?
12         Q.    Yes.
13         A.    I would say around 40, ma'am.
14         Q.    Did you know all the other students
15    in the graduating class?
16         A.    Sorry.
17               Can I hear that one more time?
18    Sorry, ma'am.
19         Q.    I will rephrase the question.
20               Were you acquainted with all the
21    people in your graduating class?  Did you
22    know everybody --
23         A.    Yes, ma'am.
24         Q.    -- on some level?
25               How many of those 40 students were
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-74

```
 1                         Case Leroy                    39
 2     you SnapChat friends with?
 3          A.    Most of them, ma'am.  I'd probably
 4     say a little more than half, ma'am.
 5          Q.    Were you SnapChat friends with
 6     anybody in ninth, tenth or eleventh grade?
 7          A.    Yes, ma'am.
 8          Q.    How many would you say?
 9          A.    Eleventh grade probably over
10     ten, ma'am, just a rough estimate.
11          Q.    Just so we are clear for the
12     record, we are talking about people who were
13     in eleventh grade when you were in twelfth
14     grade, correct?
15          A.    Yes, ma'am.
16          Q.    That would have been last year?
17          A.    Yes, ma'am.
18          Q.    Last school year?
19          A.    Yes, ma'am.
20          Q.    Were you friends with anybody who
21     was in tenth grade at the time that you were
22     a senior, SnapChat friends?
23          A.    I don't remember, ma'am, to be
24     honest.
25          Q.    How about ninth grade?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-75

```
1                        Case Leroy                    40
2          A.    I don't know, ma'am.
3          Q.    Were you SnapChat friends with
4     anybody in seventh or eighth grade?
5          A.    No, ma'am.
6          Q.    What is the name of the school
7     building that you attended when you were in
8     high school?  Does it have a name?
9          A.    Just Livingston Manor Center
10    School.  That's all I've known it by.
11         Q.    Do you know like how many school
12    buildings there are in the Livingston Manor
13    School District?
14         A.    I don't know, ma'am.
15         Q.    The building that you were in
16    during high school, do you know what other
17    grades are in that building?
18         A.    Oh, that's -- it's the only one.
19    It's all the way from pre-K up to 12, ma'am.
20              Sorry.  I got confused on the
21    question, ma'am.
22         Q.    That's okay.
23              Just speak up if you don't
24    understand something and I will rephrase it
25    in a way you can understand.
```

A-76

```
 1                           Case Leroy                  41
 2          A.    Yes, ma'am.
 3          Q.    The Livingston Manor School
 4    District has one school building that houses
 5    all of its students; is that accurate?
 6          A.    Yes, ma'am.
 7          Q.    Do you know what it means to post a
 8    story on SnapChat?
 9          A.    Yes, ma'am.
10          Q.    Can you explain what that is to
11    post a story?
12          A.    So posting a story is basically
13    like taking -- like having a picture or if
14    you have picture, you can upload it to a
15    story.  If you take a picture, you can just
16    post it directly to the story.
17          Q.    This is my lack of SnapChat
18    knowledge coming through, but is a story one
19    particular post or can it be like several
20    different posts?
21          A.    So a story is -- you can take
22    multiple posts and upload them to a story.
23    But you can also just post one, like one post
24    and have it up to a story.  A story is just
25    like something to post on so people can like
```

A-77

```
 1                           Case Leroy                      77
 2     screen.
 3           A.    Yes, ma'am.
 4           Q.    Do you know how he obtained it or
 5     from whom?
 6           A.    No, ma'am.
 7           Q.    Do you know if one of your sisters
 8     sent him this photo?
 9           A.    I do not know, ma'am.
10           Q.    Do you see the top left of Exhibit
11     A, it says, "1:43."
12                 Do you see that?
13           A.    Yes.  I see that, ma'am.
14           Q.    Do you agree that that appears to
15     be the time displayed on some type of
16     electronic device?
17           A.    Yes, ma'am.
18           Q.    Would you agree that Exhibit A is a
19     screenshot of a phone screen that captured
20     this SnapChat post that you made?
21           A.    You said screenshot, ma'am?
22           Q.    Yes.
23                 Does it appear to be a screenshot
24     of a phone capturing your SnapChat post?
25           A.    Yes, ma'am.
```

A-78

```
1                        Case Leroy                    78
2          Q.    Do you have any idea like whose
3     phone screen is depicted in the exhibit?
4          A.    I don't know, ma'am.
5          Q.    Do you know if this came from your
6     phone?
7          A.    To be honest, I don't really
8     remember, ma'am.
9          Q.    Do you have any idea if the 1:43 at
10    the top of Exhibit A is referencing a.m. or
11    p.m.?  Any idea one way or the other?
12         A.    No clue, ma'am.
13         Q.    Do you have any idea when this
14    screenshot was taken, what day?
15         A.    I do not, ma'am.
16         Q.    Now I'm going to ask you some
17    questions about the actual SnapChat post.
18         A.    Yes, ma'am.
19         Q.    Let me just scroll out so you see
20    it.
21               Is that big enough?
22         A.    Yes, ma'am.  That's perfect.
23         Q.    Can you tell me when this photo was
24    taken?
25         A.    I don't remember the day, ma'am.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-79

```
1                        Case Leroy                    79
2         Q.    Do you remember what year it was
3    taken?
4         A.    From -- I don't actually
5    know, ma'am.
6         Q.    Do you remember what month it was
7    taken?
8         A.    I don't remember, ma'am.
9         Q.    Do you remember what time of day it
10   was taken?
11        A.    The afternoon, ma'am.
12        Q.    Do you know what day of the week
13   this picture was taken?
14        A.    I do not know.
15        Q.    Do you know if it was on a school
16   day or a weekend?
17        A.    I really don't know, ma'am.
18        Q.    Are you in the picture?
19        A.    Yes, ma'am.
20        Q.    There are two people in the
21   picture, right?
22        A.    Yes, ma'am.
23        Q.    Who are you?
24        A.    I'm the one laying down, ma'am.
25        Q.    Then who is the other person in the
```

A-80

```
1                         Case Leroy                    80
2    picture?
3         A.    MM.
4                   MS. WEISBORD:  Holly, let's
5              do initials for that for the
6              transcript.
7    BY MS. WEISBORD:
8         Q.    Do you remember the day this photo
9    was taken?
10        A.    Can you elaborate more, ma'am?
11             What do you mean by that?
12        Q.    On whatever day you took this, do
13   you remember taking the picture or remember
14   being in the picture?
15        A.    I don't remember the full
16   day, ma'am, but I remember some of it, ma'am.
17        Q.    Tell me everything that you do
18   remember about the day on which this picture
19   was taken.
20        A.    Like before the picture, ma'am?
21        Q.    Sure.
22             Do you know if you went to school
23   that day?
24        A.    I don't remember, ma'am.  All I
25   remember from that day is going to the car
```

A-81

```
1                        Case Leroy                81
2    wash and then going to my buddy's sister's
3    dance studio.
4         Q.   So you mentioned going to a car
5    wash.
6              Can you tell me what car wash you
7    went to?
8         A.   I don't know the name of it, but it
9    was in Liberty, ma'am.
10        Q.   Why did you go to a car wash?
11        A.   Just to clean my car, ma'am.
12        Q.   Were you driving your car on the
13   day this photo was taken?
14        A.   Yes, ma'am.
15        Q.   Is your car depicted in this photo?
16        A.   No, ma'am.
17        Q.   Do you know whose car is in the
18   photo?
19        A.   Yes, ma'am.
20        Q.   Who?                    - Student C
21        A.   One of my friends, █.
22        Q.   So do you remember what time of day
23   you went to the car wash?
24        A.   I do not, ma'am.
25        Q.   Do you know morning, afternoon or
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-82

```
1                         Case Leroy                    82
2    evening?
3         A.    Afternoon, ma'am.
4         Q.    Was it light out or dark?
5         A.    It was still light out, ma'am.
6         Q.    Did you go to the car wash alone?
7    Did anybody go with you?
8         A.    I went to the car wash and then my
9    buddy took his car, in the picture, to the
10   car wash to clean it.
11        Q.    Do you remember where you drove
12   from?
13        A.    No.
14        Q.    Like to bring it to the car wash.
15        A.    I don't remember, ma'am.
16        Q.    So you were driving one car and
17   your friend ███ was driving another car,
         - Student C
18   correct?
19        A.    Yes, ma'am.
20        Q.    Were you driving to the car wash
21   together at the same time?
22        A.    Yes, ma'am.
23        Q.    Were you hanging out before you
24   both drove to the car wash or did you meet at
25   the car wash?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-83

```
1                          Case Leroy                    83
2          A.    I don't remember, ma'am.
3          Q.    Was anybody else in your car when
4    you were at the car wash?
5          A.    Yes, ma'am.
6          Q.    Who?
7          A.    The person depicted or in the
8    picture, ma'am.        . - Student A
9          Q.    That's █?
10         A.    Yes, ma'am.      . - Student A
11         Q.    Last name █, right?
12         A.    Yes, ma'am.
13         Q.    He was a passenger in your car?
14         A.    Yes, ma'am.
15         Q.    Do you know if anybody else was in
       - Student C
16   █'s car other than █?
                              - Student C
17         A.    Yes, ma'am.
18         Q.    Who?
19         A.    █, ma'am.
20         Q.    These individuals, are they friends
21   of yours?
22         A.    Yes, ma'am.
23         Q.    Are they currently your friends?
24         A.    The one in the picture no, ma'am,
25   but the other two are still my friends.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-84

```
 1                         Case Leroy                    84
 2         Q.    At the time this photo was taken,
 3    were you friends with all of them?
 4         A.    Yes, ma'am.                . - Student A
 5         Q.    At some point, you and ▮ stopped
 6    being friends?
 7         A.    Yeah.  Just -- I really haven't
 8    talked to him after this incident, ma'am.
 9         Q.    Would you say your friendship ended
10    because of this incident or for some other
11    reason?
12         A.    Yes, ma'am.
13         Q.    Yes, it ended because of the
14    incident?
15         A.    My apologies, yes, ma'am, because
16    of it.
17         Q.    Who ended the friendship or was it
18    mutual?
19         A.    It wasn't really like ended.  We
20    just stopped talking to each other, ma'am.
21         Q.    Was there some type of fight or you
22    just stopped you --
23         A.    We stopped talking, ma'am.
24         Q.    When is the last time that you
25    communicated with ▮?   - Student C
```

A-85

```
                        Case Leroy                      85
 1
 2       A.    I'm not too sure, ma'am.
                          - Student B
 3       Q.    How about █?
 4       A.    I mean, we all -- we all have
 5   streaks, but like instead of like that, we
 6   don't like really talk-talk.
 7       Q.    You all have what?
 8       A.    Streaks is like SnapChat.
 9       Q.    Is that something else than we
10   talked about earlier?  We talked about a
11   Signal.
12             What's this, streaks or streets?
13       A.    Streaks.  It's just you snap
14   someone back and forth and then it comes up
15   with a number on the side about how many day
16   streaks you have like of snapping that
17   person.                     - Student C
18       Q.    So you interact with █  and █
19   through SnapChat?            . - Student B
20       A.    Yes, ma'am.
21       Q.    How regularly have you kept in
22   touch with them since graduating?
23       A.    Not very regularly, ma'am.
24       Q.    Do you ever speak to them on the
25   phone or in person or in text?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-86

```
1                          Case Leroy                      86
2          A.    I mean, I haven't really had much
3     of an opportunity to see them in person.  I
4     don't call them either or anything like that.
5          Q.    Do you text message with them?
6          A.    No.  Once in a while, I'll text
7     them and say, "How is life going?"  After
8     they respond to that -- so not, not very
9     often, ma'am.
10         Q.    After you left the car wash, tell
11    me where you went next.
12         A.    To my friend's sister's dance
13    studio.
14         Q.    Which friend?
15         A.    ██ , ma'am.          - Student C
16         Q.    Do you know the name of his sister?
17         A.    BB.
18         Q.    Do you remember the name of the
19    dance studio?
20         A.    I do not, ma'am.  It was my first
21    time there.
22         Q.    Do you remember where it was
23    located?
24         A.    I do not, ma'am.
25         Q.    What town it was in?  Any idea?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-87

```
1                        Case Leroy                    87
2          A.    I have no clue, ma'am.  I was just
3     following him.
4          Q.    How long of a drive was it from the
5     car wash in Liberty to this dance studio?
6          A.    I don't remember that, ma'am.
7          Q.    Do you remember if it was like more
8     than or more or less than thirty minutes?
9          A.    I don't remember, ma'am.
10         Q.    Did you drive to the dance studio
                              . - Student A
11    with  ██  in your car?
12         A.    Yes, ma'am.
                          . - Student B        - Student C
13         Q.    And  ██  was in  ██  's car?
14         A.    Yes, ma'am.
                         . - Student C
15         Q.    Was  ██  going to pick up his sister
16    or drop her off?
17         A.    I don't remember, ma'am.
18         Q.    Do you remember if his sister was
19    in the car when you guys were driving to the
20    dance studio?
21         A.    I don't remember that to be
22    honest, ma'am.  I just remember those four.
23         Q.    Are you testifying that you don't
24    remember her being in the car or you don't
25    remember --
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-88

```
1                        Case Leroy                    88
2         A.    I don't remember if she was or not.
3         Q.    Tell me where this photo was taken
4    where you are in the photo.
5         A.    In the parking lot of the dance
6    studio, ma'am.
7         Q.    Why did you follow █ to the dance
                                    - Student C
8    studio?
9         A.    I was bored and there was nothing
10   to do, so I just followed him there just to
11   talk with him for a little.
12        Q.    Did you have plans to hang out with
13   KB after going to the dance studio?
14        A.    No, ma'am.  I was going to go home
15   afterward, but I just wanted to talk to them
16   for a little bit.
17        Q.    Them, being █    and █?
                           - Student C     - Student B
18        A.    Yes, ma'am.
19        Q.    Tell me who took the picture in
20   Exhibit A.
                       . - Student B
21        A.    █, ma'am.
22        Q.    Can you tell me how this photo came
23   about?
24        A.    Can you explain, ma'am, like what
25   you mean?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-89

```
1                          Case Leroy                    89
2           Q.    Just tell me, you know, what
3      happened, why this picture was taken.
4                 What happened leading up to it?
                                              - Student C
5           A.    When we got there, my buddy ▮, he
6      said that he was hearing scraping underneath
7      his car, so I went over to look underneath
8      his car to see if there was anything scraping
                              - Student A
9      underneath.    Then ▮ came over and then knelt
10     on my back and then I -- the picture was
11     taken.
                              - Student B
12          Q.    Did you ask ▮ to take this photo?
13          A.    No, ma'am.
                              . - Student A
14          Q.    Do you know if ▮ asked him?
15          A.    I do not know, ma'am.
16          Q.    How long were you on the ground for
                       . - Student A
17     before ▮ knelt in the way he is in the
18     photo?
19          A.    I was looking at his car for like
20     -- I'm going to give a rough estimate.
21          Q.    Sure.
22          A.    Like 30 seconds I was looking
23     underneath his car to see if anything was
24     scraping and he came over.
25          Q.    So, in this photo, what were you
```

A-90

```
                                Case Leroy                    90
 1
 2     doing?  Were you looking under the car or
 3     were you posing for a photo?
 4          A.    I was looking underneath the
 5     car, ma'am.
 6          Q.    What were you looking for?
 7          A.    If anything was scraping underneath
 8     like he said, ma'am.
 9          Q.    The position that you're in, in
10     Exhibit A, is that the position you were in
11     the whole time you were on the ground looking
12     under the car or were you in another position
13     at some point?
14          A.    No.  That's the positions I was in
15     the whole time looking underneath.
16          Q.    I might have already asked this,
17     but how long were you in this position before
18     this photo was taken?
19          A.    I'm just going to give a rough
20     estimate, like 30 seconds.
21          Q.    Did you know that █ was going to
                                      - Student B
22     take this photo before he took it?
23          A.    No, ma'am.
24          Q.    Did you overhear █ and █ having
                                  - Student A   - Student B
25     any discussion about taking a photo while you
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-91

```
 1                        Case Leroy                    91
 2    were on the ground?
 3         A.    No, ma'am.
                               - Student A
 4         Q.    Do you know why ▓ posed in this
 5    manner the way he is shown in Exhibit A?
 6         A.    Honestly, I have no idea, ma'am.
 7         Q.    Did he say anything to you when you
 8    knelt down?
 9         A.    No, ma'am.
10         Q.    Did he say anything to you like
11    before he knelt down?
12         A.    No, ma'am.
                               . - Student A
13         Q.    Do you know why ▓ is holding his
14    thumb up in the picture?
15         A.    I don't know, ma'am.
16         Q.    Did you know he was holding his
17    thumb up when this picture was taken?
18         A.    No, ma'am.
19         Q.    Do you know what device this photo
20    was taken on?
21         A.    An iPhone, ma'am.
                         - Student B
22         Q.    Was it ▓'s iPhone?
23         A.    Yes, ma'am.
24         Q.    Do you know if he took the photo
25    with the camera on his phone or through some
```

ON TIME COURT REPORTING
516-535-3939

A-92

```
1                           Case Leroy                    92
2      type of social media application?
3           A.      That, I don't know, ma'am.
4           Q.      When did you first learn that the
5      photo had been taken?
6           A.      When he sent it to us, ma'am.
7           Q.      "He" being      J  - Student B
                                   ██?
8           A.      Yes, ma'am.
9           Q.      And "us" being you and  ██  - Student A
                                             ?
10          A.      Yes, ma'am.
11          Q.      How did he send it to you?
12          A.      Through SnapChat, ma'am.
13          Q.      Did he send a SnapChat to just you
14     and  ██  . - Student A   or did he post a story?
15          A.      I don't remember if he posted
16     it, ma'am, but I do know he sent it to me and
17     ██  . - Student A
18          Q.      When did he send you the photo?
19          A.      You mean like -- like in this
20     picture?
21          Q.      How much time passed between when
22     this photo was taken and when ██  . - Student B sent it to
23     you?
24          A.      He sent it to us right away, ma'am.
25          Q.      When ██  - Student B sent you the photo on
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-93

```
 1                        Case Leroy                    93
 2     SnapChat, did it have any caption or was it
 3     just the photo by itself?
 4           A.     I don't remember, ma'am.
 5           Q.     When you received the photo, what
 6     did you do with it?
 7           A.     I posted it, ma'am.
 8           Q.     When you received it, did you take
 9     a screenshot of the photo?
10           A.     They send it to you and in SnapChat
11     you can save the camera roll.
12           Q.     So when you received the photo, you
13     saved it to your camera roll?
14           A.     Yes, ma'am.
15           Q.     How does that work?  If you save a
16     photo to the camera roll, does it remain in
17     the camera roll or does it disappear?
18           A.     What do you mean, ma'am?
19           Q.     Tell me, how does the camera roll
20     work?  If you put a picture in there, can you
21     always go back to it?
22           A.     No, ma'am.
23           Q.     How does the camera roll feature
24     work on SnapChat?
25           A.     You just save it to the camera roll
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-94

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 29 of 71

```
1                           Case Leroy                    94
2      and then if you want to post it or just
3      delete it after a while.
4           Q.    So if it's in the camera roll, does
5      it delete on its own or it only gets deleted
6      if you manually delete it?
7           A.    That one's a tricky one.  I've seen
8      some of my stuff that I've saved get deleted
9      on its own.  I've also deleted stuff on my
10     own, too, so...
11          Q.    Did you save the photo on the
12     camera on your cell phone?
13          A.    I saved it under SnapChat, ma'am.
14          Q.    Did you save it anywhere outside of
15     SnapChat?
16          A.    I had it on my original photos for
17     a little bit.
18          Q.    Is that in SnapChat or somewhere
19     else?
20          A.    No, ma'am.  That's just when you
21     take a picture with your camera where all
22     your pictures go.
23          Q.    So you had it saved to your phone
24     not in SnapChat, but just to your iPhone,
25     right?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-95

```
 1                          Case Leroy              95
 2        A.    Yes, ma'am.
 3        Q.    When did you save it to that?
 4        A.    After I got it sent to me, ma'am.
 5        Q.    When you saved it, was there a
 6   caption on it or was it just the photo?
 7        A.    I don't remember, ma'am.
 8        Q.    Do you still have the photo on your
 9   phone?
10        A.    No, ma'am.  I deleted it.
11        Q.    When?
12        A.    Like seven minutes after it was
13   posted, ma'am.
14        Q.    Why did you delete it?
15        A.    Because, at first, I didn't really
16   like understand like what was behind the
17   picture, and then when I understood, I
18   deleted it because I didn't want any
19   involvement in it.
20        Q.    You mentioned at first you didn't
21   understand something, but then you did.
22              So what is it that you came to
23   understand?
24        A.    At first, I didn't realize that he
25   was like doing it to like have like -- I
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-96

```
1                     Case Leroy                    96
2     don't know how to word it to be honest.  Like
3     his memo behind the picture is different than
4     what I thought it was.
5          Q.    What do you know mean by "memo"?
6          A.    Like what he want -- like what he
7     represented was different than what I
8     realized or what I -- than I thought it
9     represented.  I just thought he was doing it
10    for fun and then I realized like what it was
11    representing and I was like I don't want any
12    part of this and I deleted it.
13         Q.    When did you realize that it was
14    representing?  What are you talking about?
15         A.    Honest, like he wanted to represent
16    the George Floyd case, but I didn't
17    understand that or like I didn't see that in
18    the picture until later.
19         Q.    Did █ ever tell you why -- if he
                       - Student A
20    wanted to take this picture?
21         A.    What do you mean, ma'am?
22         Q.    I'll withdraw the question and ask
23    a new one.
24               Did █ ever tell you why he took
                      - Student A
25    this picture and posed in it the way that
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-97

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 32 of 71

```
 1                          Case Leroy                    97
 2      he's posed?
 3           A.    No, ma'am.
 4           Q.    What is the basis for your
 5      testimony that he was trying to represent the
 6      George Floyd case?
 7           A.    So when after it was posted, people
 8      started texting me about it.  Like now I
 9      realize -- I was like I didn't even see that.
10      So like I -- like I told them all to take it
11      down.  I told them to delete all the pictures
12      and stuff like that.
13           Q.    So after you received this photo,
14      did you add the caption in Exhibit A that
15      says, "Cops got another"?
16           A.    What was the question again?
17           Q.    I'll ask a new question.
18                 Do you see in Exhibit A the caption
19      that says, "Cops got another"?
20           A.    Yes, ma'am.
21           Q.    Did you add that caption to this
22      photo?
23           A.    Yes, ma'am.
24           Q.    Why did you add that caption?
25           A.    Just like as like cops got another
```

A-98

```
 1                        Case Leroy                98
 2     person.  Like there was like no meaning
 3     behind it.  Just...
 4          Q.    I mean, what prompted you to write
 5     that?
 6          A.    What do you mean, ma'am?
 7          Q.    Well, what made you think to write,
 8     "Cops got another" to this photo?  What was
 9     going on in your head?
10          A.    Just the fact that it looked like
11     an arrest so...
12          Q.    When you saw the picture, it
13     reminded you of an arrest; is that what your
14     testimony is?
15          A.    I mean, not the like full picture.
16     Just the fact that I was laying down and like
17     he was like -- it just looked like I was
18     arrested, but not like -- it just looked like
19     arresting me [sic].
20          Q.    At the time that you wrote -- you
21     created the caption, "Cops got another," were
22     you thinking oh, this kind of looks like an
23     arrest?  Is that why you added that caption
24     or was there another reason?
25          A.    No, that was the reason, ma'am.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-99

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 34 of 71

```
 1                         Case Leroy                  99
 2         Q.    Was there a particular arrest that
 3    this photo reminded you of or just an arrest
 4    in general?
 5         A.    Just an arrest, ma'am.
 6         Q.    Looking at this photo right now, do
 7    you believe that this post is racist in
 8    nature?
 9         A.    No, ma'am.  Because it's not like
10    implying anything, ma'am.
11         Q.    What do you mean by that?
12         A.    Like it's not referring -- like the
13    whole thing behind it like it referred back
14    to the George Floyd, case but that's not what
15    it was referring to.
16                   MS. WEISBORD:  Holly, can
17                   you just read that answer back for
18                   me?
19                   (Whereupon, the requested
20                   portion was read by the reporter.)
21    BY MS. WEISBORD:
22         Q.    Are you saying that when you
23    created the caption and posted, this that you
24    didn't intend to refer to the George Floyd
25    case; is that what you're testifying?
```

A-100

```
1                         Case Leroy                    100
2          A.    Yes, ma'am.
3          Q.    Would you agree that regardless of
4     what was going on in your mind, when you
5     posted this, do you think it's possible that
6     someone who sees this could perceive it as
7     racist?
8                     MR. DORFMAN:  I'm going to
9                object to that question.
10    BY MS. WEISBORD:
11         Q.    You can answer.
12         A.    Is the question still on me?
13         Q.    Yes.  I thought you were thinking.
14               Yes, you can answer.
15               If your attorney objects, unless he
16    tells you not to answer something, you can
17    just go ahead and answer.  He's just
18    objecting for the record.
19                     MR. DORFMAN:  I'm going to
20               object and ask him not to answer
21               the question.
22                     The reason is, is that it's
23               calling for him to go into the
24               operation of some other person's
25               mind, unidentified and speculate as
```

**A-101**

```
 1                         Case Leroy                101
 2               to what someone else might --
 3               someone who is unidentified and,
 4               therefore, it's an impossible
 5               question to answer.
 6                    MS. WEISBORD:  But I'm not
 7               asking him how anybody else
 8               perceived it.  I'm asking him what
 9               his beliefs are about how it can be
10               perceived, so it's a different
11               question, but I can try to rephrase
12               it.
13     BY MS. WEISBORD:
14          Q.    I will move on.
15               Exhibit A captures what you posted
16     on SnapChat the day the photo was taken,
17     correct?
18          A.    What was that again, ma'am?  I'm
19     sorry.
20          Q.    Exhibit A that's on the screen, is
21     that an accurate representation of what you
22     posted on SnapChat, of course, without the
23     time at the top and without the handwriting
24     in the margins, but just the photo itself?
25          A.    Yes, ma'am.
```

A-102

```
 1                          Case Leroy                    102
 2         Q.    Did you share this in a story?
 3         A.    On SnapChat, ma'am?
 4         Q.    Yes.
 5         A.    Yes, ma'am.
 6         Q.    That was after it was taken?
 7         A.    Yes, ma'am.
 8         Q.    So when you posted this photo and
 9    captioned it with, "Cops got another," when
10    you shared it in a story, does that mean that
11    all of your SnapChat friends were able to
12    view it?
13         A.    Yes, ma'am.
14         Q.    Based on your testimony from
15    earlier, that would have been approximately
16    -- what was it 60 to 100 people who had the
17    option of viewing it?
18         A.    Somewhere around there, ma'am.
19         Q.    Do you remember receiving any
20    notifications that someone had taken a
21    screenshot of this post?
22         A.    Not that I can remember, ma'am.
23         Q.    Are you aware of anybody taking a
24    screenshot of this post?
25         A.    I know one person who had
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-103

```
 1                    Case Leroy                    103
 2    it, ma'am, that -- I don't remember seeing if
 3    they screenshot it or not.  I don't know how
 4    they got it, but I know they had it, ma'am.
 5         Q.    Was it another student?
 6         A.    Yes, ma'am.
 7         Q.    It was a male student, right?
 8         A.    No, ma'am.
 9         Q.    Was that a yes or no?
10         A.    No, ma'am.
11         Q.    Did you say female or male?
12         A.    Female, ma'am.
13         Q.    I misheard you.
14         A.    My apologies.
15         Q.    It's all right.  It's hard with
16    Zoom.
17              You're aware of at least one female
18    student receiving -- I mean, capturing this
19    photo?
20         A.    Yes, ma'am.  I know a lot of people
21    had it.  I just don't know like everyone,
22    ma'am.  I know one particular had it right
23    away, ma'am.
24         Q.    Who is that?
                           - Student F
25         A.    █, ma'am.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-104

```
                          Case Leroy                    104
                                        - Student F
 1
 2       Q.    Do you know if ▮ was SnapChat
 3   friends with you at the time this photo was
 4   posted?
 5       A.    Yes, ma'am.
 6       Q.    Did you look to see if she had
 7   taken a screenshot of the post?
 8       A.    I did not look, ma'am.
 9       Q.    But you learned after the fact that
10   she had it?
11       A.    Yes, ma'am.
12       Q.    Did you find out how she obtained
13   it?
14       A.    No, ma'am.
15       Q.    You said a lot of other people had
16   this post as well?
17       A.    They -- yes, ma'am.
18       Q.    Do you know how many people?
19       A.    I do not, ma'am.
20       Q.    What do you mean by a lot?
21       A.    No.  I said I don't know, ma'am.
22       Q.    I know, but my next question is,
23   when you say "a lot of people," what do you
24   mean why that?
25       A.    My apologies.  Say probably over
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-105

```
 1                    Case Leroy                  105
 2    twenty, thirty people.  That's an estimate.
 3         Q.    When you post a story, is there a
 4    way to save it?
 5         A.    Yes, ma'am.
 6         Q.    How would you do that?  Is there
 7    like a save button?
 8         A.    No.  When you swipe up on the
 9    picture, there is a save button, ma'am.
10         Q.    Did you save the story?
11         A.    No, ma'am.
12         Q.    Why not?
13         A.    Because I already had the picture
14    of it, so I didn't save it, ma'am.
15         Q.    Do you remember what time of day
16    you posted on SnapChat?
17         A.    The afternoon, ma'am.
18         Q.    Can you narrow it down as to when
19    in the afternoon?
20         A.    Can I give you an estimate?
21         Q.    Yes, like a timeframe.
22         A.    Probably like 5:00, ma'am.
23         Q.    Where were you when you posted the
24    photo?  Were you still outside the dance
25    studio or somewhere else?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-106

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 41 of 71

```
 1                         Case Leroy              106
 2          A.    Yes, ma'am.  I was outside the
 3     dance studio, ma'am.
 4          Q.    Like were you in your car, were you
 5     standing in the parking lot?
 6          A.    I was sitting in my car, ma'am,
 7     getting ready to leave.
 8          Q.    Was anyone else in the car with you
 9     when you posted it?
10          A.    Everyone else was still standing
11     outside, ma'am.  I was just sitting in my
12     car.
13          Q.    Did you post this photo with the
14     caption, "Cops got another" on any social
15     media platform other than SnapChat?
16          A.    No, ma'am.
17          Q.    Did you send it to anyone in a text
18     message or other type of message?
19          A.    Not that I can remember, ma'am.
20          Q.    Do you know if ▮ posted this photo
21     as a story on his own SnapChat?
22          A.    I don't know, ma'am.
23          Q.    Do you know if he posted it at all
24     on SnapChat whether to certain people --
25          A.    I don't remember, ma'am.
```

J  - Student B

**ON TIME COURT REPORTING**
**516-535-3939**

A-107

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 42 of 71

```
 1                     Case Leroy                    107
 2         Q.    Do you recall seeing a story from
 3   -- on his SnapChat capturing this photo?
 4         A.    Don't remember, ma'am.
 5         Q.    Did you have any conversations with
 6   JG about posting this on SnapChat?
 7         A.    Not that I can remember, ma'am.
 8         Q.    Did he make any comments to you
 9   about that he was going to post it on his
10   SnapChat?
11         A.    Not that I can remember.
12         Q.    When you were sitting in your car
13   and you posted it, who was sitting outside?
14         A.    The rest of the people that I
15   mentioned.
16         Q.    So is that  ███  and  ███ ?
17         A.    And  ███
18         Q.    Was   ███   present when the photo was
19   taken?
20         A.    Yes, ma'am.
21         Q.    Where was he standing when the
22   photo was taken?
23         A.    He was inside of his car, ma'am.
24         Q.    Was he involved at all in taking
25   this photo?
```

On line 16: - Student B, M - Student A
On line 17: - Student C
On line 19: - Student C

**ON TIME COURT REPORTING**
**516-535-3939**

A-108

```
                              Case Leroy                    108
 1
 2         A.    No, ma'am.

 3         Q.    Do you know if he posted it?

 4         A.    I do not know that.

 5         Q.    Did you have any discussions with

 6   KB about the photo being taken whether before

 7   or after it was taken?

 8         A.    Not that I can remember, ma'am.

 9         Q.    Did you have any conversations with

10   him about posting it on social media?

11         A.    Not that I can remember, ma'am.

12         Q.    Did ███ 's post the photo on
                      - Student A
13   SnapChat?

14         A.    Yes, ma'am.

15         Q.    Did he include any caption on his?

16         A.    Yes, ma'am.

17         Q.    Do you know what it was?

18         A.    It was the symbol that said -- I

19   forget exactly what it said.  His picture

20   said something like, "Black lives matter" or

21   something like that.

22         Q.    If I pulled up what he posted,

23   would that refresh your memory?

24         A.    Yes, ma'am.

25         Q.    That's what I will do.
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-109**

```
 1                      Case Leroy                    109
 2                      MS. WEISBORD:  I'm going to
 3              mark this as Defendants' Exhibit B,
 4              for identification.
 5                      (A photograph was marked as
 6                      Defendants' Exhibit B, for
 7                      identification, as of this
 8                      date.)
 9       BY MS. WEISBORD:
10            Q.    Have you seen this photo before?
11            A.    Yes, ma'am.
12            Q.    Is this what  ▉ - Student A  posted on SnapChat?
13            A.    Yes, ma'am.
14            Q.    Do you know where he was when he
15       posted it?  Were you with him?
16            A.    He was -- he was outside the
17       car, ma'am.
18            Q.    And that was when you were sitting
19       inside the car?
20            A.    Yes, ma'am.
21            Q.    This was still outside the dance
22       studio?
23            A.    Yes, ma'am.
24            Q.    Do you know what time approximately
25       that he posted it?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-110

```
 1                        Case Leroy                110
 2        A.    Around like 5:00, ma'am.
 3        Q.    Did he have any discussion with you
 4   about the fact that he was going to post it?
 5        A.    No, ma'am.
 6        Q.    Did you know he was going to post
 7   it on SnapChat before you saw it on SnapChat?
 8        A.    I don't know, ma'am.
 9        Q.    Do you know if he shared it in a
10   story?
11        A.    Yes, ma'am.
12        Q.    Do you know how many SnapChat
13   friends ▮  M.M - Student A  had?
14        A.    No, ma'am.
15        Q.    Would you agree that if he shared
16   it in a story, any of his SnapChat friends
17   would be able to view it?
18        A.    Yes, ma'am.
19        Q.    Are you one of his SnapChat
20   friends?
21        A.    At the time --
22        Q.    At the time.
23        A.    Yes, ma'am.
24        Q.    Did you see it on SnapChat after he
25   posted it?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-111

```
1                        Case Leroy                    111
2        A.    I saw it like seven minutes
3   after, ma'am.
4        Q.    Did you take a screenshot?
5        A.    No, ma'am.
                                        - Student A
6        Q.    So you're certain that ▮ posted
7   this photo, but you can't remember whether or
8   not ▮  id?
             - Student B
9        A.    Yeah, I don't remember if JG
10  did, ma'am.
11       Q.    Do you know who posted first, you
12  or ▮ ?
            - Student A
13       A.    I don't know, ma'am.
14       Q.    So you don't know one way or the
15  other; it could have been either way?
16       A.    Yes, ma'am.
17       Q.    If you know, were you both in the
18  process of posting it kind of around the same
19  time?
20       A.    I would say so, ma'am.
                            - Student A
21       Q.    Did you tell ▮ that you were going
22  to post it before you did?
23       A.    No, ma'am.
24       Q.    Did you discuss this caption with
25  anyone, your caption, "Cops got another"
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-112

```
 1                        Case Leroy              112
 2    before you posted that?
 3         A.    No, ma'am.
                       Student A
 4         Q.    Before ███ posted what's on the
 5    screen as Exhibit B, did you overhear him
 6    talking about adding the "Black lives matter"
 7    logo or the caption, "Another one down"?
 8         A.    No, ma'am.
                              - Student A
 9         Q.    Do you know if ██ received any
10    notifications that someone had taken a
11    screenshot of his post?
12         A.    I don't know, ma'am.
13         Q.    After you both posted your
14    respective SnapChat posts, tell me what
15    happened next.
16         A.    After they were posted, like seven
17    minutes later, I saw what he posted and I
18    immediately told him to take it down and I
19    took mine down.
20              THE STENOGRAPHER:   I'm
21         sorry.
22              Can you repeat that?
23         A.    Sorry about that.
24              After I saw what he posted like
25    seven minutes later, I told him immediately
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-113**

```
1                            Case Leroy                    113
2      to take it down because it wasn't right and
3      then I took mine down.
4           Q.   When you told him to take it down,
5      what else did you tell him, if anything?
6           A.   I just basically told him to take
7      it down, that it wasn't right.  Like that's
8      pretty much what I told him.  It wasn't
9      right, to take it down.
10          Q.   What did you mean when you said "it
11     wasn't right"?
12          A.   What he was -- I didn't -- what he
13     was intending in the picture, I told him that
14     it wasn't right.
15          Q.   What did you think he was intending
16     in the picture?
17          A.   After I saw the "Black lives
18     matter," I just -- I thought he was referring
19     back to the George Floyd case.  I told him it
20     wasn't right.  I told him to take it down.
21          Q.   What did he say in response, if
22     anything?
23          A.   He first questioned me.  Then I
24     told him it wasn't right and that's not --
25     and that's not what the picture is supposed
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-114**

```
 1                     Case Leroy              114
 2     to like intend.  And he was like all right,
 3     I'll take it down.
 4          Q.    You may have already testified to
 5     this, but how long was your post up in a
 6     story before you took it down?
 7          A.    Like just estimate around seven
 8     minutes, ma'am.              - Student A
 9          Q.    How about █, do you know how long
10     his post was up before he took it down?
11          A.    His is just another estimate.  I
12     would just say around the same as mine.
13          Q.    So seven minutes?
14          A.    (No response.)
15          Q.    Seven minutes?
16          A.    Sorry, yes, ma'am.
17          Q.    Where were you when you took the
18     posts off of SnapChat?
19          A.    I was -- I was at the red light in
20     Liberty driving home.
21          Q.    Was anybody else in your car?
22          A.    Just him, ma'am.
23          Q.    █?        - Student A
24          A.    Yes, ma'am.
25          Q.    Where was █ █ at the time?  - Student B
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-115**

```
                              Case Leroy                        115
                                             - Student C
1
2         A.    He was back with ▮, ma'am, because
3    they didn't leave.  They were staying there.
4         Q.    This red light that you were at,
5    how far away is it from the parking lot at
6    the dance studio?
7         A.    Not -- I'd say around -- this is
8    just an estimate.  I'd say around seven
9    minutes, ma'am.
10        Q.    You were driving around seven
11   minutes until you were at that red light?
12        A.    That's just a rough
13   estimate, ma'am.
14        Q.    Is it possible that your story
15   could have been up for longer than seven
16   minutes or are you sure it was seven minutes?
17        A.    I wouldn't say like too much longer
18   if it was longer than seven minutes.
19   Probably at most ten or eleven minutes.
20        Q.    You remember that you took the post
21   down somewhere between seven to eleven
22   minutes after posting it; is that accurate?
23        A.    Yes, ma'am.
24        Q.    What prompted you to remove it at
25   the red light?
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-116**

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 51 of 71

```
1                              Case Leroy              116
2          A.    My phone started blowing up and I
3    was getting like messages left and right and
4    like threat messages.  That's when I looked
5    at his story and I was like man you got --
6    you've got to take that down.  I was like
7    that's not what we -- that's not what was
8    intended.  So we both deleted ours.
9          Q.    When you say you're phone was
10   "blowing up," how many messages were you
11   getting in that seven to eleven-minute
12   timeframe?
13         A.    I'm just going to give like a rough
14   estimate.
15         Q.    Sure.
16         A.    Like six or seven repeatedly
17   texting me left and right.
18         Q.    Who was texting you?
19         A.    I don't remember that, to be honest
20   with you, ma'am.
21         Q.    Were they students?
22         A.    I know there were some students.  I
23   don't remember all of them, ma'am.
24         Q.    Do you remember anyone's name?
25         A.    I can't remember anyone's
```

**A-117**

```
1                          Case Leroy                    117
2    name, ma'am.
3         Q.    Were they texting you on your phone
4    or through some other --
5         A.    Through SnapChat, ma'am.
6         Q.    Can you explain to me how the
7    texting feature on SnapChat works?
8         A.    It's the same as the story, ma'am.
9    24 hours and then the text goes away.
10        Q.    So were people commenting in
11   response to your story; is that what was
12   happening?
13        A.    Yes, ma'am.
14        Q.    How much time would you say had
15   passed until the messages started coming in?
16        A.    Like four minutes, ma'am, five
17   minutes; just a rough estimate.
18        Q.    Tell me what you remember about the
19   comments.
20              Like, what did they say?
21        A.    I remember people telling me like
22   they were going to do stuff to me and like
23   find me and stuff like that and start cursing
24   me out and stuff.
25        Q.    Did anybody explain why they wanted
```

A-118

```
                              Case Leroy                    118
 1
 2    to curse you out and do stuff to you?
 3         A.    At the time like when they first
 4    started, no, because they were just on a
 5    mission to like curse me out and like
 6    threaten me.  Then I just said, I was like
 7    what?  And they told me.  I was like -- they
 8    told me about █ - Student A 's post and I was like oh.
 9         Q.    You commented in the story chain
10    "What?"  That's what you commented?
11         A.    I just said -- I said like -- I
12    said like what are you -- what are you like
13    upset about?  Or something like along those
14    lines and they explained it.  I was like -- I
15    tried to explain myself, how I didn't mean it
16    like that way.  And then they told me about
17    M - Student A █ 's post and that's when I looked at it and
18    I immediately, I was like we got -- you've
19    got to like take it down.
20         Q.    Who is "they," the people
21    commenting on your story?
22         A.    Yes, ma'am.
23         Q.    I might have already asked this,
24    but do you remember how many people were
25    commenting before you took the post down?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-119

```
                              Case Leroy                119
1
2         A.    It's just going to be a rough
3    estimate.  Like five or six people, six or
4    seven.
5         Q.    So five to seven is a good range?
6         A.    Yes, ma'am.
7         Q.    After you asked, "What are you
8    upset about," how did they respond to that?
9    Did they explain?
10        A.    They explained like how it -- like
11   they explained and they told me like what █
                                                   - Student A
12   posted and then that's when I went and
13   looked.  And then I told him -- I told him to
14   take it down.
15        Q.    Did anyone comment about how they
                                      M  - Student A
16   reacted to your post, not █'s?
17        A.    Not that I remember, ma'am.  I just
                                          - Student A
18   remember hearing a lot about █ s post.
19             MS. WEISBORD:  I'm going to
20             mark another document as
21             Defendant's Exhibit C.
22             (An e-mail was marked as
23             Defendants' Exhibit C, for
24             identification, as of this
25             date.)
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-120**

```
 1                        Case Leroy              120
 2   BY MS. WEISBORD:
 3        Q.    I'm going to give you an
 4   opportunity to review it before I ask you
 5   about it, but I will note that right now, I'm
 6   only going to be asking you about the photo
 7   and not about the contents of the e-mail,
 8   but, of course, I will leave it up on the
 9   screen and give you an opportunity to read
10   it.
11            So just let me know when you're
12   done and/or when you would like me to scroll.
13   Let me zoom in so everybody can see it.
14            Everyone, let me know when you're
15   finish reading.
16        A.    Good.
17                  MS. WEISBORD:  Mr. Dorfman,
18            can I scroll?
19                  MR. DORFMAN:  Yes, you may.
20   BY MS. WEISBORD:
21        Q.    I'm going to scroll down.
22            Unfortunately, the picture got cut
23   off into two pages.  I'm going to kind of
24   maybe try to -- that's not going to work.
25   I'm going to show you the top of the picture.
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-121**

```
 1                        Case Leroy                    121
 2              Do you see that?
 3              Do you see the top, it says, "Case
 4   L"?  Do you see that?
 5        A.    Yes, ma'am, I'm sorry.
 6        Q.    Is that you?
 7        A.    Yes, ma'am.
 8        Q.    Is this a screenshot of your
 9   SnapChat post; is that accurate?
10        A.    Yes, ma'am.
11        Q.    You see it says, "18M ago from
12   camera roll"?  Do you see that?
13        A.    (No response.)
14        Q.    Do you know what the "M" stands
15   for?
16        A.    Yes, ma'am.
17        Q.    What does it stands for?
18        A.    Minutes.
19        Q.    Is it accurate to say that whoever
20   captured this did so 18 minutes after you
21   posted it?
22        A.    18 minutes is when you -- from the
23   time you put it in your camera roll, ma'am.
24        Q.    Explain to me what you mean, how it
25   works.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-122

```
1                         Case Leroy              122
2        A.    Like when you put it in your camera
3   roll and then when you post it, it will tell
4   you from the time you put it in your camera
5   roll.
6        Q.    Are you saying that this screenshot
7   was captured 18 minutes after you saved the
8   photo to your camera roll?
9        A.    Yes, ma'am.
10       Q.    Would you have saved it to your
11  camera roll before you posted it as a story?
12       A.    Yes, ma'am.
13       Q.    I'll represent that this is an
14  e-mail that was sent to Shirlee Davis on
15  April 19, 2021 at 10:12 p.m.
16             Would you have any reason to
17  disagree with that statement?
18       A.    No, ma'am.
19       Q.    Can you tell me who Shirlee Davis
20  is?
21       A.    High school principal, ma'am.
22       Q.    Does this document refresh your
23  memory as to when you posted the photo?
24       A.    No, ma'am.
25             Are you talking about like the
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-123**

```
1                          Case Leroy                    123
2      date, ma'am?
3           Q.    Yes.
4           A.    Yes, the day on top, ma'am.
5           Q.    April 19th?
6           A.    Yes, ma'am.
7           Q.    Earlier, you couldn't recall what
8      day you posted it, but looking at this
9      e-mail, do you recall if you posted the photo
10     on April 19, 2021?
11          A.    I -- yes, ma'am.
12          Q.    If you don't remember, that's okay.
13          A.    I don't fully remember, ma'am.
14                     MS. WEISBORD:  Let's go off
15                the record.
16                     (Whereupon, a recess was
17                taken at 1:14 p.m. and the
18                proceedings resumed at 2:18 p.m. as
19                follows:)
20     BY MS. WEISBORD:
21          Q.    Before we went on the record,
22     Mr. Leroy, it sounded like you wanted to make
23     a comment regarding some previous testimony.
24                     So why don't you go ahead and say
25     what you were going to say on the record?
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-124**

```
1                         Case Leroy                    124
2          A.     One of your previous questions if I
3     have reviewed any documents, I forgot I did
4     look at my old transcript.
5          Q.     What transcript are you referring
6     to?
7          A.     The one that I took at the school.
8          Q.     The Superintendent's Hearing?
9          A.     Yes, ma'am.
10         Q.     When did you review that
11    transcript?
12         A.     I don't know the exact date, ma'am.
13    It was couple of days ago, ma'am.  I just
14    wanted to.
15         Q.     Did you read the entire transcript
16    or portions of it?
17         A.     I just -- I quickly went over it
18    just to look at it.
19         Q.     Do you remember reviewing anything
20    else?
21         A.     Not that I remember, ma'am.
22         Q.     We're back from the break and I
23    want to remind you the same rules apply.
24    You're still under oath.
25         A.     Yes, ma'am.
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-125**

```
 1                        Case Leroy                    125
 2          Q.    Did you speak to anyone during the
 3     break?
 4          A.    Yes, ma'am, my attorney.
 5          Q.    Anyone other than your attorney?
 6          A.    My attorney.
 7          Q.    So no one other than him?
 8          A.    Just my attorney, ma'am.
 9          Q.    Don't tell me what you said.  Just
10     tell me how long you talked for.
11          A.    Like, I don't know ten
12     minutes, ma'am.
13          Q.    Before the break we were talking
14     about some of the messages or comments that
15     you received before you took the post down.
16                Do you remember that?
17          A.    Yes, ma'am.
18          Q.    I'm going to ask you more
19     questions, but that's kind of where we are
20     at, just to give everyone a reminder.
21                The comments that you received
22     prior to taking your post down, did any of
23     them characterize your SnapChat post as
24     racist?  Did anyone use that word?
25          A.    I don't know, ma'am.
```

A-126

```
1                        Case Leroy                    126
2         Q.    Did anyone reference George Floyd
3    or Derek Chauvin in their comments?
4         A.    I don't remember, ma'am.  That was
5    a little bit ago.
6         Q.    Do you remember any of these
7    comments characterizing your post in any
8    other way or in any way?
9         A.    Can you explain that?
10        Q.    Sure.  I'll ask a new question.
11              The comments that you received,
12   would you characterize them as negative
13   reactions to what you had posted?
14        A.    You mean people cursing me
15   out, ma'am?
16        Q.    Right.
17              Were people acting negatively to
18   what you posted?
19        A.    Yes, ma'am.
20        Q.    I may have already asked this, but
21   do you remember what people were saying about
22   your post in these comments?
23        A.    I don't know.  I don't recall.  I
24   don't really remember what they were saying.
25   I just remember getting cursed out a lot and
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-127

```
1                          Case Leroy                    127
2       threatened.
3            Q.    Whatever they were saying, it
4       prompted you to take down your post
5       immediately, right?
6            A.    Yes, ma'am.
7            Q.    Do you know if anyone commented in
8       response to ██ - Student A 's story that he posted?
9            A.    I'm not -- I'm not sure about that
10      one, ma'am.
11           Q.    Did you have an opportunity to
12      review his story or anything below it before
13      he deleted it?
14           A.    To view his story, ma'am?
15           Q.    Yes.
16           Did you see ██ - Student A 's story at some
17      point?
18           A.    Yes, ma'am.  After I saw it, I told
19      him to take it down, ma'am.
20           Q.    Before it was removed, did you look
21      at any of the comments?
22           A.    You can't see people's comments on
23      SnapChat, ma'am.  The comments go into like a
24      personal message.  So it's not like a public
25      thing for people to see what they comment
```

A-128

```
1                          Case Leroy                    128
2     on, ma'am.
3          Q.    I'm having a light just went on.
4                So when people were messaging you,
5     that just went to you, the message?
6          A.    Yes, ma'am.
7          Q.    So it was a private message?
8          A.    On that platform, yes, ma'am.
9          Q.    So it wasn't as if people are
10    commenting below and anybody can chime in?
11         A.    Not on that platform, ma'am.
12         Q.    Again, I'm thinking about Facebook,
13    but thank you for clarifying that for me.
                                              - Student A
14               After you deleted your post and  ▉
15    deleted his post at the red light, where did
16    you drive to next?
17         A.    I dropped him off at home and then
18    I went home, ma'am.
19         Q.    How long of a drive was it between
                               - Student A
20    the red light and  ▉ 's home?
21         A.    I'm just going to give an estimate.
22         Q.    Sure.
23         A.    I want to say about fifteen
24    minutes, ma'am.
25         Q.    Did you two have any discussions
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-129

Case 7:21-cv-06008-NSR-AEK   Document 64-3   Filed 06/12/23   Page 64 of 71

```
1                        Case Leroy                    129
2     about what was happening during the ride
3     home?
4          A.    Just about the comments we were
5     getting and stuff.
6          Q.    Tell me what you remember about
7     that discussion; who said what.
8          A.    I just remember it got reposted on
9     a bunch of different social media platforms
10    and there were like threats and stuff and
11    that's all I can remember, ma'am.        - Student A
12         Q.    So on the drive home, you and █
13    were talking about this, about the fact that
14    it was being reposted and there were threats?
15         A.    Yes, ma'am.
16         Q.    What other social media platforms
17    were you seeing comments on?
18         A.    Facebook, Instagram, SnapChat,
19    Twitter.  I didn't have Twitter, but people
20    were sending me like people's posts on
21    Twitter.
22         Q.    How were they sending it to you?
23         A.    Through SnapChat.  They were just
24    letting me know what people were saying about
25    me.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-130

```
1                        Case Leroy                    130
2         Q.    Were they your friends who were
3    sending you those Twitter posts?
4         A.    Yes, ma'am.
5         Q.    Were you on Facebook actively
6    looking or were you receiving notifications?
7         A.    People -- people were also sending
8    -- because I don't use Facebook like at all.
9    People were sending me like pictures of what
10   people were posting about me.
11        Q.    Were those your friends sending
12   those?
13        A.    Yes, ma'am.
14        Q.    Other than what your friends were
15   sending you to keep you in the loop, did you
16   see any messages like on your own --
17        A.    I just --
18        Q.    -- outside of that context?
19        A.    I'm sorry.  I didn't mean to cut
20   you off.  I saw -- I saw when they were on
21   SnapChat and Instagram.
22        Q.    Were you looking actively or were
23   you getting notifications or both?
24        A.    I wasn't looking.  I was just kind
25   of scrolling through the apps and I would see
```

**A-131**

```
 1                    Case Leroy                 131
 2    them pop up.
 3         Q.    Were you scrolling to see if there
 4    were any comments related to what was
 5    happening or were you scrolling because
 6    that's what you do?
 7         A.    I was just -- I was just scrolling
 8    to look at stuff, ma'am.
 9         Q.    In the approximate fifteen minutes
10    between leaving the red light to drop off  ▮ ,
11    did you see any other posts or messages on
12    any social media platforms?
13         A.    I was driving, so I wasn't -- I
14    wasn't really looking at the time.  I more or
15    less looked when I got home.     - Student A
16         Q.    After you dropped ▮ off, did you
17    go straight home?
18         A.    I don't -- yes, ma'am, yeah.
19         Q.    How long would that ride have been,
20    if you know?
21         A.    His house to my house?
22         Q.    Yes.
23         A.    I'm just going to give an estimate
24    again.
25         Q.    Sure.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-132

```
 1                         Case Leroy                    132
 2        A.     Approximately, eight, nine.  Eight
 3   through ten minutes maybe.
 4        Q.     During those eight to ten minutes,
 5   did you communicate with anyone about what
 6   was happening?
 7        A.     I'm trying to think back.  Not that
 8   I can remember, ma'am.  I kind of -- after it
 9   happened, I kind of just went ghost on
10   everything, I believe, on my social media and
11   stuff.
12        Q.     When did you do that?
13        A.     I'll just give you like an
14   estimate.
15        Q.     Sure.
16        A.     Like a day or two after.
17        Q.     A day or two after you posted it?
18        A.     Yes, ma'am.
19        Q.     If this took place on the evening
20   of April 19th, you would have deleted your
21   social media either the 20th or 21st?
22        A.     Yes, ma'am.  Just to give you a
23   closer estimate, I -- I'd say the morning of
24   the 20th, ma'am.
25        Q.     After you got home, what did you do
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-133

```
 1                       Case Leroy                133
 2     for the rest of the night?
 3          A.    I'm not going to lie.  I cried a
 4     lot.
 5          Q.    Why were you crying?
 6          A.    Because I felt, I felt like I put
 7     my life in danger, my family's life in
 8     danger.  And it just caused a really bad
 9     depression with me because I don't want
10     people to look at me that way.
11          Q.    Did you feel like you were
12     experiencing depression that evening once you
13     got home?
14          A.    As soon as the threats started
15     coming in and I realized like how people like
16     viewed me after that, I got like really bad
17     depression.  I stayed in the house most of
18     the time.
19          Q.    For how long did you spend most of
20     your time in the house?
21          A.    Say, a couple of days because at
22     one point, I got really scared, so I went and
23     stayed up with my sister at college.
24          Q.    Do you remember when you headed to
25     your sister's place at her college?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-134

```
 1                          Case Leroy                    141
 2     characterizing the posts as racist in nature?
 3          A.    I didn't hear what the e-mails were
 4     about; just knew e-mails were sent, ma'am.
 5          Q.    Do you know what SARE is?  Have you
 6     ever heard of that?
 7          A.    Negative, ma'am.
 8          Q.    Do you know what Students Against
 9     Racism in Education is?  Have you ever heard
10     that phrase?
11          A.    I have not heard of that, ma'am.
12          Q.    In the days after posting the
13     photo, did you have any discussions with any
14     of your friends about the posts?
15          A.    Not that I can remember, ma'am.
16          Q.    When did you first speak to your
17     parents about what was happening?
18          A.    I'm not too sure, ma'am.
19          Q.    But it was some time the next day
20     on April 20th?
21          A.    Yes, ma'am.
22          Q.    You testified earlier that you were
23     informed that you shouldn't go to school that
24     day.
25                Can you tell me how that came
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-135

|     |                                              |
|-----|----------------------------------------------|
| 1   | *Case Leroy*                          142    |
| 2   | about; how you learned that?                 |
| 3   | A.    The school called my parents and       |
| 4   | suggested that I didn't go to school the next|
| 5   | day because there was a danger for me to be  |
| 6   | there.                                       |
| 7   | Q.    Did you hear the conversation, or      |
| 8   | did your parents convey to you what it was?  |
| 9   | A.    They told me what it was, ma'am.       |
| 10  | Q.    Do you know if one of your parents     |
| 11  | or both of your parents were on that phone   |
| 12  | call?                                        |
| 13  | A.    Not sure, ma'am.                       |
| 14  | Q.    But at least one of them took a        |
| 15  | call from the school, right?                 |
| 16  | A.    Yes, ma'am.                            |
| 17  | Q.    Do you know who from the school        |
| 18  | called your parent or parents?               |
| 19  | A.    I'm not too sure, ma'am.               |
| 20  | Q.    Do you remember when on April 20th     |
| 21  | that call came in?                           |
| 22  | A.    I do not, ma'am.                       |
| 23  | Q.    At some point, did you go to the       |
| 24  | school on April 20th?                        |
| 25  | A.    I don't remember, ma'am.               |

**ON TIME COURT REPORTING**
**516-535-3939**

A-136

```
1                        Case Leroy                    143
2          Q.    What did your parents have to say
3     about your SnapChat post; how did they react
4     to it?
5          A.    They're disappointed in me.
6          Q.    Did they say why they were
7     disappointed in you?
8          A.    Yes, ma'am, because it could have
9     been taken or -- because it could have been
10    taken differently from what I impicted [sic]
11    or wanted to be taken.
12         Q.    Did they explain what they meant,
13    like how it could have been taken by someone
14    else?
15         A.    I don't really remember, ma'am.
16    This is really a little bit ago.
17         Q.    Did either of your parents ever
18    characterize your post as being like racist?
19         A.    I don't really remember.  It's been
20    while, a bit.
21         Q.    I didn't catch the end of your
22    answer.
23               Did you say "I bet"?
24         A.    What?  No.  I didn't say that.  I
25    just said I don't really know.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-137

# EXHIBIT D

A-138

```
 1                                                      194

 2     UNITED STATES DISTRICT COURT

 3     SOUTHERN DISTRICT OF NEW YORK

 4     ----------------------------------------------x

 5     CASE LEROY,

 6                                Plaintiff,

 7               -against-

 8     LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and

 9     JOHN P. EVANS, in his capacity as

10     Superintendent of Schools of Livingston Manor

11     Central School District,

12                                Defendants.

13     ----------------------------------------------x

14

15                    ZOOM TELECONFERENCE

16                    SEPTEMBER 16, 2022

17                    10:00 A.M.

18

19          CONTINUED OF EXAMINATION FROM AUGUST 5,

20     2022 OF CASE LEROY, the Plaintiff in the

21     above-entitled action, held at the above date

22     and time, pursuant to Notice, taken via Zoom

23     teleconference, before Holly Daloia Osteen, a

24     Reporter and Notary Public of the State of

25     New York.
```

A-139

```
 1                                                     195

 2      A P P E A R A N C E S:

 3

 4        JEROME DORFMAN, ESQ.

 5             Attorneys for Plaintiff

 6             8 Breezy Hill Road

 7             Parkville, New York 12768

 8        BY:  JEROME DORFMAN, ESQ.

 9

10

11        SOKOLOFF STERN, LLP

12             Attorneys for Defendant

13             179 Westbury Avenue

14             Carle Place, New York 11514

15        BY:  CHELSEA WEISBORD, ESQ.

16

17

18      ALSO PRESENT:

19        BRIANNA STUPARICH

20

21

22

23

24

25
```

A-140

```
1                                              196
2                 S T I P U L A T I O N S
3
4         IT IS HEREBY STIPULATED AND AGREED
5    by and between the attorneys for the
6    respective parties herein, that filing,
7    sealing and certification be and the
8    same are hereby waived.
9
10        IT IS FURTHER STIPULATED AND AGREED
11   that all objections, except as to the
12   form of the question shall be reserved
13   to the time of the trial.
14
15        IT IS FURTHER STIPULATED AND AGREED
16   that the within deposition may be signed
17   and sworn to before any officer authorized
18   to administer an oath, with the same force
19   and effect as if signed and sworn to before
20   the Court.
21
22        That a copy of this examination shall
23   not be furnished without charge to the
24   attorney representing the witness
25   testifying herein.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-141

```
                                                        197
 1
 2    C A S E      L E R O Y,
 3                 the witness herein, having been
 4                 previously duly sworn by a Notary
 5                 Public of the State of New York,
 6                 was examined and testified as
 7                 follows:
 8    BY THE REPORTER:
 9         Q.    Please state your name for the
10    record.
11         A.    Case Leroy.
12         Q.    Please state your address for the
13    record.
14         A.
15
16                 MS. WEISBORD:  Good morning,
17             Mr. Leroy.
18                 This is our second day of
19             your deposition, but since it's
20             been a little bit, I'm just going
21             to go over the ground rules with
22             you again just to kind of refresh
23             your memory.
24                 If you don't understand a
25             question, please let me know and I
```

ON TIME COURT REPORTING
516-535-3939

A-142

```
 1                     Case Leroy                202
 2                 Exhibit D, for
 3                 identification, as of this
 4                 date.)
 5    BY MS. WEISBORD:
 6         Q.    Did you take this photo?
 7         A.    I did, ma'am.
 8         Q.    Do you remember when you took it?
 9         A.    I do not, ma'am.
10         Q.    Do you see on the left side there
11    is a date March 25, 2021?
12              Does that sound accurate in terms
13    of when you may have taken the photo?
14         A.    I really don't know, ma'am.
15         Q.    That's all right.
16              Can you tell me where this photo
17    was taken?
18         A.    First period English class.
19         Q.    Is that the class you took at
20    Livingston Manor?
21         A.    Yes, ma'am.
22         Q.    Was this during class or in between
23    classes?
24         A.    I don't really remember, ma'am.
25                   MR. DORFMAN:  Just for the
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-143

Case 7:21-cv-06008-NSR-AEK   Document 64-4   Filed 06/12/23   Page 7 of 23

```
 1                      Case Leroy              203
 2              record, I want to note my objection
 3              of relevance to this line of
 4              questioning regarding this
 5              photograph.
 6                   MS. WEISBORD:  Sure.
 7   BY MS. WEISBORD:
 8        Q.   Can you tell me who the students in
 9   the photo are?                 - Student E
                   - Student G
10        A.   [  ]  and  [  ].
11        Q.   Who is the student in the red
12   shirt?                 - Student G
13        A.   That's  [  ].
14        Q.   And then the other student who is
15   sitting that would be  [  ]?   Student E
16        A.   Yes, ma'am.
17                   MS. WEISBORD:  Holly, just
18              do initials for two students for
19              the record.
20                   THE STENOGRAPHER:  Yes.
21   BY MS. WEISBORD:
22        Q.   Can you just tell me how these two
23   students came to be in this pose that's
24   depicted in the photo if you know?
25        A.   We were all talking about -- so me
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-144

Case 7:21-cv-06008-NSR-AEK   Document 64-4   Filed 06/12/23   Page 8 of 23

*Case Leroy*                                204

1

2    and the dude in red, ▮ - Student G we were in public

3    safety together and the dude sitting down COJ

4    he was asking us -- more so ▮ - Student G. He was

5    asking ▮ - Student G about like -- like holds and stuff

6    like we do in public safety for arrests and

7    stuff like that.  And then ▮ - Student E asked him to

8    show him and he showed him.

9        Q.    The photo is that when ▮ - Student G was

10   showing ▮ - Student E a hold that he learned in public

11   safety; is that what's captured in the

12   photograph?

13       A.    Yes, ma'am.

14       Q.    Why did you take this photo?

15       A.    From what I remember one of them

16   told me to take the picture and then that's

17   what I remember from that to be honest,

18   ma'am.

19       Q.    Do you remember who told you to

20   take the picture?

21       A.    I do not, ma'am.

22       Q.    Was it ▮ - Student G or ▮ - Student E or someone else?

23       A.    It was one of them, ma'am.

24       Q.    Did you send this photo to anyone

25   after you took it?

**ON TIME COURT REPORTING**
**516-535-3939**

**A-145**

*Case Leroy*                                        205

1

2       A.    Just ▮ and ▮, ma'am.
              . - Student G        - Student E

3       Q.    How did you send it to them?

4       A.    Through SnapChat, ma'am.

5       Q.    Was that a message directly to them

6    or --

7       A.    Yes, ma'am.

8       Q.    -- was it posted on your story?

9       A.    No.  Just a message to them, ma'am.

10      Q.    Did you at any point post this

11   photo on the SnapChat story?

12      A.    Not from what I remember, ma'am.

13      Q.    Do you see Exhibit D on the screen

14   includes a caption and I apologize it's a

15   little blurry but says "looks almost too

16   realistic" and then there's some type of

17   emoji that I can't make out.

18            Can you make out those words?

19      A.    Somewhat.  It's just really blurry,

20   ma'am.

21      Q.    Yes.                              - Student G

22            When you sent the photo to ▮ and
        . - Student E

23   ▮, did it include a caption?

24      A.    I don't remember, ma'am.

25      Q.    Did you ever create a caption that

**ON TIME COURT REPORTING**
**516-535-3939**

A-146

```
                           Case Leroy                    209
                        - Student E        - Student G
 1
 2      Q.     Did  ▮  or  ▮  ever tell you to take

 3    down the photo off of any social media?

 4      A.     I don't really remember, ma'am.

 5      Q.     When was the first time that you

 6    saw the photo with the caption "looks almost

 7    too realistic"?

 8             Have you seen that before I showed

 9    it to you during your deposition?

10      A.     Yes, ma'am.  I saw it when I was in

11    the super -- I think it's the

12    Superintendent's Hearing -- no.  The meeting

13    I had for the suspension when they presented

14    the pictures I saw it on there then, ma'am.

15      Q.     Is that a meeting that took place

16    with Superintendent Evans and Principal

17    Davis?

18      A.     Yes, ma'am.

19      Q.     Are you referring to another

20    meeting?  I just want to make sure we are

21    talking about the same meeting.

22      A.     Yes.  That is the meeting.  I was

23    just going back.
                             - Student G            - Student E
24      Q.     Do you know if  ▮  or  ▮  sent this

25    photo to anyone?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-147

```
1                         Case Leroy              210
2        A.    I do not, ma'am.
3        Q.    Do you have any reason to believe
4   that they did?
5        A.    I really don't know, ma'am.
6        Q.    Are you aware that the District
7   received complaints about this photo in
8   Exhibit D in April of 2021?
9        A.    I didn't -- I didn't know that,
10  ma'am.
11       Q.    Do you know why you were showed
12  this picture in a meeting with the
13  superintendent and the principal?
14       A.    I do not.
15       Q.    Did they tell you why they were
16  showing you the picture?
17       A.    I don't remember, ma'am.
18       Q.    Did you ever learn this photo was
19  going around social media in April of 2021?
20       A.    (Inaudible.)
21       Q.    I'm sorry.  I didn't hear that.
22       A.    I remember seeing it attached to
23  the other picture like once or twice.  But I
24  didn't know it was going around, ma'am, like
25  that happened.
```

A-148

```
 1                        Case Leroy                    211
 2          Q.    But you saw it going around at
 3    least once or twice?
 4          A.    I remember, yeah.  I remember
 5    seeing it, ma'am.
 6          Q.    Do you remember what social media
 7    platform you saw this photo on?
 8          A.    I do not, ma'am.
 9          Q.    Do you remember who put it on
10    social media?
11          A.    I do not, ma'am.
12          Q.    Did you see any comments on social
13    media characterizing this photo as racist in
14    nature?
15          A.    I can't remember, ma'am.
16          Q.    Did you receive any text messages
17    from anyone who commented that this photo was
18    racist in nature?
19          A.    I honestly don't remember, ma'am.
20          Q.    Did anyone ever tell you verbally
21    that they felt this photo, the photo on the
22    screen was racist in nature?
23          A.    I really just don't remember,
24    ma'am.
25          Q.    Do you remember anyone telling you
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-149

```
 1                          Case Leroy                  229
 2          A.     I'm pretty sure it was the morning,
 3    ma'am.
 4          Q.     Do you remember how long it lasted?
 5          A.     Can I give an estimate?
 6          Q.     Yes, of course.
 7          A.     I would say like forty-five minutes
 8    to an hour.
 9          Q.     And you testified at the hearing
10    under oath, correct?
11          A.     Yes, ma'am.
12          Q.     Tell me what you remember about the
13    hearing?
14          A.     All I remember is getting asked --
15    asked questions like about the pictures and
16    stuff.
17          Q.     Do you remember what questions you
18    were asked?
19          A.     No, not really, ma'am.  I don't
20    remember.
21          Q.     Do you remember anything that you
22    said during the hearing?
23          A.     I remember just them asking me
24    about the picture and I explained it.
25          Q.     How did you explain the picture?
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-150**

```
1                          Case Leroy              230
2         A.     Like I explained like, like how it
3    happened.  Like how I was looking underneath
4    the car and stuff like that.  Just like the
5    whole like leading up -- like how it
6    happened.  I don't really -- like.
7         Q.     The hearing was transcribed and
8    you've had an opportunity to review that
9    transcript, correct?
10        A.     I have looked over it, ma'am.
11        Q.     Is there anything that occurred at
12   the hearing that you remember that isn't
13   captured on the transcript that you reviewed?
14        A.     I know -- I know there were some
15   things that I said that was not fully like
16   written down.  I just -- I don't remember
17   what they were.  I just remember looking at
18   it and thinking that wasn't like the full
19   thing that I said.
20        Q.     So you think that the transcript
21   was incomplete for certain portions?
22        A.     I don't really know to be honest.
23        Q.     Are you aware that the hearing was
24   also recorded by audio?
25        A.     I do not remember hearing that,
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-151

Case 7:21-cv-06008-NSR-AEK   Document 64-4   Filed 06/12/23   Page 15 of 23

```
 1                     Case Leroy              231
 2   ma'am.
 3        Q.   I'm going to ask you some questions
 4   about specific portions of the transcript
 5   from the hearing, and what I'm going to do is
 6   I'm going to scroll to the page and lines
 7   that I'm going to ask you about and give you
 8   a chance to read them before I ask my
 9   questions.
10        A.   Yes, ma'am.
11        Q.   I'm just going to ask you a few
12   questions about the Page 18 of Exhibit F that
13   I have on the screen but before I do that,
14   I'm going to give you a moment to review it.
15   Let me know when you're finished.
16        A.   (Witness peruses document.)
17        Q.   I now realize I have to scroll to
18   the next page.  So let me know when you're
19   ready for that.
20        A.   I'm ready for that.
21        Q.   If you can just read up through
22   line 9.  Of course, you're welcome to read
23   the whole page if you want to.
24        A.   You said to read to where, ma'am?
25        Q.   To line 9, right here.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-152

```
                            Case Leroy                    232
 1
 2         A.    I'm ready.
 3         Q.    I'm just going to scroll back to
 4    Page 18.
 5              Do you see towards the bottom where
 6    it says Mr. Reid, do you know who that is?
 7         A.    I don't remember like.
 8         Q.    Do you remember if that was the
 9    hearing officer?
10         A.    Oh, yes, ma'am.
11         Q.    So you see where in the transcript
12    she asked you, quote, "So has it been
13    explained to you why the statement might have
14    been insensitive and may have been perceived
15    that way?" end quote.
16              And you responded, "Yeah."
17              Do you see that?
18         A.    Yes, ma'am.
19         Q.    Can you tell me who explained to
20    you that the statement may have been
21    insensitive?
22         A.    The main people were just my
23    parents.
24         Q.    Anyone other than your parents?
25         A.    That's all I can remember to be
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-153

```
1                         Case Leroy                233
2    honest right now.
3        Q.    What did your parents tell you?
4        A.    Just that it made a lot of people
5    upset.  The way like -- I don't really know
6    how to explain it.  It's been a while.
7        Q.    Just do your best.
8        A.    Just mainly that it made a lot of
9    people upset and that I got to start thinking
10   like before I do stuff.
11       Q.    When they said that the post made a
12   lot of people upset, were they referring to
13   what you posted?
14       A.    Yes, ma'am -- well.
15       Q.    Go ahead.
16       A.    Sorry.  They're mainly talking
17   about  ███  post that made a lot of people
18   upset.
19       Q.    Were they only talking about  ███
20   post or were they talking about his post and
21   your post?
22       A.    I don't really know to be honest,
23   ma'am.
24       Q.    When your parents were talking to
25   you about how the post or posts could be
```

(line 17) - Student A

(line 18) - Student A

**ON TIME COURT REPORTING**
**516-535-3939**

A-154

```
 1                          Case Leroy                    234
 2      perceived as insensitive, did they use the
 3      word "racist"?
 4           A.    I don't really know, ma'am.
 5           Q.    I'm going to point you to the
 6      bottom of Page 18 of Exhibit F.  Mr. Reid
 7      asks you, quote, "What is your understanding
 8      of that?" end quote.
 9                You responded, quote, "I just -- I
10      didn't realize that the George Floyd case was
11      going on.  I really didn't remember.  Like I
12      wasn't thinking that when this was taken and
13      then someone told me that it can be taken
14      that way, I felt terrible after." end quote.
15                Do you see that?
16           A.    Yes, ma'am.
17           Q.    When you testified that you didn't
18      realize the George Floyd case was going on,
19      what do you mean by that?
20           A.    So I was -- I was later informed
21      that the trial was taking place and that's
22      basically what I meant by that.
23           Q.    Is it accurate to say and correct
24      me if I'm wrong, that you were referring to
25      the legal case, not the death of George
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-155

```
1                        Case Leroy                    235
2     Floyd?
3          A.    Yes, ma'am.
4          Q.    Prior to the Superintendent's
5     Hearing, had you ever learned that there was
6     a trial taking place against Chauvin?
7          A.    I don't really remember when I
8     learned about it.  But I learned after the
9     picture was posted about it, ma'am.
10         Q.    When you testified that "someone
11    told me it could be taken that way," what
12    person are you referring to?  What person
13    told you that?
14         A.    I don't really remember to be
15    honest with you, ma'am.  Like there was...
16         Q.    I'm sorry, I didn't mean to
17    interrupt you.  Go ahead.
18         A.    There was like so much going on
19    during the whole thing.  I just don't
20    remember who said what and this and that.
21         Q.    Did multiple people communicate to
22    you that the photo could be taken in a bad
23    way?
24         A.    I don't really remember like who or
25    how many.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-156

```
 1                          Case Leroy                    236
 2          Q.     But it was more than just your
 3     parents, correct?
 4          A.     Yes, ma'am.
 5          Q.     When you testified that you felt
 6     terrible after, what did you mean by that?
 7          A.     Really depressed like.
 8          Q.     Did you feel terrible about
 9     anything you had done?
10          A.     I felt terrible about the whole
11     situation.
12          Q.     What do you mean by "the whole
13     situation"?  What are you referring to?
14          A.     I felt terrible for anything being
15     posted like at all.  Like I felt terrible
16     because I put my family in a dangerous spot.
17     Because people were saying they were going to
18     come to my house and stuff.  I was
19     overwhelmed with everything.
20          Q.     Did you feel terrible that you had
21     posted what you did?  Did you regret posting
22     the photo with your caption?
23          A.     Yes, ma'am.
24                 Can I grab some water real quick?
25                 MS. WEISBORD:  Yes.  Let's
```

A-157

```
 1                          Case Leroy                237
 2                 take a five-minute break.
 3                      (Whereupon, a recess was
 4                 taken at 11:23 a.m. and the
 5                 proceedings resumed at 11:34 a.m.
 6                 as follows:)
 7      BY MS. WEISBORD:
 8          Q.    Mr. Leroy, I just have a couple of
 9      more questions about Defendant's Exhibit F
10      which is the transcript from the
11      Superintendent's Hearing.
12                  I would like to direct your
13      attention to Page 37 of the transcript.
14                  If you look at the middle of the
15      page, do you see where you testified that you
16      posted an apology on SnapChat?
17          A.    Yes, ma'am.
18          Q.    Do you see where you posted about
19      the contents of that apology post you said,
20      quote, "Just that I was sorry and I didn't
21      mean to offend anyone.  I wasn't thinking
22      about the whole scenario when I posted it.
23      But as soon as I realized it, I just took it
24      down." end quote.
25                  Do you see that?
```

A-158

```
1                        Case Leroy                238
2          A.    Yes, ma'am.
3          Q.    Other than what you testified to at
4    the hearing, do you remember anything else
5    that was included in your apology post?
6          A.    No, ma'am.  I don't really
7    remember.
8          Q.    What did you realize that prompted
9    you to take down your post?
10         A.    That people were mad.
11         Q.    Mad about what, if you know?
12         A.    I don't mean.  Like -- I mean they
13   -- they were just mad about the post.
14         Q.    Did anyone tell you why they were
15   mad about the post?
16         A.    Being mad and cursing me out.
17         Q.    Do you know what people were mad
18   about?
19         A.    The post.
20         Q.    Do you know what about the post
21   made people mad?  Did anybody communicate
22   that to you?
23         A.    Not that I can remember, ma'am.
24         Q.    Do you remember anybody reaching
25   out to you and referring to your SnapChat
```

A-159

Case 7:21-cv-06008-NSR-AEK   Document 64-4   Filed 06/12/23   Page 23 of 23

```
                                  Case Leroy                    249
 1
 2     the letter references that you can enter into
 3     a disciplinary contract and/or agree to
 4     participate in restorative practices for an
 5     early return, that that's something that
 6     Superintendent Evans would consider?
 7          A.    Yes, ma'am.
 8          Q.    Is that something that happened?
 9     Were you able to return on May 10, 2021?
10          A.    I don't -- I don't remember the
11     exact date I returned, ma'am.
12          Q.    Do you remember being able to
13     return earlier than --
14          A.    Yes, ma'am.
15          Q.    -- May 21st which is what the
16     hearing officer had originally proposed?
17          A.    Yes, ma'am.
18          Q.    Did you have to sign some type of
19     document in order to return early?
20          A.    I don't really remember, ma'am.
21          Q.    Did you attend your graduation?
22          A.    I did, ma'am.
23          Q.    You mentioned that you were unable
24     to play football games.
25                Did you attend the game to watch
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-160

# EXHIBIT E

A-161

```
 1                                              1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   ----------------------------------------x
 5   CASE LEROY,
 6                          Plaintiff,
 7           -against-
 8   LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and
 9   JOHN P. EVANS, in his capacity as
10   Superintendent of Schools of Livingston Manor
11   Central School District,
12                          Defendants.
13   ----------------------------------------x
14
15                     ZOOM TELECONFERENCE
16                     SEPTEMBER 20, 2022
17                     10:30 A.M.
18
19        EXAMINATION OF GORDON LEROY, a witness
20   for the Plaintiff in the above-entitled
21   action, held at the above date and time,
22   pursuant to Notice, taken via Zoom
23   teleconference, before Holly Daloia Osteen, a
24   Reporter and Notary Public of the State of
25   New York.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-162

```
 1                                                              2

 2     A P P E A R A N C E S :

 3

 4        JEROME DORFMAN, ESQ.

 5              Attorneys for Plaintiff

 6              8 Breezy Hill Road

 7              Parkville, New York 12768

 8        BY:  JEROME DORFMAN, ESQ.

 9

10

11        SOKOLOFF STERN, LLP

12              Attorneys for Defendant

13              179 Westbury Avenue

14              Carle Place, New York 11514

15        BY:  CHELSEA WEISBORD, ESQ.

16

17

18     ALSO PRESENT:

19        BRIANNA STUPARICH

20

21

22

23

24

25
```

A-163

```
 1                                                    3
 2                S T I P U L A T I O N S
 3
 4        IT IS HEREBY STIPULATED AND AGREED
 5   by and between the attorneys for the
 6   respective parties herein, that filing,
 7   sealing and certification be and the
 8   same are hereby waived.
 9
10        IT IS FURTHER STIPULATED AND AGREED
11   that all objections, except as to the
12   form of the question shall be reserved
13   to the time of the trial.
14
15        IT IS FURTHER STIPULATED AND AGREED
16   that the within deposition may be signed
17   and sworn to before any officer authorized
18   to administer an oath, with the same force
19   and effect as if signed and sworn to before
20   the Court.
21
22        That a copy of this examination shall
23   not be furnished without charge to the
24   attorney representing the witness
25   testifying herein.
```

A-164

```
 1                                                4
 2   G O R D O N     L E R O Y,
 3                 the witness herein, having been
 4                 first duly sworn by a Notary Public
 5                 of the State of New York, was
 6                 examined and testified as follows:
 7   BY THE REPORTER:
 8        Q.    Please state your name for the
 9   record.
10        A.    Gordon Leroy.
11        Q.    Please state your address for the
12   record.
13        A.
14
15                 MS. WEISBORD:  Remind me
16                 again, Jerome, are you acting as
17                 Mr. Leroy's attorney today?
18                 MR. DORFMAN:  I'm sorry?  I
19                 didn't hear you.
20                 MS. WEISBORD:  Are you
21                 acting as Mr. Leroy's attorney
22                 today?
23                 THE WITNESS:  Are you acting
24                 as my attorney today?
25                 MR. DORFMAN:  Yes.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-165

```
                          Gordon Leroy                  80
1
2    photo did you have a discussion with her
3    about the photo?
4         A.    Not really.  I just asked for it.
5    She sent it.
6         Q.    Did she say anything about the
7    photo?
8         A.    No, not that I can remember.
9         Q.    Who is depicted in this photo?
10        A.    I'm sorry?
11        Q.    Who is in the photo?        - Student A
12        A.    My son on the ground and   ▉
13   kneeling on him.
14        Q.    And Case created the caption "cops
15   got another," correct?
16        A.    Yeah.
17        Q.    When you first saw the photo
18   depicted on the screen, what was your
19   reaction about it?
20        A.    I really don't know if I had a
21   reaction.  I mean -- I don't believe I had a
22   reaction.
23        Q.    Did Case ever discuss with you the
24   fact he took this photo off of SnapChat?
25        A.    That he said that he took it down.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-166

```
1                    Gordon Leroy                    81
2         Q.    Did he say when he took it down?
3         A.    So I was explained to that within
4    seven minutes after it was up, they -- within
5    seven minutes after the other one being up,
6    they started getting some backlash about the
7    photo.  So they took both of them down.
8         Q.    They being Case and    ?   . - Student A
9         A.    Case and    yes.   . - Student A
10        Q.    Do you know if they were together
11   when they took the posts down?
12        A.    I do not.
13        Q.    Did Case tell you what type of
14   backlash he was getting before -- that
15   prompted him to take the photo down?
16        A.    All he said was people were upset
17   because of the photo.
18        Q.    Did you ask him why people were
19   upset?
20        A.    No, because by then we had already
21   talked about -- you know, at the house
22   because that was the first I had learned
23   about it.
24        Q.    Did you see anything on social
25   media about the photos that were posted by
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-167

Case 7:21-cv-06008-NSR-AEK   Document 64-5   Filed 06/12/23   Page 8 of 13

```
                          Gordon Leroy                    103
1
2      Principal Davis said on that call other than
3      what you just testified to a few minutes ago?
4           A.    Not really.
5           Q.    Did you say anything in response on
6      the phone?
7           A.    Probably okay.  Yeah, I don't
8      remember.
9           Q.    Did you ask like for more specifics
10     about the photo that she referenced?
11          A.    I don't remember.
12          Q.    Did she explain anything about the
13     picture that she had learned about?
14          A.    I don't believe she did.
15          Q.    At that point, did you have an idea
16     about what photo she was referencing?
17          A.    Most likely, yes.
18          Q.    Did you have a feeling that it
19     could have been the photo that you had
20     discussed the previous night with Case?
21          A.    Most likely, yes.
22          Q.    Did she say why she didn't want
23     Case to go to school that day?
24          A.    I believe she just said that they
25     felt it would best that he stayed home that
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-168

| | | |
|---|---|---|
| 1 | *Gordon Leroy* | 104 |

2   morning and come in on the meeting time that

3   was set -- going to be set for us.

4        Q.    Did she mention having any concerns

5   about his safety?

6        A.    Let me think.  She may have.  She

7   may have said, you know, for his safety it

8   would be best he stayed home.

9        Q.    Do you have any idea which other

10  students were asked to stay home as well?

11       A.    No.  They were all minors at the

12  time.  She would not have been able to

13  disclose that to me.

14       Q.    Did you ever learn who the students

15  were from anyone else?

16       A.    We did.  We did -- well, they came

17  up in the meeting we had.

18       Q.    What students stayed home to your

19  knowledge?

    - Student A   - Student B   - Student C   - Student D   - Student E

20       A.    ▇, ▇ and ▇ and ▇ and ▇.

21       Q.    Who is ▇?   - Student C

    - Student C

22       A.    ▇ was the one that was driving the

23  other car.  He was kind of left out of

24  everything because he was not privy to any of

25  it so.  But at that time, they did not know

**ON TIME COURT REPORTING**
**516-535-3939**

A-169

Case 7:21-cv-06008-NSR-AEK   Document 64-5   Filed 06/12/23   Page 10 of 13

```
 1                    Gordon Leroy                    108
 2        Q.    I'll ask her.
 3              Do you know if your wife went to
 4   work on that day, April 20th?
 5        A.    Yes, she did.
 6        Q.    At what point did you learn when
 7   the meeting would take place?
 8        A.    I was called that morning later on
 9   and told what time to bring Case into school.
10        Q.    What time were you told?
11        A.    I don't remember.
12        Q.    Who called you?
13        A.    I think it was Principal Davis.
14        Q.    Do you remember when you went for
15   the meeting?
16        A.    It was sometime that afternoon.  I
17   don't remember exactly when.
18        Q.    Other than to call and tell you
19   when the meeting would be, did you have any
20   other discussion?
21        A.    No.
22        Q.    Did you go to the meeting?
23        A.    I did.
24        Q.    And Case went?
25        A.    Yes, he did.
```

A-170

```
                            Gordon Leroy                    109
 1
 2         Q.     Did your wife go?
 3         A.     No.  She did not.
 4         Q.     How did you and Case get to the
 5    meeting?
 6         A.     I went and picked him up and drove
 7    him.
 8         Q.     How long of a car ride is it from
 9    your house to where the meeting was?
10         A.     Four minutes, three minutes.  We
11    don't live far from the school.
12         Q.     During that three to four-minute
13    car ride, did you and Case have any
14    discussion about what would take place at the
15    meeting or about anything else that was going
16    on?
17         A.     Not really.  We just -- we went.  I
18    think at one point I may have said, you know,
19    everything's going to be fine.  But like I
20    said, it's not very far from our house.
21         Q.     Do you know what Case was doing
22    that day prior to when you picked him up for
23    the meeting?
24         A.     He was at the house.
25         Q.     Do you know what he was doing?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-171

```
                              Gordon Leroy                    110
 1
 2        A.     I'm sorry?
 3        Q.     Do you know what he was doing at
 4   the house?
 5        A.     No.
 6        Q.     I would like to discuss this
 7   meeting that you and Case attended with
 8   Superintendent Evans and Principal Davis on
 9   April 20, 2021.
10             Do you know who scheduled that
11   meeting?
12        A.     It was either Principal Davis or
13   Mr. Evans.  I don't know.  One of them.  I'm
14   sure Mr. Evans probably but I don't know for
15   sure.
16        Q.     Did anyone tell you the purpose of
17   the meeting prior to when you went to it?
18        A.     Yeah.  When she called that morning
19   to tell us that Case should not come to
20   school.  She just said that, you know, they
21   wanted to discuss what had happened and the
22   photos that were submitted.  That was it.
23        Q.     You can't remember when exactly the
24   meeting occurred?
25        A.     Some time early afternoon to my
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-172

```
 1                    Gordon Leroy              111
 2   recollection, but I'm not sure.
 3        Q.     Where was the meeting?
 4        A.     In John Evans' office I believe.
 5        Q.     Tell me everyone that was in
 6   attendance.
 7        A.     Me, Case, John Evans and Principal
 8   Davis.
 9        Q.     Do you recall how long the meeting
10   was?
11        A.     No.
12        Q.     Was it more or less than an hour?
13        A.     I don't really remember.
14        Q.     Tell me what you remember about the
15   meeting.
16               What happened in the meeting?
17        A.     They showed Case some photos.
18   Asked him some questions.  And that was about
19   it.  They showed him some photos.  Asked him
20   some questions and then told him that they
21   would be in touch further.
22        Q.     What photos do you remember them
23   showing Case during the meeting?
                                       - Student A
24        A.     The photo that ███ posted.  The
              - Student E
25   photo that ███ and ███ were in.  I think that
                        Student G
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-173

# EXHIBIT F

A-174

```
 1                                                    1

 2    UNITED STATES DISTRICT COURT

 3    SOUTHERN DISTRICT OF NEW YORK

 4    ---------------------------------------------x

 5    CASE LeROY,

 6                             Plaintiff,

 7            -against-

 8    LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and

 9    JOHN P. EVANS, in his capacity as

10    Superintendent of Schools of Livingston Manor

11    Central School District,

12                             Defendants.

13    ---------------------------------------------x

14

15                       ZOOM TELECONFERENCE

16                       OCTOBER 21, 2022

17                       10:15 A.M.

18

19         **EXAMINATION OF AMY LeROY,** a witness

20    for the Plaintiff in the above-entitled

21    action, held at the above date and time,

22    pursuant to Notice, taken via Zoom

23    teleconference, before Holly Daloia Osteen, a

24    Reporter and Notary Public of the State of

25    New York.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-175

```
 1                                                            2

 2      A P P E A R A N C E S:

 3

 4         JEROME DORFMAN, ESQ.

 5              Attorneys for Plaintiff

 6              8 Breezy Hill Road

 7              Parkville, New York 12768

 8         BY:  JEROME DORFMAN, ESQ.

 9

10

11         SOKOLOFF STERN, LLP

12              Attorneys for Defendant

13              179 Westbury Avenue

14              Carle Place, New York 11514

15         BY:  CHELSEA WEISBORD, ESQ.

16

17

18      ALSO PRESENT:

19         BRIANNA STUPARICH

20

21

22

23

24

25
```

A-176

```
                                                              3
 1

 2                    S T I P U L A T I O N S

 3

 4            IT IS HEREBY STIPULATED AND AGREED

 5      by and between the attorneys for the

 6      respective parties herein, that filing,

 7      sealing and certification be and the

 8      same are hereby waived.

 9

10            IT IS FURTHER STIPULATED AND AGREED

11      that all objections, except as to the

12      form of the question shall be reserved

13      to the time of the trial.

14

15            IT IS FURTHER STIPULATED AND AGREED

16      that the within deposition may be signed

17      and sworn to before any officer authorized

18      to administer an oath, with the same force

19      and effect as if signed and sworn to before

20      the Court.

21

22            That a copy of this examination shall

23      not be furnished without charge to the

24      attorney representing the witness

25      testifying herein.
```

A-177

```
                                                        4
 1

 2    A M Y      L e R O Y,

 3                    the witness herein, having been

 4                    first duly sworn by a Notary Public

 5                    of the State of New York, was

 6                    examined and testified as follows:

 7    BY THE REPORTER:

 8         Q.    Please state your name for the

 9    record.

10         A.    Amy LeRoy.

11         Q.    Please state your address for the

12    record.

13         A.    175 Covered Bridge Road, Livingston

14    Manor, New York 12758.

15                    MS. WEISBORD:  For the

16                    record, my name is Chelsea

17                    Weisbord.  I'm an attorney with

18                    Sokoloff Stern.  I represent the

19                    Livingston Manor School District

20                    and John Evans in a lawsuit that

21                    was filed by your son, Case LeRoy.

22                    Today I'm going to be asking

23                    you some questions regarding that

24                    lawsuit.

25                    THE WITNESS:  Okay.
```

ON TIME COURT REPORTING
516-535-3939

A-178

```
 1                            Amy LeRoy                      52
 2           A.    Yes.
 3           Q.    Do you know when on April 19, 2021,
 4     the photo was taken?
 5           A.    I believe it was in the late
 6     afternoon, early evening.
 7           Q.    Did Case share that with you; is
 8     that how you know that?
 9           A.    Yes.
10           Q.    Do you know where the photo was
11     taken?
12           A.    In Hurleyville, New York.
13           Q.    Do you know if the photo was taken
14     near the businesses or other establishments?
15           A.    I believe near the dance studio
16     that they have there in Hurleyville.
17           Q.    He shared that with you as well?
18           A.    Yes.
19           Q.    Did he ever tell you the
20     circumstances in which the photo was taken?
21           A.    Yes.
22           Q.    What did he tell you?
23           A.    He said that there was a noise of
24     some sort coming out from underneath ████ Student C
25     car.  So he bent down to look at it and when
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-179

Case 7:21-cv-06008-NSR-AEK   Document 64-6   Filed 06/12/23   Page 7 of 13

```
1                      - Student A        Amy LeRoy                    53

2    he did,  ███  had assumed that position on him.

3         Q.    You're talking about the position

4    that ███ is in, in the photo?
              - Student A

5         A.    Correct.

6         Q.    Would you agree that he is kneeling

7    down over Case and his thumb is up?

8         A.    Yes.

9         Q.    Did Case share with you any other

10   circumstances in which the photo was taken

11   other than what you just testified to?

12        A.    No.   That's what he told me.

13        Q.    You weren't there, correct?

14        A.    I was not there.

15        Q.    So your knowledge of what happened

16   comes from Case?

17        A.    Correct.

18        Q.    Did anybody else discuss with you

19   the circumstances in which the photo was

20   taken other than Case?

21        A.    No.

22        Q.    Now, you see Exhibit A with the

23   captions "cops got another"?

24        A.    I'm sorry.  Can you repeat it?  I'm

25   sorry.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-180

```
1                            Amy LeRoy                    54
2         Q.    Do you see that Exhibit A on the
3    screen the photo includes the caption "cops
4    got another"?
5         A.    Yes.
6         Q.    Do you know who created that
7    caption?
8         A.    Case.
9         Q.    How did you learn that?
10        A.    Case told me.
11        Q.    Are you aware Case posted this
12   photo and with the caption "cops got another"
13   on his SnapChat story?
14        A.    Yes.
15              Can I add, too,  ███  had I guess
                                    - Student A
16   through the process of getting into the
17   position that he's in had said to Case that
18   -- he said you're arrested for dating a
19   minor.
20        Q.    How did you learn that?
21        A.    Case told me.
22              (Whereupon, a discussion was
23              held off the record.)
24   BY MS. WEISBORD:
25        Q.    When did Case share this with you
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-181

```
1                              Amy LeRoy                    60
2      looking at comments.
3           Q.     Did Case show you any of the
4      comments he received?
5           A.     I want to recall that he explained
6      them to me.  He may have, I'm sorry.
7           Q.     What do you recall him explaining
8      to you about the comments?
9           A.     That people were saying that he was
10     racist for posting the picture.  That seemed
11     to be the general theme.
12          Q.     So Case was receiving messages from
13     people and in those messages they were
14     accusing him of being racist; is that
15     accurate?
16          A.     That seemed to be the general
17     theme.
18          Q.     Do you remember anything else that
19     Case shared with you, during this
20     conversation on April 19th, other than what
21     we already talked about today?
22          A.     Just him emphasizing that that was
23     not the intent of the photo.
24          Q.     When you say "that was not the
25     intent," you mean he was telling you he
```

A-182

```
 1                        Amy LeRoy              61
 2     wasn't intending to come off as racist?
 3          A.    Correct.
 4          Q.    Did he tell you what he did intend
 5     when he posted the photo with the caption
 6     "cops got another"?
 7          A.    Just posting that off of, you know,
                    - Student A
 8     what  ███  said to him about being under arrest
 9     for dating a minor.
10          Q.    After Case shared this information,
11     what, if anything, did you say to him in
12     response during this conversation on
13     April 19, 2021?
14          A.    I remember telling him that, you
15     know, unfortunately when you post things
16     through social media or through text messages
17     or through e-mails, sometimes you can't
18     always explain your intent.  So that's why it
19     is not a good idea to post things on social
20     media.
21          Q.    Did he respond to that in any way?
22          A.    Yes.  He said he understood that.
23          Q.    Did you express to Case how you
24     felt about what he had posted on SnapChat?
25          A.    I just more or less focused on
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-183

```
1                          Amy LeRoy                    78
2      would be in the basement.  It's relatively
3      finished but to my recollection I don't
4      recall him sleeping down there consistently.
5           Q.    Is there a bedroom down there?
6           A.    There isn't necessarily a bedroom.
7      There's a room that could, you know, have a
8      bed and a dresser and those types of things.
9      But I wouldn't say it was a designated
10     bedroom.
11          Q.    When he was sleeping down there,
12     what was he sleeping on, on a bed?
13          A.    No.  We had a mattress that we
14     brought down there.  Like a spare mattress.
15          Q.    Now, I'm going to ask you some
16     questions about April 20, 2021.
17          A.    Okay.
18          Q.    That morning, did you or your
19     husband receive any phone calls from any
20     District administrator?
21          A.    Yes.  That would have been me.  I
22     received a call from Ms. Shirlee Davis who,
23     at the time, she was the middle high school
24     principal, just asking that Case not come to
25     school that day.  She wanted him to come to
```

A-184

```
1                          Amy LeRoy                    79
2     school but for a meeting, not necessarily to
3     come to school to go to classes.
4          Q.    Did she indicate why she didn't
5     want Case to go to classes that day?
6          A.    Yes.  She did reference the social
7     media post.
8          Q.    Did she say anything else?
9          A.    Not that I can remember.  Just that
10    they -- that they needed to see him that
11    morning.  I don't remember the time that that
12    meeting was scheduled.
13         Q.    Did she schedule the meeting during
14    that phone call or later that day?
15         A.    Yeah.  I believe she asked --
16    again, I don't remember the time; but she did
17    ask if that time was suitable.
18         Q.    How did you respond?
19         A.    I said yes, that we would be there.
20         Q.    Did you say anything else during
21    this phone call?
22         A.    Not that I recall, no.
23         Q.    Did she call your cell phone?
24         A.    Yes.  I believe it was on my cell
25    phone.  We do not have a landline.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-185

```
 1                        Amy LeRoy              80
 2         Q.    Was anyone else listening on the
 3    call or was it just you and Mrs. Davis?
 4         A.    It was just me and Mrs. Davis.
 5         Q.    Do you remember what time in the
 6    morning you received the call?
 7         A.    I definitely believe it was before
 8    the bus came.  The bus typically comes at
 9    7:45.  So it was definitely before that in
10    the morning.
11         Q.    Do you remember what she said about
12    the social media post?  I remember you
13    testified earlier that she referenced that.
14         A.    Yes.  She did reference it.  I just
15    don't recall what she specifically said about
16    it other than they just needed to have a
17    meeting in the morning.
18         Q.    Do you recall Principal Davis
19    telling you she did not want Case to come to
20    school that day for purposes of safety?
21         A.    She may have said that.
22         Q.    Do you know if Case was able to
23    overhear the conversation?
24         A.    No, he did not.
25         Q.    How about your husband?
```

A-186

# EXHIBIT G

A-187

```
 1                                                          1

 2    UNITED STATES DISTRICT COURT

 3    SOUTHERN DISTRICT OF NEW YORK

 4    ----------------------------------------------x

 5    CASE LeROY,

 6                            Plaintiff,

 7              -against-

 8    LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and

 9    JOHN P. EVANS, in his capacity as

10    Superintendent of Schools of Livingston Manor

11    Central School District,

12                            Defendants.

13    ----------------------------------------------x

14

15                     ZOOM TELECONFERENCE

16                     NOVEMBER 8, 2022

17                     9:30 A.M.
                                                - Student A
18

19          EXAMINATION BEFORE TRIAL OF ███ , a

20    nonparty witness, held at the above date and

21    time, pursuant to Notice, taken via Zoom

22    teleconference, before Holly Daloia Osteen, a

23    Reporter and Notary Public within and for the

24    State of New York.

25
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-188

```
 1                                                      2

 2     A P P E A R A N C E S:

 3

 4        JEROME DORFMAN, ESQ.

 5             Attorneys for Plaintiff

 6             8 Breezy Hill Road

 7             Parkville, New York 12768

 8        BY:  JEROME DORFMAN, ESQ.

 9

10

11        SOKOLOFF STERN, LLP

12             Attorneys for Defendant

13             179 Westbury Avenue

14             Carle Place, New York 11514

15        BY:  CHELSEA WEISBORD, ESQ.

16

17

18     ALSO PRESENT:

19        BRIANNA STUPARICH

20

21

22

23

24

25
```

A-189

```
1                                                      3

2                     S T I P U L A T I O N S

3

4           IT IS HEREBY STIPULATED AND AGREED

5      by and between the attorneys for the

6      respective parties herein, that filing,

7      sealing and certification be and the

8      same are hereby waived.

9

10          IT IS FURTHER STIPULATED AND AGREED

11     that all objections, except as to the

12     form of the question shall be reserved

13     to the time of the trial.

14

15          IT IS FURTHER STIPULATED AND AGREED

16     that the within deposition may be signed

17     and sworn to before any officer authorized

18     to administer an oath, with the same force

19     and effect as if signed and sworn to before

20     the Court.

21

22          That a copy of this examination shall

23     not be furnished without charge to the

24     attorney representing the witness

25     testifying herein.
```

A-190

```
                                                              4
 1          - Student A
 2     █,
 3                 the witness herein, having been
 4                 first duly sworn by a Notary Public
 5                 of the State of New York, was
 6                 examined and testified as follows:
 7     BY THE REPORTER:
 8          Q.    Please state your name for the
 9     record.        - Student A
10          A.    █.
11          Q.    Please state your address for the
12     record.
13          A.
14
15                 MS. WEISBORD:  Good morning.
16                 My name is Chelsea Weisbord.
17                 I'm an attorney with Sokoloff
18                 Stern.  I represent the Livingston
19                 Manor Central School District and
20                 Superintendent John Evans in a
21                 lawsuit that was brought by Case
22                 LeRoy.
23                 I'm going to be asking you
24                 some questions today regarding that
25                 lawsuit.
```

A-191

```
 1                                           17
 2        Q.   High school?
 3        A.   Yes, ma'am.
 4        Q.   How long have you known Case LeRoy?
 5        A.   Since I started pretty much.  We
 6   played football together.
 7        Q.   So all of high school?
 8        A.   Yes.
 9             MS. WEISBORD:  I'm going to
10             share my screen.
11             Can everybody see that okay?
12             THE STENOGRAPHER:  It's on.
13   BY MS. WEISBORD:
14        Q.   On the screen, I have a document
15   that was previously marked as Defendant's
16   Exhibit A.
17             Do you recognize this photo?
18        A.   Yes, ma'am, I do.
19        Q.   Do you know when this photo was
20   taken?
21        A.   April 19, 2021 or -- yeah, '21 I
22   believe.
23        Q.   Do you remember what day of the
24   week it was taken, like was it a school day
25   or a weekend?
```

A-192

Case 7:21-cv-06008-NSR-AEK   Document 64-7   Filed 06/12/23   Page 7 of 46

```
 1                                                        18
 2          A.    I believe it was a school day.
 3          Q.    Do you remember if you went to
 4     school that day?
 5          A.    That -- yeah.  I went to school
 6     that day before, yeah, the incident.
 7          Q.    Do you remember if Case was at
 8     school that day?
 9          A.    I believe he was.  I'm not
10     completely sure.  I would imagine he was.
11          Q.    What time does school end?
12          A.    I think it was 2:50 that year
13     maybe.  2:55, somewhere around there.
14          Q.    Do you remember what you did, you
15     know, after school ended, where you went?
16          A.    We went to football practice until
17     5:00.
18          Q.    Who is "we," you and Case?
19          A.    Yeah.  Me, Case and ▮ - Student B who took the
20     photo.
21          Q.    ▮ - Student B was also playing football?
22          A.    Yes, ma'am.
23          Q.    After football practice ended
24     around 5:00, what did the three of you do
25     next?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-193

```
                                                         19
1
2        A.    We left football with Case and our
                  - Student C
3    friend █ who wasn't -- who ended up not

4    being there for the photo.  He went inside.

5    We went to go get something to eat after

6    football.  Then we went to pick up █ 's
                                         K.B - Student C
7    sister from dance.  And he went inside -- and

8    we took the photo -- to get his sister.

9    She's a little younger -- I'm not sure.

10       Q.    Do you remember where the photo was

11   taken?

12       A.    Yes, ma'am.  It was at Main Street

13   Dance Studio in Hurleyville.

14       Q.    Where?

15       A.    Main Street Dance Studio in

16   Hurleyville, New York.

17       Q.    How did you get to the dance

18   studio; did you drive?

19       A.    Yes, ma'am.  Case drove.

20       Q.    So you were a passenger in Case's

21   car?

22       A.    Yes, ma'am.
                            - Student C
23       Q.    What about █ and █ , how did they
                                      - Student B
24   get to the  ance studio?
                       - Student C
25       A.    █ and █ -- █ drove █ █ .  I -- we
                                      J  - Student B
             - Student B    - Student C
```

A-194

```
                                                         20
 1

 2     followed them there.

 3          Q.    Why did you go to the Main Street

 4     Dance Studio?
                              - Student C
 5          A.    To pick up █ 's sister.

 6          Q.    Whose car is depicted in Exhibit A,

 7     the black car?
                         - Student C
 8          A.    That's █ 's.

 9          Q.    Do you know who took this photo?

10          A.    Yeah, it was █ .   - Student C

11          Q.    Tell me how this photo came about.
                                          - Student B
12          A.    From what I remember █ went inside

13     to go get his sister.  And we were kind of

14     just like joking around and like, like, I was

15     like -- it was like -- I think there's

16     another photo of Case.  He was like

17     pretending to arrest me.  We were just kind

18     of doing teenage stuff.  And then I don't

19     even know how we got to this but I guess we

20     thought it would be a funny joke and then

21     yeah.  I'm not sure.

22          Q.    So you said that you were taking --

23     you had been taking photos of Case pretending

24     to arrest you?

25          A.    I believe so.  I don't know if
```

A-195

```
                                                          21
 1

 2     there's a photo or we were just doing it.

 3     I'm not sure.

 4          Q.    Was that before this photo was

 5     taken?

 6          A.    Yes, ma'am.

 7          Q.    Do you have any of those photos?

 8          A.    No, ma'am.  I don't even have this

 9     photo.  I don't have any of them.

10          Q.    Who took the photos of Case

11     pretending to arrest you?
                                          - Student B
12          A.    I'm not sure.  I would image ██.  I

13     don't know who eventually took the photos or

14     what we did.  It was -- I don't remember a

15     whole lot from this.  There was a lot of

16     emotions stuff like --

17          Q.    Do you -- I didn't mean to cut you

18     off.  Go ahead.

19          A.    That's all right.  I said I haven't

20     even seen this photo in a couple of years,

21     you know.

22          Q.    When you and Case were, you know,

23     being photographed, do you remember anyone
                            - Student B
24     other than ██ being in the vicinity?

25          A.    No, ma'am, I don't.
```

A-196

22

1
2      Q.    Can you describe for me these
3   photos of Case pretending to arrest you?
4   Like how were the two of you posing?
5      A.    It was just kind of me standing
6   there with my hands behind my back and Case
7   pretending to put handcuffs on I believe.
8      Q.    How did you come to take those
9   pictures?  Did you have a conversation about
10  it?
11     A.    I think I -- I'm not completely
12  sure.  I think I did something like I folded
13  - Student C ██ 's mirror and Case was like you're under
14  arrest.  It was something pretty harmless.
15     Q.    At some point, the two of you posed
16  for the photo depicted in Exhibit A?
17     A.    Yes, obviously.
18     Q.    Do you know why Case got on the
19  ground?  Do you know what his purpose was for
20  posing in that way?
21     A.    No, ma'am, I don't actually.  I'm
22  not sure.  I don't even -- I don't remember
23  who thought it would be funny or whose idea
24  it was.  I'm not sure.
25     Q.    Did you, Case and - Student B ██ have any

**ON TIME COURT REPORTING**
**516-535-3939**

A-197

```
                                                      23
 1

 2    discussion about taking the photo that's on

 3    the screen, about posing in that way?

 4         A.    No, ma'am.  I don't believe so.

 5         Q.    Did Case ever tell you why he got

 6    on the ground?

 7         A.    I don't believe so.  No, I'm not

 8    sure.
                              - Student B
 9         Q.    Did you ask ▮ to take this photo?

10         A.    I'm not sure if he thought it was

11    funny.  That's why he took the photo or

12    somebody asked him.  I don't know.  It was

13    pretty quick.
                                          - Student B
14         Q.    Do you remember if Case asked ▮ to

15    take the photo?

16         A.    No, ma'am.  I don't know.  I don't

17    know if it was Case or what happened.

18         Q.    Do you remember how long Case was

19    on the ground before this photo was taken?

20         A.    It wasn't very long.  Less than a

21    minute I'm sure.

22         Q.    The position that you're in, in the

23    photo, you're kneeling over Case with your

24    thumb up; is that an accurate description?

25         A.    Yes, ma'am.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-198

Case 7:21-cv-06008-NSR-AEK   Document 64-7   Filed 06/12/23   Page 13 of 46

```
                                                          24
 1

 2          Q.    How long were you in that position
                        - Student B
 3    before  ▇  took the photo?

 4          A.    Not very long.  It wasn't intended

 5    for a photo.  I think I was just kind of

 6    joking around.
                                - Student B
 7          Q.    Did you know that  ▇  was taking the

 8    photo when he took it, or did you not realize

 9    it until afterwards?

10          A.    I believe I knew he was going to

11    take the photo.  It kind of looks like I was

12    posing into the photo so.

13          Q.    Do you know if Case was aware if JG

14    was going to take a photo?

15          A.    I'm not sure.  It doesn't look like

16    he was but I can't say for sure.  I don't

17    know.

18          Q.    That's okay.  I don't want you to

19    guess.  If the answer is I don't know, that's

20    perfectly accept --

21          A.    Yeah.  I don't know if he was or

22    not.

23          Q.    I'm sorry if I already asked this,

24    but was there any discussion about how to

25    pose for the photo?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-199

```
                                                    25
 1
 2          A.    No, ma'am.  We didn't -- we didn't
 3    discuss it at all.
 4          Q.    Do you know what device the photo
 5    was taken on?
 6          A.    I believe it was an iPhone.
                                          - Student B
 7          Q.    That would have been ███ 's iPhone?
 8          A.    Yes, ma'am.
                              - Student B
 9          Q.    Do you know if ███ took the photo
10    with his phone's camera or through some type
11    of social media application?
12          A.    I believe it was through SnapChat.
13          Q.    Did you ever get a copy of this
14    photo?
15          A.    Yes, ma'am, I did.
16          Q.    How?
17          A.    I think -- I think he sent it to
18    me.
                         - Student B
19          Q.    He being ███ ?
20          A.    Yes, ma'am.
21          Q.    Do you know if he sent it to anyone
22    else?
23          A.    I believe he sent it to Case too.
24          Q.    Do you know how he sent it to you;
25    was it through SnapChat or something else?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-200

```
                                                   26
 1

 2        A.    Yes, ma'am.  I believe it was

 3   through SnapChat.
                        - Student B
 4        Q.    When █ sent you the photo on

 5   SnapChat, did it have any type of caption or

 6   was it just the photo by itself?

 7        A.    No, ma'am.  I think it was just the

 8   photo.  I think the caption I added later.

 9        Q.    You mentioned you don't have a copy

10   of this photo currently?

11        A.    No, ma'am, I don't.  Just a lot of

12   death threats after.  So I don't have it

13   still.
                       - Student B
14        Q.    After █ sent you the photo what,

15   if anything, did you do with it?

16        A.    I believe nothing.  I don't think I

17   did anything.  I'm not sure if I posted it
                                  - Student B
18   first or if he posted -- █ posted it first

19   or Case did.  I'm not completely sure.

20        Q.    But at some point you posted it?

21        A.    Yes, ma'am.  At some point, I

22   reposted it and posted -- either I posted it

23   or it was -- I reposted it from somebody

24   else.  I'm not sure.

25        Q.    Did you post it on a SnapChat Story
```

**A-201**

```
 1                                          27
 2     or something else?
 3          A.    Yes, ma'am.  It was a SnapChat
 4     Story.
 5          Q.    At the time you posted the photo on
                                      - Student B
 6     your SnapChat, were Case and █ SnapChat
 7     friends with you?
 8          A.    Yes, ma'am.
 9          Q.    So does that mean that they would
10     have been able to view whatever you had
11     posted?
12          A.    Yes, ma'am, it does.
                              - Student B
13          Q.    If Case or █ had posted the photo
14     on their SnapChat Story, would you then have
15     been able to view it?
16          A.    Yes, ma'am.
17          Q.    Do you remember having any
18     discussions with Case and or JG about posting
19     the photo on SnapChat?
20          A.    No, ma'am.  Not before posting it.
21     Like I said, I believe one of us posted it
22     first.  Then the rest of us just kind of
23     reposted it without thinking too much about
24     it.
25          Q.    But you don't remember who posted
```

A-202

```
                                                      28
 1
 2   first?
 3        A.    No, ma'am, I do not.
 4        Q.    Going back to the photo on the
 5   screen in Exhibit A, do you see the caption
 6   "cops got another"?
 7        A.    Yes, ma'am, I do.
 8        Q.    Do you know who created that
 9   caption?
10        A.    I believe I did when I posted it at
11   some point.
12        Q.    When you received the photo, do you
13   remember what changes you made to it before
14   posting it?
15        A.    No, ma'am, just the caption.
16                  MS. WEISBORD:  On the
17              screen, I have what's been
18              previously marked as Defendant's
19              Exhibit B.
20   BY MS. WEISBORD:
21        Q.    Have you seen this before?
22        A.    Yes, ma'am, I have.
23        Q.    Can you tell me what it is?
24        A.    It's the same photo with -- it
25   looks like it's been reposted from ██ to me
```
                                              - Student B

**ON TIME COURT REPORTING**
**516-535-3939**

A-203

```
                                                        29
 1
 2    with the caption that I added and then the
 3    sticker which I'm not sure if it was added --
 4    I don't think I added it.
 5              Actually, I know I didn't add that.
 6       Q.    What sticker are you referring to?
 7       A.    The Black Lives Matter.
 8       Q.    You don't remember adding that?
 9       A.    Well, no.  I didn't add it.
10              I reposted it with the sticker I
11    believe or it was added after I posted it.
12    I'm not sure.  I know we got confused when we
13    had the school hearing if I put it on there
14    or not, because whoever screenshotted this I
15    believe added it after I added the caption
16    "got another one down."  No, that was not the
17    same caption that was on there before.
18              That's different because I added
19    "cops got another" and this is different than
20    what I had on my SnapChat.
21       Q.    Do you know who created the caption
22    "another one down"?
23       A.    No, ma'am, I do not.  I believe it
24    was after when I posted because you can't --
25    like with SnapChat normally if there was a
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-204

```
                                                        30
 1

 2     caption before it and you put it over it,

 3     you'd still be able to see the other one

 4     beneath it.  So I'm not completely sure.

 5          Q.    Do you see at the top -- do you see

 6     your name up there?

 7          A.    Yes, ma'am, I do.

 8          Q.    Is that an indication that this

 9     came from your SnapChat Story?

10          A.    Yes, ma'am, it is.

11          Q.    Is this something that you posted?

12          A.    I don't believe I posted this

13     version.  I posted the one "cops got

14     another."

15               So I'm not sure if this -- maybe I

16     posted -- actually, I don't know or maybe I

17     did post the one with "another one down" and

18     not "cops got another" but I didn't have the

19     sticker on it, that's for sure.

20          Q.    You don't remember which of the two

21     captions you created?

22          A.    No, ma'am, I do not.  It was one or

23     the other.  I've seen both photos before with

24     each caption.  I don't think I realized until

25     now that they were different because I've
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-205

```
                                                        31
 1
 2    seen them a bunch of times at the school
 3    hearing.  That was quite a while ago.
 4         Q.   Did you ever tell anyone from the
 5    School District like an administrator or an
 6    employee that you had posted the photo with
 7    the Black Lives Matter logo?
 8         A.   Yeah.  I believe I did when we had
 9    the first hearing like two or three days
10    after.  When I came in, I spoke to just
11    Mr. Evans and the lawyer.  And I think I was
12    pretty scared and didn't really know what was
13    going on.  I think I did tell him that and
14    then but I didn't obviously.  Obviously, I
15    didn't put the sticker on there.
16         Q.   Do you know who did; do you know
17    where the sticker came from?
18         A.   No, ma'am.  It was after me or it
                              - Student B
19    was either me or ▓ .  Because if it was -- if
20    JG had it on there when I posted, it would
21    have been on there and when I posted it, it
22    would also have been on there.  I believe it
23    was added after the fact by whoever
24    screenshotted my story.
25                    MS. WEISBORD:  I just want
```

A-206

```
                                                      32
 1
 2              to go back to Exhibit A which I
 3              have back on the screen
 4              (scrolling.)
 5                   Actually, I'm going to stop
 6              my screen for a moment on second
 7              thought, sorry (scrolling.)
 8    BY MS. WEISBORD:
 9         Q.   Do you remember seeing whatever JG
10    posted on his SnapChat Story?
11         A.   Yes, ma'am.  I do remember him
12    posting it.
13         Q.   What did he post?
14         A.   I believe it was just the blank
15    photo with no captions or anything on it.
16         Q.   Do you remember seeing what Case
17    posted on his SnapChat account?
18         A.   Yes, ma'am.
19              I remember it was a photo with the
20    caption -- with a caption, but I'm not sure
21    which caption it was.  Because like I said,
22    I'm not sure which one I added.  I know I
23    added one of them, but I'm not sure which
24    one.
25         Q.   Correct me if I'm wrong, but is it
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-207

```
                                                    33
 1
 2    your testimony that there are these two
 3    captions that we looked at, you wrote one,
 4    Case wrote the other but you can't remember
 5    today who created which one?
 6         A.    Yes, ma'am, that's it.
 7         Q.    When you posted the photo with a
 8    caption, what were you intending to convey to
 9    your SnapChat audience, if anything?
10         A.    I think it was just I thought, we
11    all thought it was just a joke.  We weren't
12    intending to offend anybody or upset anybody.
13    I've always been kind of the kind of person
14    to make people laugh and joke around and like
15    a lot -- not a lot, but quite a few friends
16    and I try to be friends with everybody
17    regardless of anything.  So it wasn't -- it
18    was just intended as a joke, pretty harmless.
19    At least that's what we thought.
20         Q.    What was the joke you were
21    intending?
22         A.    Well, it was -- it was pretty
23    recent to the George Floyd murder and I think
24    -- I'm not sure what the joke was.  It was
25    something along the lines of that obviously.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-208

```
                                                           34
 1
 2    I don't think it was what we intended it to
 3    be.  Like we weren't intending to offend
 4    anybody.  It was just kind of -- I'm not
 5    sure.  It was just a joke.
 6         Q.    So when you posted this, you had
 7    George Floyd in your mind?
 8         A.    Yes, ma'am.
 9         Q.    Do you think that the photo of you
10    and Case has any similarity to any photos on
11    the Internet showing George Floyd and Derek
12    Chauvin?
13         A.    Yes, ma'am.  Yes, I believe it
14    does.
15         Q.    What do you know about George
16    Floyd's death?  Like where did you get that
17    information; online, in the class, somewhere
18    else?
19         A.    No, ma'am.  I believe it was pretty
20    much everywhere online.  I'm sure we talked
21    about it in the classroom as well.  It was
22    pretty much everywhere.
23         Q.    Did you ever have any conversations
24    with Case about George Floyd's death or Derek
25    Chauvin's involvement?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-209

```
                                                           35
 1
 2         A.    No, ma'am.  I don't believe so.  We
 3    didn't talk about stuff, like political stuff
 4    or anything like that.
 5         Q.    When you and Case were taking this
 6    picture or posing for this picture, was there
 7    any discussion about George Floyd or Derek
 8    Chauvin?
 9         A.    No, ma'am.  I don't believe so.
10                   MS. WEISBORD:  I have back
11              on the screen Exhibit A
12              (scrolling).
13    BY MS. WEISBORD:
14         Q.    Do you know if Case created the
15    caption "cops got another"?
16         A.    No, ma'am.  Like I previously said,
17    I'm not sure which caption is which.
18                   (Whereupon, a discussion was
19              held off the record.)
20                   MS. WEISBORD:  (Scrolling.)
21    BY MS. WEISBORD:
22         Q.    Whether you created the caption
23    "cops got another" or Case did, do you have
24    any idea what was meant by that caption?
25         A.    I'm sure it was intended towards
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-210

```
                                                            36
 1
 2    the George Floyd case.
 3         Q.    What leads you to believe that?
 4    What makes your sure?
 5         A.    The context of the photo and the
 6    caption.
 7         Q.    Do you remember where you were when
 8    you posted the photo on SnapChat?
 9         A.    I believe we were still at the
10    dance studio.
11         Q.    So somewhere in the parking lot of
12    the dance studio?
13         A.    Yes, ma'am.
14         Q.    Do you remember if you were in the
15    car or standing outside?
16         A.    I'm not -- I'm not sure.
17         Q.    When you posted the photo on
18    SnapChat, do you remember where █ - Student B and Case
19    were standing or sitting?
20         A.    No, ma'am, I do not.
21         Q.    Were the three of you together when
22    you were posting your own SnapChat stories?
23         A.    Yes, ma'am.  I believe we were.
24         Q.    If someone were to take a
25    screenshot of what you posted, would SnapChat
```

A-211

                                                                          37

1

2    notify you of that?

3        A.    Yes, ma'am.

4        Q.    After you posted the photo on your

5    SnapChat Story, do you remember getting any

6    notifications that someone had taken a

7    screenshot?

8        A.    Yes, ma'am, I do.

9        Q.    Do you remember who took a

10   screenshot?

11       A.    There were quite a number of

12   people.  I do remember █ - Student F, █.  Not much.  I

13   just remember those two.       - Student C

14       Q.    So there were others but those are

15   the only two you can remember the names of?

16       A.    Yes, ma'am.  There were a lot, a

17   lot of screenshots.

18       Q.    Can you give an estimate of how

19   many screenshots?  Was it more than 10, more

20   than 20?

21       A.    Yes, ma'am.  At least -- at least

22   25.  It was people like I didn't know.

23   People I knew.  People from different

24   schools.  It was quite a -- quite a few.

25       Q.    Do you know if Case ever saw what

ON TIME COURT REPORTING
516-535-3939

A-212

```
                                                    38
 1
 2    you had posted on your SnapChat?
 3         A.    No, ma'am.  I don't know if he ever
 4    saw it.
 5         Q.    Did he ever tell you that he saw
 6    it?
 7         A.    No, ma'am.  After this happened me
 8    and Case didn't really talk for a little.
 9    Like didn't like talk about like we weren't
10    talking about this.  We didn't spend a lot of
11    time together after this obviously because
12    what happened and then when we did start
13    hanging out and talking, this was the last
14    thing we wanted to talk about.
15         Q.    After this happened, there was a
16    period of time where the two of you really
17    didn't talk much?
18         A.    Yes, ma'am.  We weren't really
19    allowed to.  Our parents decided it was
20    better none of us really talk and were seen
21    together or anything like that.
22         Q.    When you say none of us, are you
23    referring to just you and Case or anyone
24    else?                          - Student B
25         A.    Me, Case and ██.  We had --
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-213

39

```
 1                                         39
 2        Q.    I'm sorry, go ahead.
 3        A.    After this happened, we had people
 4   showing up at our houses.  Going to Case's
 5   parents' jobs.  We were getting phone calls
 6   constantly.  Yeah, we didn't -- I didn't go
 7   out of the house for quite a while.  I didn't
 8   spend a lot of time on social media that's
 9   for sure.
10        Q.    Was there a period of time where
                     - Student B
11   you and █        didn't speak because of this?
12        A.    Yes, ma'am.  Not -- I think we had
13   a couple of phone calls or text messages
14   about what was happening and how they were
15   doing and everything was all right, but it
16   was the same kind of thing for him too.  He
17   was pretty scared for his life.  You know,
18   that kind of stuff.  It was quite a traumatic
19   time.
20        Q.    When did all your parents decide
21   the three of you shouldn't talk; how did that
22   come about?
                                       - Student B
23        A.    I'm not sure about Case and █ , but
24   I know pretty immediately after I told CJ
25   what happened and she was obviously not very
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-214

```
                                                            40
1
2      impressed by it.  And she kind of decided I
3      spend a lot of time off social media and not
4      really -- not that she didn't want me talking
5      to Case and ▮ .  She just -- it was better
                   - Student B
6      that it wasn't -- that we weren't like
7      talking like that.  Like I don't know if it
8      makes any sense.
9           Q.    Talking like what?
10          A.    Like just at all pretty much.  We
11     talked a couple of times of how we were doing
12     and we were all right but other than that, we
13     didn't speak very much.
14          Q.    At some point did that change and
15     did the three of you start speaking more?
                                              - Student B
16          A.    Yes, ma'am, it did.  Me and ▮ are
17     still very close friends.  And I'm not sure
18     when it changed but it was quite a while.
19          Q.    Had the school year ended?
20          A.    Yes, ma'am, it had.
                                   - Student B
21          Q.    Do you know if ▮ received any
22     notifications that someone had taken a
23     screenshot of whatever he posted?
24          A.    No, ma'am.  I'm not sure.
25          Q.    Do you know if Case received any
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-215

```
                                                     41
 1
 2    notifications that someone had taken a
 3    screenshot of his post?
 4         A.    No.  I'm not sure, ma'am.
 5         Q.    After the three of you posted the
 6    photo on SnapChat, tell me what happened
 7    next?
 8         A.    Well, we were driving home from
 9    Hurleyville.  And I think we realized pretty
10    quickly what we had done was not what we
11    intended it to be.  I know I took mine down.
12    It wasn't up for more than ten, fifteen
13    minutes, I took mine down.  I'm pretty sure
14    it was the same for Case and ▮.  They took    - Student B
15    theirs down very quickly, but I'm not
16    completely sure.
17         Q.    Who were you driving home with when
18    you took the post down?
19         A.    I was with -- I was with Case.
20         Q.    Do you know where ▮ was?          - Student B
21         A.    He was in the car with ▮ and ▮'s   - Student C
22    sister.                                         - Student C
23         Q.    You mentioned that you realized
24    pretty quickly that the photo was not what
25    you intended.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-216

```
                                              42
 1
 2              What led you to believe that?
 3         A.    I had gotten some messages both
 4    sides of the spectrum good and bad about
 5    it -- people like.  Then I think it was my
 6    own conscience pretty quickly I realized what
 7    I had done when I sat down and thought about
 8    it, it was not something I can leave on my
 9    social media.
10         Q.    Did anybody tell you to take the
11    post down?
12         A.    No, ma'am.  I don't believe so.
13         Q.    Do you know when Case took his
14    down?
15         A.    No, ma'am.  I don't know for sure.
16         Q.    Did you have any discussion with
17    Case in the car about taking your posts down?
18         A.    Yes, ma'am.  We talked and we both
19    came to an agreement that it wasn't what it
20    -- what it -- it wasn't something we should
21    leave there.  But I'm not sure if he took his
22    down in the car or when he got home.  It was
23    pretty quickly I'm sure of that.
24         Q.    Can you tell me what messages you
25    were receiving before you took the post down?
```

A-217

43

1

2    Just explain to me the posts the best that

3    you can remember them or the messages.

4        A.    I believe there was some that were

5    -- that were like, like there were some very

6    negative calling me some names.  Stuff like

7    that.  Stuff like -- then some thought it was

8    funny and thought it was a joke.  Yeah, it

9    was both ways.

10       Q.    The messages that you described as

11   negative, what kinds of things were people

12   saying in those messages?

13       A.    All sorts of stuff.  All sorts of

14   -- all sorts of just everything you can

15   pretty much imagine.

16       Q.    Just tell me what you remember.

17       A.    There was people calling me a

18   racist scumbag, stuff like that.  I don't

19   remember too much of it, I try -- I try not

20   to.  It was -- it was a lot.  I was very --

21   I'm still pretty young.  I am young.

22   Especially then it was -- it was a lot.

23           I did like -- I don't have any of

24   these photos on my phone of what happened,

25   but I do have a lot -- I was looking -- I saw

**A-218**

```
                                                       44
1
2      my camera roll a couple of weeks ago.
3      There's hundreds and hundreds of screenshots
4      of photos I got.  Like messages I got after.
5      It was taken down in days and weeks after and
6      some I still get even now.
7           Q.   So you have -- on your phone, you
8      have messages relating to the photo?
9           A.   Yes, ma'am.
10          Q.   Are you aware that the Subpoena my
11     office served requested certain documents,
12     you know, related to that?
13          A.   No, ma'am.  I was unaware of that.
14               MS. WEISBORD:  I'm going to
15               request that you turn over whatever
16               relevant texts or documents that
17               you have and I will follow -- I'll
18               send you a letter following up and
19               I'll just copy the language from
20               the Subpoena.  But I will be
21               sending that to you in the mail.
22          A.   Yes, ma'am, I'm sorry.  I didn't
23     realize it was on there.
24     BY MS. WEISBORD:
25          Q.   It's a long document.  For some
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-219**

```
                                                    45
 1
 2     reason, it's a form and they put it at the
 3     bottom.  I will follow up in a letter and
 4     kind of clearly outline what I requested and
 5     we can go from there.
 6          A.   Yes.  There were quite a few words
 7     I didn't understand.
 8                    MS. WEISBORD:  Let's take a
 9                    five-minute break and reconvene at
10                    10:30.
11                    (Whereupon, a short recess
12                    was taken and the proceedings
13                    resumed as follows:)
14     BY MS. WEISBORD:
15          Q.   After you left the dance studio,
16     where did you go next?
17          A.   Straight home.
18          Q.   Did Case drive you home?
19          A.   Yes, ma'am.
20          Q.   I might have already asked this, if
21     I did I apologize but during the drive home
22     did you and Case discuss any of the messages
23     that you were receiving?
24          A.   Yes, ma'am, we did.  We -- we just
25     -- I'm not sure what was said but I know we
```

A-220

```
                                                    46
 1
 2    discussed it a lot for sure.
 3         Q.    Did Case mention if he was
 4    receiving similar messages?
 5         A.    Yes, ma'am.  He received much more
 6    than I did.  He's lived here a lot longer
 7    than I have.  He knows a lot of people and a
 8    lot of people know him.  Yeah, he received a
 9    lot, a lot of messages.
10         Q.    Do you have any idea approximately
11    how many messages he received?
12         A.    No, ma'am, I do not.
13         Q.    But you remember it was a lot?
14         A.    Oh yeah.  It was -- it was
15    astronomical.
16         Q.    Did you see any of them?
17         A.    No, ma'am, I did not.
18         Q.    Did he describe any of the messages
19    to you?
20         A.    I know after the fact when we
21    talked he had to put his car in the garage
22    because people were coming by his house and
23    making a scene or stuff like that.  It was
24    taking photos of his house.  It was -- it was
25    not very good.
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-221**

```
                                                    47
1
2          Q.    Did you see any of the messages
3     that Case received?
4          A.    No, ma'am, I did not.
5          Q.    Other than SnapChat did you see any
6     messages or posts about the photo that you
7     posted?
8          A.    Yes, ma'am.  We saw them on
9     Facebook, Twitter, Instagram.  We were on the
10    news.  It was -- yeah, it was everywhere.
11         Q.    What do you remember seeing on
12    Facebook?
13         A.    There was an insane number that
14    night and days after people calling us names.
15    There were people putting our full names, our
16    addresses on Facebook.  It was -- it was --
17    yeah, there was a lot.  It was a lot of
18    stuff.  I have a lot of them saved.  I was
19    just looking on omission [sic].  I'll send
20    them to your office.  There was a lot of
21    stuff on there.
22         Q.    What do you remember seeing on
23    Twitter?
24         A.    Twitter wasn't as much because it's
25    not really used anymore.  It's not as
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-222

```
                                                        48
 1
 2     popular.  It was a lot of stuff calling us
 3     names and all sorts of stuff like that.  A
 4     lot of -- there were quite a few posts there
 5     about it.  A lot of reposts.
 6          Q.    What do you remember seeing on
 7     Instagram?
 8          A.    We were posted by -- I believe it
 9     was Blaise Gomez.  She's a reporter for one
10     of the local news stations.  We were on her
11     Instagram.  There was a story about us.  Then
12     there was other posts from people just
13     around.
14          Q.    You said Grace Gomez?
15          A.    I think it was Blaise, Blaise I
16     believe.  I'm not sure.  I know her last name
17     was Gomez.
18          Q.    Do you know where she's a reporter;
19     what station?
20          A.    No, ma'am, I don't recall.
21          Q.    What did she post if you can
22     remember?
23          A.    She posted the photo with our faces
24     blurt -- blurred out saying three local
25     Livingston Manor High School students and,
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-223

54

1

2 saying me and Case shouldn't go to school.

3         It was quite a scene but ▮ [- Student B] went to

4 school because nobody knew he took the photo

5 until later in the day.  It was the same kind

6 of thing.  ▮ [- Student B], you can't lie about it.  You

7 can't ignore it.  You've got to do something.

8         Q.   Do you know if ▮ [- Student B] was receiving any

9 messages or was it more you and Case?

10        A.   I believe he had received some when

11 he first posted the picture in SnapChat Story

12 but I think after he deleted it, there wasn't

13 too much.  I think it was mostly Case and me.

14        Q.   You mentioned that you received a

15 call from the school telling you not to go

16 that day.  Did you speak to anyone from the

17 school or did your mother?

18        A.   No, ma'am.  They called my mom.  I

19 believe it was Shirlee Davis, the Principal

20 at the time, called me.  She was -- she was

21 probably the most understanding person about

22 the whole deal.  Not really understanding,

23 but the most easiest to talk to about it.

24        She was like I understand what

25 happened.  I know they're not like that but

**ON TIME COURT REPORTING**
**516-535-3939**

A-224

```
1                                            55
2     it's just safer for everybody if they don't
3     come to school today.  That kind of thing.
4          Q.   Do you know if any other students
5     were asked to stay home that day other than
6     you and Case?
7          A.   I'm not sure because I know there
8     was another photo that was taken in
9     Livingston Manor in the classroom that came
10    -- it was months prior that came -- that came
11    to surface.  It had nothing to do with me
12    really.  So I'm not sure if those students
13    were contacted or not.
14         Q.   When you were seeing the posts and
15    reposts on social media sites, do you
16    remember seeing what Case had posted?
17         A.   I'm not sure what you mean.
18         Q.   I will rephrase because it was not
19    a clear question.
20              So you mentioned that people were
21    reposting what you and Case had posted; is
22    that accurate?
23         A.   Yes, ma'am.  The photo we saw,
24    yeah.
25         Q.   Do you remember seeing the photo
```

A-225

```
                                                        56
1
2    and caption that Case had posted getting
3    reposted later?
4         A.   Yes, ma'am.  I think -- I think it
5    was all versions of the photo, the original
6    one with no captions and then the other ones,
7    and the other ones we didn't even put
8    captions on that people had going around.
9    Because I know there was some captions and
10   stickers and that kind of stuff added even
11   after we deleted ours, people were still
12   posting and that -- you know, that kind of
13   stuff.
14        Q.   So you were seeing the photo
15   reposted with additional captions or stickers
16   that none of you had added previously?
17        A.   Yes, ma'am.  There was -- there was
18   all forms of stuff on it.  It was people who
19   were writing what awful humans we were.
20   There were people adding other captions
21   towards it.  It was all sorts of stuff.
22             That's why when you showed me the
23   other, Exhibit A and Exhibit B.  I'm not sure
24   which one was even from us because there were
25   just so many.
```

A-226

57

1

2      Q.    A lot of versions.

3      A.    Yes, ma'am.

4      Q.    Who was reposting, was it mostly

5  students or was it also nonstudents or

6  someone else?

7      A.    Yeah.  It was students,

8  nonstudents, alumni.  People from different,

9  you know, counties.  It was -- yeah, it was a

10  lot of people.  There was a lot of people

11  referring us like comparing us to the KKK

12  too.  Which is really -- that was pretty --

13  along the lines...

14      Q.    Where do you remember seeing that?

15      A.    That was on -- that was on Facebook

16  mostly I believe.  There were people saying

17  look the KKK's still alive in Long Island

18  Manor [sic], that kind of stuff.  Because I

19  guess we had a past issue with that.  I'm not

20  too sure though.

21      Q.    Do you remember who posted that?

22      A.    No, ma'am.  I know I have photos of

23  it saved.

24      Q.    Do you remember seeing any posts on

25  social media or messages characterizing the

**ON TIME COURT REPORTING**
**516-535-3939**

A-227

```
                                                       58
 1
 2    photo as racist in nature?
 3        A.    Yes, ma'am.  Pretty much every
 4    negative message we received.  Not -- I don't
 5    think negative is the right word because no
 6    messages were positive.  And nothing good
 7    came out of this.  All the negative towards
 8    me, messages we received were comparing --
 9    yeah.  Calling me racist, calling me racist
10    and everyone.
11        Q.    When you say "we," are you
12    referring to yourself and Case?
13        A.    Yes and no.  I'm referring to
14    myself.  There was a lot of people said this
15    kid didn't learn this.  This is overnight.
16    It was from his parents and grandparents
17    which is obviously not -- can't be further
18    from the truth.  It was -- yeah.  Everybody
19    that could get blamed for this and slandered
20    for it got blamed and slandered for it.
21                   MS. WEISBORD:  I'm going to
22                share my screen with you
23                (scrolling).
24                   Can everybody see that?
25                   THE STENOGRAPHER:  Yes.
```

A-228

```
                                                      64
 1

 2     you.

 3          Q.    Principal Davis suggested that you

 4     stay home the next day on April 20th, right?

 5          A.    Yes, ma'am.  Just for our safety

 6     and everybody involved.

 7          Q.    You ended up staying home that day?

 8          A.    Yes, ma'am, of course.

 9          Q.    Did you go to the school to attend

10     any meetings?

11          A.    Yes, I did.

12               I'm not sure if it was -- my mom

13     just said she was -- she's in her office.

14     She can hear most of this.  She said she's

15     printing out the timeline of when we went

16     because she saved all of it.

17               I think we had several meetings

18     about it.  There was one informal meeting

19     right after it happened and then there was

20     other one superintendent's hearing and all

21     that kind of stuff.

22          Q.    I just want to talk about this

23     initial informal meeting.

24               Do you remember where it took

25     place?
```

**A-229**

```
                                                           72
1
2          Q.      Did you have any conversations with
                - Student B
3    ███ after the meeting?
4          A.    I don't believe so, no.
5          Q.    In the week or two after April 19th
6    do you remember any other communications you
7    had with Case?
8          A.    No, ma'am.  I think at that point
9    we didn't talk very much because it was get
10   pretty serious with the school and that kind
11   of thing.
12         Q.    Did anyone from school tell you the
13   photo was being widely circulated among the
14   school community?
15         A.    Yes, ma'am.  Because the day after
16   it happened, there were students planning a
17   protest in the school as to what happened.
18         Q.    What do you know about that
19   protest, if anything?
20         A.    I'm not sure.  I wasn't --
21   obviously I wasn't in school but I know there
22   was supposed to be a protest on April 20th.
23   I'm not sure if it happened or didn't happen
24   or anything like that.  I did know it was
25   supposed to take place.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-230

```
                                                     73
 1
 2        Q.    Did anyone from school tell you
 3    that students were talking about the photos,
 4    you know, throughout the school day on April
 5    20th?
 6        A.    Yes, ma'am.  I think that was
 7    widely talked about at school from that day.
 8    I heard from a couple of students.
 9               MR. DORFMAN:  Chelsea, can
10          we take down the picture?
11               MS. WEISBORD:  Yes, I'm
12          sorry.
13               (Scrolling.)
14               MR. DORFMAN:  Thank you.
15    BY MS. WEISBORD:
16        Q.    Did anyone from school tell you
17    that the photos were being discussed during
18    class time?
19        A.    Yes, ma'am.  Well, I believe so.
20    Yeah, I know it was talked about quite a bit
21    I'm sure.  I know that there was a mass -- a
22    big school assembly that day about it too,
23    that Mr. Evans had.  I'm not sure what was
24    discussed.  I just know it happened.
25        Q.    So you know that an assembly took
```

**ON TIME COURT REPORTING**
**516-535-3939**

**A-231**

```
                                                      74
 1
 2      place but you don't know what happened during
 3      assembly?
 4           A.    No, ma'am.  I wasn't there.
 5           Q.    Are you aware of any recordings of
 6      that assembly?
 7           A.    No, ma'am, I'm not.
 8           Q.    Did anyone who attended the
 9      assembly tell you what happened?
10           A.    No, ma'am.  I don't recall.
11           Q.    Did you ever learn what the protest
12      was for?  Why students were arranging a
13      protest?
14           A.    Because they were upset about the
15      photos, both of them.  And they thought they
16      should do something about it.
17                     MS. WEISBORD:  I don't think
18                I have any more questions.
19                     I just want to take a
20                five-minute break and flip through
21                my outline.
22                     Mr. Dorfman, do you have any
23                questions today?
24                     MR. DORFMAN:  I may have one
25                or two.  I will let you know.
```

A-232

# EXHIBIT H

A-233

```
 1                                                        1
 2     UNITED STATES DISTRICT COURT
 3     SOUTHERN DISTRICT OF NEW YORK
 4     -----------------------------------------x
 5     CASE LeROY,
 6                            Plaintiff,
 7              -against-
 8     LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT and
 9     JOHN P. EVANS, in his capacity as
10     Superintendent of Schools of Livingston Manor
11     Central School District,
12                            Defendants.
13     -----------------------------------------x
14
15                       ZOOM TELECONFERENCE
16                       NOVEMBER 8, 2022
17                       2:05 P.M.
18                                           - Student B
19          EXAMINATION BEFORE TRIAL OF ██ , a
20     nonparty witness, held at the above date and
21     time, pursuant to Notice, taken via Zoom
22     teleconference, before Holly Daloia Osteen, a
23     Reporter and Notary Public within and for the
24     State of New York.
25
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-234

```
1                                                    2
2     A P P E A R A N C E S:

3

4        JEROME DORFMAN, ESQ.

5              Attorneys for Plaintiff

6              8 Breezy Hill Road

7              Parkville, New York 12768

8        BY:  JEROME DORFMAN, ESQ.

9

10

11       SOKOLOFF STERN, LLP

12             Attorneys for Defendant

13             179 Westbury Avenue

14             Carle Place, New York 11514

15       BY:  CHELSEA WEISBORD, ESQ.

16

17

18    ALSO PRESENT:

19       BRIANNA STUPARICH

20

21

22

23

24

25
```

A-235

```
 1                                                        3
 2                 S T I P U L A T I O N S
 3
 4         IT IS HEREBY STIPULATED AND AGREED
 5    by and between the attorneys for the
 6    respective parties herein, that filing,
 7    sealing and certification be and the
 8    same are hereby waived.
 9
10         IT IS FURTHER STIPULATED AND AGREED
11    that all objections, except as to the
12    form of the question shall be reserved
13    to the time of the trial.
14
15         IT IS FURTHER STIPULATED AND AGREED
16    that the within deposition may be signed
17    and sworn to before any officer authorized
18    to administer an oath, with the same force
19    and effect as if signed and sworn to before
20    the Court.
21
22         That a copy of this examination shall
23    not be furnished without charge to the
24    attorney representing the witness
25    testifying herein.
```

A-236

```
1        - Student B                                    4
2      ,
3                the witness herein, having been
4                first duly sworn by a Notary Public
5                of the State of New York, was
6                examined and testified as follows:
7      BY THE REPORTER:
8           Q.   Please state your name for the
9      record.        - Student B
10          A.            .
11          Q.   Please state your address for the
12     record.
13          A.
14
15                    MS. WEISBORD:  Good morning.
16                My name is Chelsea Weisbord.
17                I'm an attorney with Sokoloff
18                Stern.  I represent the Livingston
19                Manor Central School District and
20                Superintendent John Evans in a
21                lawsuit that was filed by Case
22                LeRoy.
23                    Today I'm going to be asking
24                you some questions regarding that
25                lawsuit.
```

A-237

16

1
2  eat?
3      A.    Paesanos in Liberty I'm pretty sure
4  we went to.
5      Q.    After you finished eating, what did
6  you all do next?
7      A.    We went to the car wash I'm pretty
8  sure.  Then headed to go pick up ▮'s sibling.    - Student C
9      Q.    Where did you go to pick up ▮'s
10  sibling?    - Student C
11      A.    It was a dance studio like a
12  theater-type place.  I'm not too sure where
13  it was.  I don't remember.
14      Q.    Do you remember what it was called?
15      A.    I actually do not know what it's
16  called.
17      Q.    But it was some type of dance
18  studio?
19      A.    Yes, some dance studio.
20      Q.    Where was this photo on the screen,
21  where was it taken?
22      A.    Right in the parking lot or --
23  yeah, parking lot of that studio.
24      Q.    How did you get to the dance
25  studio?

A-238

```
 1                                                    17
 2           A.    My friend drove me there.
 3           Q.    Which friend?
 4           A.    ▮.      - Student C
 5           Q.    What about Case and ▮,  - Student A  how did
 6     they get there?
 7           A.    Case took his own vehicle and ▮  - Student A
 8     was a passenger in that vehicle.
 9           Q.    Who took the photo depicted in the
10     screen?
11           A.    I took the photo.
12           Q.    What device did you take the photo
13     on?
14           A.    My phone.
15           Q.    Did you take the photo with the
16     camera on your phone or through some type of
17     social media app?
18           A.    I think it was through a social
19     media app.
20           Q.    Which one?
21           A.    SnapChat.  I'm pretty sure it was
22     SnapChat, yes.
23           Q.    If you took it through SnapChat,
24     would it get saved to a folder in your
25     SnapChat account?
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-239

```
 1                                               18
 2        A.    I don't think that's how it works.
 3   You would have to save it yourself.  Then I'm
 4   assuming it would save to a folder or your
 5   camera roll.
 6        Q.    So when you took the picture, what
 7   did you do with it?
 8        A.    At first, I just posted it on my
 9   story and it got -- I took it down but I
10   never saved it.
11        Q.    Can you tell me how this photo came
12   about and leading up to it?
13        A.    Yes.  I was sitting in the car.  In
14   the picture you can see that tire.  I was in
15   that car at the time and we were waiting,
16   like I said, for the sibling to come out of
17   the dance studio; and I ended up seeing Case
18   on the ground and as you can tell he's
19   looking towards the front of his car.
20             So I just assumed he was looking
21   under the car at the time, and ▮ Student A came along
22   and went on Case.  Then I got told to take
23   the picture.  I couldn't see Case and I could
24   only see like the upper half of ▮.  Student A
25             So I assumed that like maybe my
```

ON TIME COURT REPORTING
516-535-3939

A-240

```
 1                                                        19
 2     friend hit something or his bumper was messed
 3     up.  So I went out.  Took the picture.
 4     Didn't think anything of it and posted it
 5     online.
 6           Q.    Who told you to take the picture?
 7           A.    [Student A] told me to take the picture.
 8           Q.    Before this photo was taken, what
 9     were you, Case and [Student A] doing?
10           A.    I was sitting in the car with the
11     windows up.  So it was just me and [Student C] in his
12     vehicle.  I'm actually pretty sure Case and
13     [Student A] were also in his vehicle just sitting
14     there.
15           Q.    Where was [Student C] when you took this
16     photo?
17           A.    In the driver's seat of that black
18     car the whole time.
19           Q.    Did you take any other photos in
20     the parking lot other than this one?
21           A.    No.
22           Q.    Are you aware of anyone else taking
23     any photos other than this one while you were
24     all in the parking lot?
25           A.    I don't think anyone else took
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-241

20

1
2    photos of it.

3        Q.    When ▇ asked you to take the    · Student A

4    photo, did he say anything else about it?

5        A.    No.  He just said can you take this

6    photo.

7        Q.    Do you know why Case was on the

8    ground?

9        A.    I -- I had no clue why he decided

10   to go on the ground.

11          Like I said, I assumed he was

12   checking my friend's car because he was

13   laying on the ground facing the vehicle.

14       Q.    Do you recall before this photo was

15   taken, do you recall Case and ▇ kind of like    - Student A

16   pretending to arrest each other?

17       A.    No.  We were just -- me and ▐▐ were    - Student C

18   sitting in the dark car and they were sitting

19   in his car the whole time and just got out

20   and did that.  There was nothing else

21   happening in between.

22       Q.    Did you have any conversations with

23   Case about taking the photo?

24       A.    No.

25       Q.    Do you know how long Case was on

A-242

```
                                                    21
1
2    the ground before you took the photo?
3         A.    I do not know how long he was on
4    the ground prior to the photo.
5         Q.    The pose that █ is in, in the      - Student A
6    photo, would you agree that he's kneeling on
7    Case's neck and he's holding his thumb up?
8         A.    Yes.   From what the photo looks
9    like, yes.                                     - Student A
10        Q.    Do you know how long █ was in that
11   pose before you took the photo?
12        A.    I do not know how long he was in
13   that pose.
14        Q.    Did you announce that you were
15   going to take the photo before you actually
16   took it?
17        A.    No.
18        Q.    Do you know if Case was aware that
19   you were taking the photo?
20        A.    I would assume he was, yes.
21        Q.    Did he say anything to you to make
22   you believe he was aware that you were about
23   to take a photo?
24        A.    No.  He didn't say anything to me.
25        Q.    Do you recall any discussion about
```

A-243

```
                                                              22
 1                          - Student A
 2      how Case and ▮ were going to pose for this
 3      picture?
 4           A.    No.
 5           Q.    After you took the photo, did you
 6      send it to Case and ▮?  - Student A
 7           A.    Yes.  They asked for it, yes.
 8           Q.    They both asked for it?
 9           A.    I'm pretty sure both of them asked
10      for it.  If not one of them did and then they
11      must have sent --
12           Q.    What did they -- I'm sorry, go
13      ahead.  I didn't mean to interrupt.
14           A.    I'm pretty sure they both asked.
15           Q.    Do you remember what they said?
16      Like how they asked for it?
17           A.    I think they might have just said
18      can you send me the photos.
19           Q.    Then you sent it to both of them?
20           A.    Yes.
21           Q.    Was that in a single message or did
22      you send it to each of them separately?
23           A.    I'm pretty sure I sent it
24      individually because that's how SnapChat
25      works.  You can't really send it in a group.
```

A-244

```
                                                    23
1
2         Q.     You mentioned that after you took
3    the photo you posted it on your story?
4         A.     Yes.
5         Q.     How long after you took the photo
6    did you post it?
7         A.     It was probably a couple of minutes
8    after.
9         Q.     Do you remember if you posted it
10   before or after you sent the photo to Case
11   and MM?
12        A.     It was after.
13        Q.     So you sent them the photo and then
14   afterwards you posted it?
15        A.     Yes.  I'm pretty sure.
16        Q.     When you sent the photo to Case and
        . - Student A
17   ▮, did it have any type of caption or was it
18   just --
19        A.     No.
20        Q.     -- a photo by itself?
21        A.     It was just the photo.  Nothing
22   written on it.
23        Q.     Do you still have a copy of the
24   photo?
25        A.     I do not.
```

**ON TIME COURT REPORTING**
**516-535-3939**

A-245

24

1

2    Q.    Did you post the photo with any

3    type of caption or just the photo on its own?

4    A.    It was just the photo on its own.

5    Q.    Did you leave any type of comment

6    with the photo or just posted the photo?

7    A.    No.  It was just the regular photo

8    I took and just like blank, nothing on it.

9    Q.    After you sent the photo to Case

10   and MM, what did they do with it, if

11   anything?

12   A.    Well, I'm assuming by what the

13   captions and stuff they -- was on one of them

14   put the Black Lives Matter and what does it

15   say?  Cops got another.  But I did not put

16   that on there.

17   Q.    Do you know who created the caption

18   "cops got another"?

19   A.    I do not know who put that one on.

20   Q.    But it was either Case or ▇  - Student A

21   A.    Yeah.  Yes, sorry.

22   Q.    Do you know if Case posted the

23   photo on his own SnapChat?

24   A.    Yes.  I believe he did.

25   Q.    Do you remember seeing it on your

**ON TIME COURT REPORTING**
**516-535-3939**

A-246

```
                                                    25
 1
 2    SnapChat feed?
 3         A.    I do not think I went through
 4    anybody's story and looked.
 5                    MS. WEISBORD:  (Scrolling)
 6                    Now, on the screen, I have a photo
 7                    that's been previously marked as
 8                    Defendant's Exhibit B.
 9    BY MS. WEISBORD:
10         Q.    Have you seen this before?
11         A.    Yes.  I've seen it before.
12         Q.    When is the first time you remember
13    seeing this photo?
14         A.    I want to say someone ended up
15    showing me that one.
16         Q.    Do you remember who?
17         A.    I do not because I don't remember
18    it on anybody's -- like I didn't look at
19    anybody's --
20                    THE STENOGRAPHER:  I'm
21                    sorry.  Just repeat that.
22         A.    I didn't look at anybody's story
23    that day.  So I didn't see the -- that
24    picture that's on the screen now and the
25    previous one you showed.
```

**ON TIME COURT REPORTING**
**516-535-3939**

```
                                                        26
 1
 2   BY MS. WEISBORD:
 3        Q.    When did you first see them?
 4        A.    The ones where they remade my
 5   photo?  I want to say when -- like this all
 6   like got hot and all that and people started
 7   posting about it is when I initially saw all
 8   those.
 9        Q.    Do you remember looking at a photo
10   on MM's feed?
11        A.    Like on his story?
12        Q.    Yes, sorry, story.  You can tell I
13   don't use SnapChat.
14        A.    That's fine.  No.  I didn't look at
15   his story at all.
16        Q.    Do you see in Exhibit B, it
17   includes the caption "another one down"?
18        A.    Yes.  I see it.
19        Q.    Do you know who created that
20   caption?
21        A.    No.  I don't know who put on any of
22   that cops got another or another one down or
23   Black Lives Matter sticker.
24        Q.    So you don't know who added the
25   Black Lives Matter logo?
```

A-248

```
 1                                                    27
 2         A.    No.  I don't know who added those.
 3         Q.    Do you know if Case saw what you
 4    posted on your SnapChat story?
 5         A.    I don't know if he saw my story or
 6    not, because he could have looked at it or he
 7    couldn't have.  It's on him.  I don't know if
 8    he looked at my story.
 9         Q.    Did you post the photo on any other
10    social media platform other than SnapChat?
11         A.    No.
12         Q.    Did you send it to anyone in a text
13    message?
14         A.    No.
15         Q.    Where were you when you posted the
16    photo on your SnapChat story?
17         A.    I want to say it was like right
18    down the road.  We just left the parking lot.
19         Q.    Who were you with?
20         A.    I was with  ███ .   - Student C
21         Q.    Where was Case and  ███ ?   - Student A
22         A.    ███  was in Case's vehicle.   - Student A
23         Q.    So you were in  ███ 's car when you
24    posted the photo?
25         A.    Yes.
```

ON TIME COURT REPORTING
516-535-3939

A-249

```
                                                              28
1
2         Q.    Do you know if the car was moving
3    or was it still parked in the lot?
4         A.    It was moving.
5         Q.    Do you remember which of the three
6    of you posted first on SnapChat?
7         A.    I do not remember who posted first.
8         Q.    Do you know who posted last?  Like
9    do you know the order of posting at all?
10        A.    I have no clue who posted first,
11   second or third I guess.
12        Q.    Did you have any discussions with
13   Case or █   about posting the photo on
                 - Student A
14   SnapChat before any of you posted it?
15        A.    No.
16        Q.    Do you know where █  was when he
                           - Student A
17   posted on SnapChat?
18        A.    I have no clue where either one of
19   them was.
20        Q.    Did you say anything to █  about
                      - Student C
21   what you were posting?
22        A.    No.
23        Q.    Can you tell me why the three of
24   you, you know, took this picture?
25        A.    Yeah.  So like I said about him
```

A-250

29

1

2  being on the ground and him looking under the

3  car and ⬛ being on top of him, I assumed he
   ‑ Student A

4  was looking at something, maybe some damage

5  on the front of his end.  So I went out and

6  took the picture not realizing it because I

7  didn't think anything of it.  It just taking

8  -- take this picture and I did.

9              Well, it went from there.

10       Q.    You said you didn't realize it.

11  What didn't you realize?

12       A.    After the fact that I took that

13  photo and then when all like the Black Lives

14  Matter stuff is going on is when I was

15  realized that was not the best decision I

16  made because of how it looks.

17       Q.    How did you think it looks sitting

18  here now?

19       A.    Pretty bad from what happened to

20  him in this picture.

21       Q.    What happened with who?

22       A.    The George Floyd incident and then

23  with this picture with how it like aligns is

24  when I realized oh, that's not good.

25       Q.    Do you think that this picture with

**ON TIME COURT REPORTING**
**516-535-3939**

A-251

30

1

2  Case and ▮ – Student A  are similarities to George Floyd?

3     A.     In the aspect of how they're

4  positioned, yes.

5     Q.     Do you know why ▮ – Student A  wanted you to

6  take the picture?  Do you know what he was

7  trying --

8     A.     I don't know his intentions.

9     Q.     Did you receive any notifications

10  that someone had taken a screenshot of what

11  you posted?

12     A.     SnapChat does do that where you see

13  who screenshotted it.  So yes.  I would

14  assume someone -- yes.  I'm pretty sure

15  someone screenshotted it off my story.

16     Q.     Did you look to see who had

17  screenshotted it?

18     A.     Yes, because it pops up on your

19  phone who took it.

20     Q.     So you remember getting a

21  notification?

22     A.     Yeah, it pops up.

23     Q.     Do you remember who grabbed it?

24     A.     From the picture, I'm pretty sure

25  it was MM who screenshotted it off the story

**A-252**

31

1
2    and then re-amped it or made it different
3    than what mine was.
4        Q.    Do you know if Case took a
5    screenshot of what you posted and made any
6    changes to it?
7        A.    I don't think he screenshotted
8    mine.  Like I said I don't remember who
9    re-amped it -- the pictures and made it
10   different.
11       Q.    But he had it because you had sent
12   it to him, right?
13       A.    Yes.
                                    - Student A
14       Q.    Do you know if ▮ received any
15   notifications that someone had taken a
16   screenshot of what he posted?
17       A.    I don't know what was on his end if
18   he saw anything.
19       Q.    Did he mention anything about it?
20       A.    No.  He didn't mention anything to
21   me.
22       Q.    How about Case, do you know if he
23   received any notification of someone taking a
24   screenshot?
25       A.    I wouldn't know if he received a

A-253

```
                                                      32
 1
 2    notification of someone taking a screenshot
 3    on his end.
 4         Q.    After -- I'm sorry, go ahead.
 5         A.    And he didn't tell me anything
 6    about it.
 7         Q.    After the three of you posted the
 8    photo on SnapChat, tell me what happened
 9    next?
10         A.    Well, after I posted it, I ended up
11    taking it down like pretty soon after I
12    posted it, and other than that I didn't hear
13    anything of it for like almost the whole
14    night.
15         Q.    What prompted you to take it down?
16         A.    People were telling me to take it
17    down.
18         Q.    What were people saying?
19         A.    I don't think they really said
20    anything.  They just said take the photo
21    down.
22         Q.    Who was telling you this?
23         A.    Just a bunch of people telling me
24    to take it down.
25         Q.    Was it students, adults, both?
```

A-254

```
 1                                                      33
 2          A.    Probably both to be honest.  They
 3    -- SnapChat you can add a bunch of different
 4    variety of ages on there and I was receiving
 5    text messages.
 6          Q.    Other than people messaging you to
 7    take the photo down, do you remember any
 8    other messages that you received?
 9          A.    I don't recall receiving any other
10    messages about anything.
11          Q.    So after, you know, people reaching
12    out telling you to take the photo down, you
13    took it down?
14          A.    Yes.
15          Q.    Do you remember how long it was up
16    before you took the photo down?
17          A.    To be honest, I don't even think it
18    was up for five minutes.  It was quick after
19    I took it -- I took it down.
20          Q.    Where were you when you took the
21    photo off SnapChat?
22          A.    When we got out of the parking lot
23    and went down the road is when I posted it.
24    Probably shortly after getting down, further
25    down the road is when I got rid of it.
```

A-255

34

2   Q.   So you would have still been in

3   ■'s car driving?

4        A.   Yeah, yes.  I was in ■'s car.

5        Q.   Was anyone else in the car?

6        A.   Just his sibling that he picked up.

7        Q.   Other than the fact that people

8   were telling you to take the photo down, was

9   there any other reason that you decided to

10  delete it?

11       A.   No.  Just like so many people just

12  telling me to take it down that I ended up

13  just taking it down.

14       Q.   Do you know if Case took down his

15  post?

16       A.   I'm not sure if either one of them

17  took down their post or when they did.

18       Q.   After you left the dance studio,

19  where did you go next?

20       A.   Straight home is where we went --

21  well, I should say ■ dropped me off then he

22  went to his house.

23       Q.   Did you have any discussions with

24  KB on the ride home about the photo or the

25  fact that you had taken it down?

A-256

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM
NYSCEF DOC. NO: 6    Case 7:21-cv-06008-NSR-AEK    Document 64-9    Filed 06/12/23    Page 1 of 32    INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

LIVINGSTON MANOR CENTRAL SCHOOL DISTRICT
LIVINGSTON MANOR, NEW YORK
----------------------------------------x
In the Matter of:


        SUSPENSION HEARING
        REGARDING STUDENT CL


----------------------------------------x

                        April 27, 2021
                        19 School Street
                        Livingston Manor, New York 12758


BEFORE:   KATE REID, ESQ., HEARING OFFICER


APPEARANCES:

        JOHN P. EVANS
        Superintendent of Schools

        BETHANY CENTRONE, ESQ.
        Legal Counsel for Capital Region BOCES

        CL
        Student

        MR. and MRS. GORDON LEROY
        Parents



Digitally recorded proceeding,
Transcribed by: Ria Jara
Czerenda Court Reporting
71 State St.
Binghamton, NY 13901

**A-257**

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM
INDEX NO. E2021-968
NYSCEF DOC. NO. 5
Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 2 of 32
RECEIVED NYSCEF: 06/16/2021

2

## INDEX

**WITNESSES**

Case LeRoy

John Evans

**EXHIBITS:**                                                                     **PAGE**

**District**

| | | |
|---|---|---|
| 1 | Photo posted on Snapchat | 10 |
| 2 | Photo posted on Snapchat | 21 |
| 3 | Photo posted on Snapchat | 21 |
| 4 | Interview notes of Superintendent Evans | 24 |

1

A-258

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8    Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 3 of 32 RECEIVED NYSCEF: 06/16/2021

PROCEEDING                           3

1    (On the record CL Part 1)

2              MS. KATE REID:  All right.  Good morning,

3    everybody.  Making sure we're on the recorder, it's the

4    biggest part really.  Thank you very much for joining us

5    today for our Superintendent's Hearing regarding the

6    student Case LeRoy.  It's important to recognize that the

7    hearing we're here about today is the most serious hearing

8    that a school district can bring against one of its pupils

9    under our State Education Law.  It's a hearing in which we

10   consider whether Case's behavior will result in a further

11   suspension from school.

12             MS. LEROY:  Yes.

13             MS. REID:  Did you receive a notice in advance

14   of today's hearing?

15             MS. LEROY:  Yes, we did.  Yes, we did.

16             MS. REID:  Okay.  Do you have any questions

17   about your rights as set forth in that letter?

18             MS. LEROY:  The only question I have is, and I

19   don't think Case has made a decision on it.  Bear with me

20   for just one second.  I'm sorry.  I have to put this down.

21   I didn't want my glasses to fog up.

22             MS. REID:  That's fine, ma'am.

23             MS. LEROY:  That Case has the right to receive a

24   decision from the superintendent.  So I'm assuming that

25   decision whether he is further suspended could either come

26   from you, ma'am or the superintendent.  I was confused

A-259

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 8    Case 7:21-cv-06008-NSR-AEK    Document 64-9    Filed 06/12/23    Page 4 of 32    RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                                9

1    going to proceed.  We're going to hear the proof that Ms.

2    Centrone has to offer.

3              MS. LEROY:  Sure.  Sure.

4              MS. REID:  I will give you a chance then to

5    respond and to hear from Case's law.  So we're going to

6    enter that as a plea of not guilty.

7              MS. LEROY:  Okay.

8              MS. REID:  We'll move forward with the hearing

9    which is Case's right.  Ms. Centrone, do you want to

10   begin?  Do you want to question Case to begin, or would

11   you like to call a witness?

12             MS. CENTRONE:  Yes.  I would question Case.

13             MS. REID:  Okay.  Case; are you willing to

14   answer Ms. Centrone's questions today?

15             MR. C. LEROY:  Yeah.

16             MS. REID:  That means I'm going to have to put

17   you under oath as well.  So, can you raise your right hand

18   for us, please?

19   WHEREUPON,

20                  C A S E   L E R O Y ,

21   was called as a witness and having been first duly

22   sworn, was examined and testified as follows:

23             MS. REID:  All right.  Ms. Centrone, you may

24   proceed.

25             MR. EVANS:  When you talk, can you talk a little

26   bit louder just so --

A-260

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM   INDEX NO. E2021-968
NYSCEF DOC. NO. 8   Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 5 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                    10

1          MR. C. LEROY:  Yeah.  Sorry.

2          MS. CENTRONE:  Is it okay if I call you Case?

3          MR. C. LEROY:  Yes, ma'am.

4          MS. CENTRONE:  So, Case, I'm going to ask you

5     some questions about some social media posts that were —

6     one of which was originally posted on April 19th and then

7     one, I think, that we'll get into, but I think it was

8     posted previously and then shared again on April 19th.  So

9     we'll just proceed and you can answer the questions to the

10    best of your ability.

11          So I'm going to give you -- to look at, and a

12    copy for the hearing officer.

13          MS. REID:  Thank you.  Are you marking this, Ms.

14    Centrone?

15          MS. CENTRONE:  Yes.  So this will be Exhibit 1,

16    marking it.

17          (District Exhibit 1 marked for identification)

18          MS. CENTRONE:  Case, do you recognize that

19    photo?

20          MR. C. LEROY:  Uh-hmm.

21          MS. REID:  And Case, just to be clear, because

22    we're making a recording of this, I just would ask that

23    you answer verbally.

24          MR. C. LEROY:  Oh, I'm sorry.  Yes.

25          MS. REID:  And not have the uh-hmm or head nods.

26    It's hard for the recorder to pick that up.  Thank you.

A-261

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM
NYSCEF DOC. NO. 8

INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 6 of 32

PROCEEDING                                              11

```
 1              MR. C. LEROY:  Sorry.

 2              MS. CENTRONE:  Just like TV.

 3              MS. REID:  Just like TV, yes.

 4              MS. CENTRONE:  Did you post this on Snapchat or

 5      other social media, this photo?

 6              MR. C. LEROY:  Yeah.  On Snapchat.

 7              MS. CENTRONE:  Okay.  Can you explain sort of

 8      how this photo came about?

 9              MR. C. LEROY:  So I was looking underneath my

10      friend's car right here, and then he got out of my car,

11      and --

12              MS. CENTRONE:  Who is he?

13              MR. C. LEROY:  What?

14              MS. CENTRONE:  Who is he?

15              MR. C. LEROY:  Morgan.

16              MS. CENTRONE:  Is that the person in the black

17      shirt?

18              MR. C. LEROY:  Yes.  And he was joking around

19      and then just kind of like knelt down on my back and he

20      was telling me that I'm under arrest for dating a minor.

21      That was like our joke, but we didn't -- I didn't think

22      about the other --

23              MS. CENTRONE:  Who took the photograph?

24              MR. C. LEROY:  My other friend, Joseph Gould.

25              MS. REID:  Joseph what?

26              MR. C. LEROY:  What?
```

A-262

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 6 Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 7 of 32  RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                    12

1            MS. REID:  Could you repeat the name of the

2     person?

3            MR. C. LEROY:  Joseph Gould.

4            MS. REID:  You can take your mask off.

5            MS. CENTRONE:  Yeah.  It's okay.

6            MS. REID:  You said Jould, J-o-u-l-d?

7            MR. C. LEROY:  G.

8            MS. LEROY:  Oh, G-o-u-l-d.  I don't know if you

9     said J.  I'm sorry.

10           MS. REID:  Yeah, yeah.  Great.

11           MS. CENTRONE:  And how did he come -- do you

12     know how he came about - come up and take the picture?

13     Joseph Gould?  Do you know?

14           MR. C. LEROY:  He was in his car.  My -- Kevin's

15     (phonetic) car.

16           MS. CENTRONE:  Is that the car that you're

17     looking at?

18           (Interposing)

19           MR. C. LEROY:  Yeah, I'm looking under it.

20     Yeah.  And he just got out and took a picture.

21           MS. CENTRONE:  And then after he took a picture,

22     what happened next?

23           MR. C. LEROY:  He sent the picture to me and my

24     friend, (indiscernible), and then --

25           MS. REID:  How did he send the picture?

26           MR. C. LEROY:  Through Snapchat.  And then we

A-263

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                         RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 8 of 32

PROCEEDING                                      13

1    posted it, and then once I saw Morgan's post with the

2    Black Lives Matter thing on it, I like, I told them all to

3    take it down.  It was up for like seven minutes.

4              MS. CENTRONE:  Did you -- so this is your post,

5    right?

6              MR. C. LEROY:  Uh-hmm.

7              MS. CENTRONE:  And did you add, "cops got

8    another one" to the bottom of that?

9              MR. C. LEROY:  Yeah.

10             MS. REID:  Another clarification question.  So

11   the caption that's on this, then that's what -- that's the

12   caption that would have appear on Snapchat when it was

13   posted?

14             MR. C. LEROY:  Yeah.

15             MS. REID:  Okay.  So you put that on the picture

16   via the Snapchat program?

17             MR. C. LEROY:  Yeah.

18             MS. REID:  Okay.

19             MS. CENTRONE:  You're probably going to get a

20   lot of -- I don't know much about Snapchat questions.

21             MS. REID:  It's amazing like simple chat

22   questions but --

23             MS. CENTRONE:  You're not alone.  You're not

24   alone.  Now, I'm going to give you another file here

25   Here, I'll show you this too.  Do you want to -- whatever

26   we give to you is part of the record and you can put that

A-264

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM     INDEX NO. E2021-968
NYSCEF DOC. NO. 6    Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 9 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                    14

1    in there (inaudible).  Keep it.  You may keep it later on.

2              So, did Morgan, did he post it right there when

3    you were - with the Black Lives Matter logo on it - right

4    while you're standing there waiting or --?

5              MR. C. LEROY:  I was -- we were driving back

6    from my car, and I didn't see him put it on there, and

7    then I viewed his story and I saw it, and I immediately

8    told him to take it off.

9              MS. CENTRONE:  I'm unsure if I did give that

10   photo, not sure, to everyone.  Case, did you take this

11   picture?

12             MR. C. LEROY:  Yeah.

13             MS. CENTRONE:  Can you recall about when that

14   picture was taken?

15             MR. C. LEROY:  No, I don't.

16             MS. CENTRONE:  Was it weeks ago?

17             MR. C. LEROY:  I'm going to say it's a while

18   ago.

19             MS. CENTRONE:  Where was the picture taken?

20             MR. C. LEROY:  My first period class.

21             MS. CENTRONE:  Is that there?

22             MR. C. LEROY:  Yeah.

23             MS. CENTRONE:  Did the students in this picture

24   ask you to take it?

25             MR. C. LEROY:  I'm pretty sure that -- so the

26   kid lying down on the desk, he -- me and this other kid in

A-265

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 8    Case 7:21-cv-06008-NSR-AEK    Document 64-9    Filed 06/12/23    Page 10 of 32    RECEIVED NYSCEF: 06/16/2021

PROCEEDING    15

1       the red we're in public safety, and he --

2               MS. REID:  Before we proceed, could you actually

3       identify who the two kids are?

4               MR. EVANS:  Use their names.

5               MS. REID:  Yeah.  Use their names.

6               MR. C. LEROY:  Okay.  The kid lying down on the

7       desk is CJ, and the other one is Devin.

8               MS. REID:  CJ?

9               MR. C. LEROY:  Yeah.

10              MS. REID:  Okay.

11              MR. C. LEROY:  CJ asked Devin to show him

12      something he learned from public safety, and then joking

13      around, they told that I take a picture - pretty much.

14              MS. CENTRONE:  Did they ask you to share or post

15      it?

16              MR. C. LEROY:  I don't remember to be honest

17      with you.

18              MS. CENTRONE:  Is that what you told the

19      superintendent when you talked to him the other day?

20              MR. C. LEROY:  No, I didn't say anything about

21      them saying to share or post it.

22              MS. CENTRONE:  Did you share or post this

23      picture?

24              MR. C. LEROY:  I sent it to both of them.

25      know that, and then I don't really remember if I posted it

26      or not.

A-266

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM   INDEX NO. E2021-968
NYSCEF DOC. NO. 8   Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 11 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                           16

1          MS. CENTRONE:  Did you put the caption on this

2     photo?

3          MR. C. LEROY:  No.

4          MS. REID:  Case, just one question here.  At the

5     top it says Stephanie with a number of E's.  Is that a

6     handle that you use online?

7          MR. C. LEROY:  Huh?

8          MS. REID:  Is Stephanie a handle that you use?

9     Is that associated with you?  Is that a username for you?

10         MR. C. LEROY:  No.  I don't have.  I don't

11    understand.

12         MS. REID:  Do you know who she is?

13         MR. C. LEROY:  Yeah.

14         MS. REID:  Who is she?

15         MR. C. LEROY:  I don't remember what grade she's

16    in, to be honest.

17         MS. REID:  She's a student here at Livingston

18    Manor?

19         MR. C. LEROY:  Yeah.

20         MS. REID:  Okay.

21         MS. LEROY:  Can I -- am I allowed to ask a

22    question?

23         MS. REID:  You will actually after Ms. Centrone

24    is done, then you'll be able to ask him clarifying

25    questions.

26         MS. LEROY:  Okay.  Sure, sure.  Case was

A-267

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 6     Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 12 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                    17

1    wondering if he would be given the opportunity to explain

2    his caption, like what he was thinking when --

3              MS. REID:  You can ask him any questions that

4    you think are helpful to clarify.

5              MS. LEROY:  Okay.  What were you thinking son

6    when you --?

7              MR. C. LEROY:  I wasn't thinking anything

8    racist.  Just would -- this is like I know the person.

9    That's all I meant by that.

10             MS. REID:  I'm sorry.  That's on the caption of

11   the first - the "cops got another"?

12             MR. C. LEROY:  Yeah.

13             MS. LEROY:  Yes, correct.

14             MS. REID:  So you say you weren't thinking

15   anything racist.  What were you thinking by cops - just

16   explain that to us?  What did you think?

17             MR. C. LEROY:  This is like I know the person,

18   nothing like bad.

19             MS. CENTRONE:  Can I ask a follow-up question?

20             MS. REID:  Go right ahead.

21             MS. CENTRONE:  Were you aware of the trial of

22   Mr. Chauvin and what was happening with --

23             MR. C. LEROY:  No, not at all.

24             MS. CENTRONE:  Then how would you have known to

25   say "cops got another one" in this photo?

26             MR. C. LEROY:  What do you mean like the trial

**A-268**

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8          Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 13 of 32          RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                    18

1     that was going on?

2              MS. CENTRONE:  Uh-hmm.

3              MR. C. LEROY:  Yeah.  I have no clue that was

4     going on.

5              MS. CENTRONE:  But this reminded you of police

6     officers, this post right here?

7              MR. C. LEROY:  Only because he said that you're

8     under arrest for being a pedophile or dating a minor.

9              MS. CENTRONE:  You mean he, you mean Morgan?

10             MR. C. LEROY:  Yeah.  That's something that made

11    me think of that.

12             MS. REID:  Do you have any clarifying questions,

13    Ms. LeRoy?

14             MS. LEROY:  No, not on those two.

15             MS. REID:  How about Mr. LeRoy?  Do you have any

16    questions for your son?

17             MR. G. LEROY:  I don't.

18             MS. REID:  Okay.  I just have a couple of

19    clarifying questions before we turn to the district's next

20    witness.  So has it been explained to you why the

21    statement might have been insensitive and may have been

22    perceived that way?

23             MR. C. LEROY:  Yeah.

24             MS. REID:  What's your understanding of that?

25             MR. C. LEROY:  I just -- I didn't realize that

26    the George Floyd case was going on.  I really didn't

A-269

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 14 of 32

PROCEEDING                                    19

1     remember.  Like I wasn't thinking that when this was

2     taken, and then someone told me that it can be taken that

3     way.  I felt terrible after.

4               MS. REID:  Who explained that to you?

5               MR. C. LEROY:  A lot of people.

6               MS. REID:  A lot of people?

7               MR. C. LEROY:  Yeah.

8               MR. G. LEROY:  To include his mother and father

9     really quick.

10              MS. REID:  Okay.  All right.  I don't have

11    anything else.  Ms. Centrone, do you have anything else

12    for Case?  Ms. Centrone?

13              MS. CENTRONE:  Yeah.  I'm good.

14              MS. REID:  All right.

15              MS. CENTRONE:  Just one follow up.  With regards

16    to -- you said that when you saw Morgan post the Black

17    Lives Matter picture or graphic on the post, that you told

18    him to take it down right away, what were you thinking

19    then as far as the association with the photo?

20              MR. C. LEROY:  Oh, after I saw the Black Lives

21    Matter thing, then it like dawned on me like, oh, this

22    picture will be taken like the wrong way.  It's very bad,

23    and then I told him to take it down right away.

24              MS. REID:  When you say the Black Lives Matter,

25    because I don't know anything about this case, this is all

26    the first time I am hearing about it.

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8 RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 15 of 32

PROCEEDING                                          20

1          MR. C. LEROY:  Sure.

2          MS. REID:  So when you say the Black Lives

3    Matter thing, what was it that you saw that made you think

4    that there was an association?

5          MR. C. LEROY:  So on Snapchat, you can put like

6    these little stickers, I guess, in your post, and I guess,

7    I don't know, why they're like there.  And it was --

8    because I've never seen these ones before, and one of them

9    says Black Lives Matter, and I guess he put it on the

10   post.

11         MS. REID:  When you say he, you mean Morgan?

12         MR. C. LEROY:  Yeah, Morgan.

13         MS. REID:  Okay.  And that was on --

14         MS. CENTRONE:  I'll give you -- just so the

15   hearing officer is able to understand.

16         MS. REID:  I thought it was this section.  In

17   this picture?

18         MR. C. LEROY:  No.

19         MR. EVANS:  Yeah.  It's this one.  I'll give you

20   that as a --

21         MS. REID:  Okay.

22         MS. CENTRONE:  Yeah.  Because that's Case's

23   post, but that's Morgan's post.

24         MS. REID:  Okay.

25         MS. CENTRONE:  For the record, Case, when you

26   say that Morgan posted another -- reposted and added the

A-271

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 8    Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 16 of 32    RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                  21

1   Black Lives Matter, is that the picture that you are

2   referring to?

3              MR. C. LEROY:  Yeah.

4              MS. CENTRONE:  Okay.

5              MR. C. LEROY:  And he also put a different

6   caption.

7              MS. CENTRONE:  Put another one down?

8              MR. C. LEROY:  Yeah.

9              MS. REID:  Ms. Centrone, I'm assuming you're

10  marking both the second and the third as District

11  exhibits?

12             (District Exhibits 2 & 3 marked for

13  identification)

14             MS. CENTRONE:  Yes.

15             MS. REID:  Okay.  Anything further for Case?

16             MS. CENTRONE:  Nope.

17             MS. REID:  All right.  Do you plan on calling

18  any other witnesses today?

19             MS. CENTRONE:  I call Superintendent Evans.

20             MS. REID:  Great.  Superintendent Evans, I think

21  we'll take your testimony right here.  This is fine.

22  Would you raise your right hand, please, sir?

23  WHEREUPON,

24             J O H N  P  E V A N S ,

25  was called as a witness and having been first duly

26  sworn, was examined and testified as follows:

A-272

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM      INDEX NO. E2021-968
NYSCEF DOC. NO. 8      Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 17 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                      22

1          MS. REID:  Great.  Ms. Centrone, you may

2     proceed.

3          MS. CENTRONE:  Mr. Evans, did you become aware

4     of posts that we brought to your attention on or about

5     April 19 to 20?

6          MR. EVANS:  Yes, Monday evening, April 19th.

7          MS. CENTRONE:  Okay.  Were the posts that you

8     were made aware of something to the effect of Exhibits 1,

9     2, and 3 of the --

10          MR. EVANS:  Yeah, three and two.

11          MS. CENTRONE:  Three and two?

12          MR. EVANS:  Were the ones that were shared to

13     me.

14          MS. CENTRONE:  Okay.  Did you speak with anybody

15     in relationship to those posts after you learned of them?

16          MR. EVANS:  Yeah.  I had a couple of phone calls

17     with my principal.  I have been contacted by a couple of

18     students and a couple of parents, and I have received a

19     couple of phone calls from school staff alerting me to the

20     posts.

21          MS. CENTRONE:  Okay.  And after that, did you

22     speak to any of the individuals involved in the posts?

23          MR. EVANS:  Yes.  So on Monday morning, we

24     reached out to the parents of all the students that

25     appeared in the photographs and kind of asked them to not

26     send their kids to school in the morning because there was

A-273

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 6    Case 7:21-cv-06008-NSR-AEK    Document 64-9    Filed 06/12/23    Page 18 of 32 RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                    23

```
 1    a pretty substantial disruption going on, a lot of chatter

 2    on social media.  And we have been receiving multiple

 3    emails from students, and parents, and community members

 4    about the posts.  And looking at some of those posts

 5    online, there were harassing and threatening comments

 6    underneath some of the posts, so we were concerned about

 7    the safety of the students.  So we reached out to the

 8    parents and asked, you know, that they not send their

 9    students to school on --

10            MS. CENTRONE:  Which students -- what students

11    are you talking about?

12            MR. EVANS:  So we reached out to Case's parents,

13    to Morgan's parents, to Devin, and to CJ's.  The four

14    students that appear in the photos.

15            MS. CENTRONE:  Okay.

16            MR. EVANS:  And ask them to not send their kids

17    to school on Tuesday morning and that we will be

18    contacting them individually to come in and talk to us to

19    get more information from them about the posts.

20            MS. CENTRONE:  And did you do that?  Did you

21    contact the parents of those students?

22            MR. EVANS:  Yeah.  Ms. Shirlee Davis, my high

23    school principal reached out to them all.

24            MS. CENTRONE:  Did you directly talk to the

25    students?

26            MR. EVANS:  Yes.  On Tuesday morning, all of the
```

A-274

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8 Case 7:21-cv-06008-NSR-AEK Document 64-9 Filed 06/12/23 Page 19 of 32 RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                                   24

1    students and parents came in and met with Principal Davis

2    and myself in my office where we asked them some questions

3    about the posts.

4              MS. CENTRONE:  And then I give you, I'm going to

5    mark it as Exhibit 4.  I'm giving one to the hearing

6    officer as well.

7              MS. REID:  Thank you.

8              (District Exhibit 4 marked for identification)

9              MS. CENTRONE:  Can I see that again?  I have two

10   different copies.

11             MS. LEROY:  That's okay.

12             MS. CENTRONE:  At least I would understand

13   there's some -- right.  This is not the right one.  You

14   got the right one.  Okay.  Kate, can I see your copy?  I

15   want to make sure that I'm giving you the right one.

16   There you go.  Okay.

17             MS. REID:  You want this one back?

18             MS. CENTRONE:  Yeah.  Just in case.  We have two

19   different ones.  Mr. Evans, do you recognize this

20   document?

21             MR. EVANS:  Yeah.  They are my notes from the

22   interviews of the students.

23             MS. CENTRONE:  Okay.  And it's for all four

24   students:  Case, Morgan, Cornelius Jones, and that is by

25   Joseph Gould and Devin.

26             MR. EVANS:  Devin.

A-275

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                          RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 20 of 32

PROCEEDING                                    25

1                MS. CENTRONE:  Gonzales?

2                MR. EVANS:  Yeah.  This is Case, Morgan and

3      Jones.

4                MS. CENTRONE:  Okay.  That's what I did.  There

5      you go.

6                MR. EVANS:  Yeah.

7                MS. CENTRONE:  Okay.  Listening to Case's

8      testimony today, does that echo or reflect your

9      recollection of what he said to you during the interview

10     on the 20th?

11               MR. EVANS:  Yes.  That they had -- they were at

12     the dance studio and had (indiscernible), that he had

13     looked under the car for some reason.  Morgan got on top

14     of him.  They asked Joseph Gould to get out of the car and

15     take a picture.  That kids had posted it.  I asked if they

16     still have the photos, they deleted it.

17               When asked about the picture, Case indicated

18     that his did not have the Black Lives Matter picture on

19     it.  When I asked why they did it, he indicated they were

20     joking around, and that Case indicated that when he saw

21     the post that Morgan had done with the Black Lives Matter

22     logo on it, that he asked him to take it down.  When asked

23     about the significance of the post, and what it

24     represented, he said at first, I wasn't thinking about the

25     George Floyd thing going on.  That he didn't realize that

26     the trial was going on.

**A-276**

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                                           RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 21 of 32

|   | PROCEEDING | 26 |
|---|---|---|

1      So I asked them about the other picture that was

2  on social media, the picture with Devin and CJ.  I asked

3  if they ever posted anything before like that.  He said

4  no.  When I asked about that picture, he said Devin and CJ

5  were talking about public safety class.  I asked if he was

6  there.  He said yes.  I asked if he took the picture.  He

7  said yes, he did, and it was the first period English

8  class.  And I asked if he sent it to anyone.  He said yes,

9  he sent it to Devin and CJ, and CJ asked Devin to show him

10  the hold.  It wasn't a racist thing.

11      MS. CENTRONE:  And you interviewed Morgan and CJ

12  and Devin, correct?

13      MR. EVANS:  Yes.

14      MS. CENTRONE:  Did Morgan confirm that the

15  picture they posted was the picture without the Black

16  Lives Matter?  Do you recall?

17      MR. EVANS:  When I interviewed Morgan, I did not

18  have a copy of that.  I only had the copy of the one that

19  --

20      MS. CENTRONE:  Okay.  Did Morgan admit that he

21  had added the graphic?

22      MR. EVANS:  Morgan did admit that he added the

23  Black Lives graphic.  Yes.

24      MS. CENTRONE:  Okay.  With regards to your

25  interviews of Devin and CJ, what was their account of the

26  other picture as Exhibit 2?

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 6          RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 22 of 32

PROCEEDING                                          27

1          MR. EVANS:  So that the -- it was a conversation

2     between the two of them about holds and public safety, and

3     that Devin -- that CJ had asked Devin to show him and

4     demonstrate that hold and it was a voluntary consensual

5     thing between the two of them.  But they've both had

6     indicated that they were unaware that Case was taking the

7     picture.  And that when they became aware that Case had

8     taken a picture, they asked him to take it down.

9          MS. CENTRONE:  I'm sorry.  He took the picture

10    and then he posted the picture.

11         MR. EVANS:  They said they saw it on Snapchat.

12         MR. G. LEROY:  Case would like to add that Devin

13    was looking right at him when the picture was being taken.

14         MS. CENTRONE:  Right.  Hold on a minute.

15         MS. REID:  Give him a minute to respond and ask

16    him questions as well.

17         MR. G. LEROY:  Okay.

18         MS. REID:  Yeah.  I just want to clarify so I

19    understand your testimony as well, Mr. Evans, which is

20    what it -- did CJ indicate that Case was -- he was not

21    aware that Case was taking the picture, or that he was not

22    aware that Case had posted the picture on social media?

23         MR. EVANS:  Both.

24         MS. REID:  Okay.

25         MR. EVANS:  Both Devin and CJ indicated that

26    they were unaware that the picture was being taken and

A-278

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 6                                                        RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 23 of 32

PROCEEDING                                    28

1    that were not aware until they saw it on Snapchat.

2          MS. REID:  Okay.

3          MS. CENTRONE:  Mr. Evans, you alluded to this a

4    little bit, one you mentioned here before.  But can you

5    describe to us what has happened in the school district

6    since those posts became public on April 19th?

7          MR. EVANS:  So, yeah, quite a bit.  There has

8    been a lot of emails and communications sent to both the

9    superintendent and the principal from students, from

10   staff, from people both inside of the community and

11   outside of the community.

12         On Tuesday, the day immediately after the event

13   occurred, there was a lot of this ongoing discussion among

14   students throughout pretty much 7 to 12 that did really -

15   not so much the elementary, I hope - but through the 7 to

16   12 student population.  It was kind of a buzz up the

17   building.  At one point during the day, I became aware of

18   a student protest that was scheduled to occur at some

19   point in the afternoon.  And the information that we have

20   received is that students were planning to live stream it.

21         Kind of as a counter measure to that, we

22   scheduled a 7 through 12 student assembly in the gym, at

23   which point I addressed the entire student body that we

24   were aware of the posts on social media and that they were

25   being investigated.  And then I also addressed the faculty

26   and staff that were present.  Talked about, you know,

A-279

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8   Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 24 of 32   RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                29

1    racism and the connotations of the post upset a lot of

2    people because they were viewed as racist in nature.  And

3    I explained that that had no place in our school and that,

4    you know, it was being addressed and being investigated,

5    and then asked, you know, students if they had additional

6    information to reach out to the principal or myself.  And

7    then sent students back to class.  It was about a 15 to

8    20-minute conversation with the student body and the

9    staff.

10             Several students stayed after, the ones that

11   were planning a protest.  I explained to them about the

12   Code of Conduct violations and using electronic devices in

13   school.  They did not end up livestreaming anything, but

14   did spend a few minutes in the gym afterwards for their

15   protest I guess.

16             MS. CENTRONE:  And did any students report any

17   individual consequences of that after these posts were

18   placed on the web?

19             MR. EVANS:  Individual consequences?

20             MS. CENTRONE:  Things that were happening to

21   them specifically?

22             MR. EVANS:  The students had indicated that they

23   were being harassed.

24             MS. CENTRONE:  Which students indicated that?

25             MR. EVANS:  The students in the photos.

26             MS. CENTRONE:  Including Devin and CJ?

A-280

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 25 of 32

PROCEEDING                                        30

1          MR. EVANS:  Devin, CJ, Case, and Morgan, all had

2     received comments on – not directly to them but had seen

3     comments posted on social media that were harassing and

4     threatening.  In addition to the -- indirectly, in school

5     stuff, several news stations have reached out to the

6     school district, to me, wanting information about the

7     event and wanting to conduct interviews.  There is a

8     statement that's posted on the school website indicating

9     that the school district is aware of the event.  That

10    student discipline issues are confidential matters, and

11    that, you know, it was not going to be discussed.  So all

12    of those media requests have been directed to the

13    statements on the website.

14         MS. CENTRONE:  And was there any media coverage

15    of the event, of the (interposing)?

16         MR. EVANS:  A couple of news stations did.

17    There were some newspaper articles that I have seen and I

18    believe one of the Hudson Valley news stations did do a

19    news broadcast showing the social media posts of the four

20    students indicating that it's the Livingston Manor Central

21    School District.  They did gray out the faces of the kids.

22    But a lot of the stuff that has been online contained the

23    kids' names.  But in the news broadcast, they did not

24    mention names.  They just mentioned Livingston Manor

25    Central School students and that showed the four.

26         MS. CENTRONE:  Have you had an opportunity to

A-281

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                    44

1          MR. G. LEROY:  That's my opinion.

2          MS. REID:  Yeah.

3          MR. G. LEROY:  I am thankful though that he was

4     there to answer the call every time I call.  But, no,

5     other than that, I think I'm good.

6          MS. REID:  Okay.  So at this phase then my job

7     as hearing officer is to go through the initial charges,

8     and to determine whether or not, in my opinion, that the

9     proof has been sustained by the district on those charges.

10    And if at the conclusion of that, there is a decision on

11    my part that we could be looking at a suspension of more

12    than ten days out of this process, then it will be

13    referred to the Committee on Special Education process,

14    and that's when the psycho-educational evaluation would

15    come into play.

16          So I have a letter here, and this is the April

17    23rd letter you received.  I'm going to go through each of

18    the provisions of the Code of Conduct that were charged.

19    What's really relevant to this is the underlying conduct

20    itself, and whether that conduct violated the Code of

21    Conduct.  And I find that it does in some regards but not

22    with regards to all of the allegations as charged.

23          So charge 1 referenced to Article VI A5,

24    engaging in any willful act which disrupts the normal

25    operation of the school community.  So I find that Case is

26    guilty of that provision, that violation of the Code of

A-282

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM    INDEX NO. E2021-968
NYSCEF DOC. NO. 8    Case 7:21-cv-06008-NSR-AEK    Document 64-9    Filed 06/12/23    Page 27 of 32    RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                45

1      Conduct.  I believe that when he posted the initial

2      picture, he should have known based on what was going on

3      in the world and the whole community at large, that that

4      was something that was insensitive, that like -- you

5      should have appreciated that that was going to cause the

6      kind of reaction that it caused.  So I do find that the

7      district sustained its burden of proof on that charge.

8              With respect to VI C3, display or using of

9      personal electronic devices, such as, but not limited to

10     cell phones, iPods, digital cameras in a manner that is in

11     violation of district policy.  I did not hear any evidence

12     during this hearing that there was any violation by Case

13     of that particular provision.  There is no evidence

14     submitted that the use of technology, the Snapchat in this

15     case, was, you know, violated any policy with respect to

16     electronic devices.  So I'm finding that charge not

17     sustained.

18             Charge 3 which is Article VI E4 discrimination,

19     which includes using race, color, creed, national origin,

20     ethnic group, religion, religious practice, sex, gender

21     (identity and expression), sexual orientation, weight or

22     disability to deny rights, equitable treatment or access

23     to facilities available to others.  I don't find that that

24     charge is sustained on the grounds that it doesn't appear

25     from the evidence that was presented.  That Case actually

26     targeted any individual person with respect to his

A-283

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                          RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 28 of 32

PROCEEDING                                46

1  conduct.  I think his conduct was insensitive.  I think

2  that it should have been anticipated by him with a level

3  of maturity he has in his age.  That that would have been

4  disruptive of the school environment that will cause the

5  kind of reaction it caused.  But I don't find that he

6  targeted any particular person based on any protected

7  characteristic such that that charge will be sustained.

8           With respect to Charge VI E5 harassment, which

9  includes a sufficiently severe action or persistent

10 pervasive pattern of actions or statements directed at an

11 identifiable individual or group which are intended to be,

12 or which a reasonable person would perceive as ridiculing

13 or demeaning.  This one is a little bit of a closer call.

14 I did hear some testimony during the hearing that

15 individual students that were involved in the pictures

16 themselves were targeted and harassed through the process

17 because -- but that was arguably because of their own

18 behavior.  Not because they were being targeted

19 innocently.  So I didn't hear any evidence that Case

20 himself individually targeted or harassed any person even

21 though certainly his behavior was disruptive.

22           And then the final charge is charge 5 which is

23 VI H, which alleges that he engaged in off-campus

24 misconduct that interfered with, or can reasonably be

25 expected to substantially disrupt the educational process

26 in the school or at a school function.  And with respect

A-284

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM
NYSCEF DOC. NO. 8
INDEX NO. E2021-968
RECEIVED NYSCEF: 06/16/2021

PROCEEDING                                47

1    to that charge, I find he is guilty of that charge.  That

2    certainly as I said, given his age, his maturity, he

3    clearly presents as a mature, capable, young man.  That he

4    should have been aware that this was going to cause a real

5    problem here in the school community, and he should have

6    foreseen that this will be very disruptive, and I hope he

7    has learned from this experience such that that will not

8    happen again.

9              MR. G. LEROY:  You have no idea.

10             MS. REID:  So having found the two charges

11   sustained, I do not -- at this point, my job is to

12   determine whether there is a reasonable likelihood that

13   Case will be suspended in excess of ten days, because I

14   believe he is a student identified with a disability.  Is

15   that correct?

16             MR. EVANS:  Yes.

17             MS. REID:  So my charge is do I think it's

18   reasonably likely at this point that this action that I

19   found him guilty of is likely to result in a total

20   suspension of ten days?  He has been suspended five days

21   to date, correct?

22             MR. EVANS:  Yes.

23             MS. REID:  So I will have to find that it's

24   likely that I'm going to impose a suspension or recommend

25   that the superintendent impose a suspension in excess of

26   an additional ten days -- or five days rather.  At this

A-285

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                                          RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 30 of 32

PROCEEDING                                    48

1     point, I do not believe that that is likely.  So I do not

2     believe we need to adjourn to the manifestation

3     determination process.  But I will proceed with the

4     penalty phase.  Before I do so, do we have anything

5     further from district counsel, from the superintendent?

6             All right.  So the penalty phase is a little bit

7     different.  This is where we get to hear from family, from

8     the district, about which penalty we think is appropriate

9     for Case based on the charges that I found him guilty of.

10    So as I said, I found him guilty of engaging in willful

11    acts which are disrupting the school community, as well as

12    engaging in off-campus misconduct that is disruptive and

13    he should have anticipated would be disruptive.

14            So our task now is to hear a little bit about

15    whether Case has any prior discipline, how he has been in

16    school.  I understand that you have some character

17    references you'd like me to consider as well.  And just so

18    everybody is clear, I will not be reaching a final

19    recommendation at the end of this hearing.

20            MS. LEROY:  Okay.

21            MS. REID:  I will defer that.  I like to go back

22    and review everything that I have in the file, and I'll

23    prepare a written recommendation that will then go to the

24    superintendent of schools.  I'll take everything you have

25    under consideration at that time.

26            MS. LEROY:  Okay.

A-286

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM          INDEX NO. E2021-968
NYSCEF DOC. NO. 8                                          RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 31 of 32

PROCEEDING                                            49

1          MS. REID:  Typically, the district would

2     actually go first because they have the burden of proof.

3     But I'll take these now, ma'am.

4          All right.  So, Mr. Evans, do you want to get

5     started with what would you like the district to know with

6     regard to penalty in this case?

7          MR. EVANS:  Just other than the fact that it was

8     a substantial disruption, not just within the school but

9     within the school community.  And you know, while I've

10    realized that Case isn't the one that attached the Black

11    Lives Matter fist to the post, the fact that he's a

12    student in the Public Safety Program at BOCES, that I find

13    it very hard to believe that in the world of public

14    safety, that the things going on in the world around us

15    right now aren't a topic of discussion in class, and the

16    idea that these students were, you know, and Case being

17    the one we're talking about right now, completely

18    oblivious to the fact that, you know, a trial was going

19    on, that the image that is represented in the picture, you

20    know, clearly depicts the George Floyd situation.

21          The fact that Case admitted to me when we

22    discussed the other photo that, you know, that he took the

23    other photo of the two other students, occurred in school.

24    It was either posted or shared to those other students.

25    Granted that was a month ago, but the two photos are very

26    similar in nature, and as a student of the Public Safety

A-287

FILED: SULLIVAN COUNTY CLERK 06/16/2021 03:24 PM INDEX NO. E2021-968
NYSCEF DOC. NO. 6 RECEIVED NYSCEF: 06/16/2021

Case 7:21-cv-06008-NSR-AEK   Document 64-9   Filed 06/12/23   Page 32 of 32

PROCEEDING 50

1     Program, I think that's something that really needs to

2     kind of be taken into account. That there is an awareness

3     of what's going on in our world today, and that both of

4     these images negatively represent someone who is studying

5     law enforcement, with an intent to go into law

6     enforcement.

7         So, you know, I think that at some point needs

8     to kind of factor into this, and that the perception of

9     those images, what it depicts, is racist in nature. And

10     that is what has caused a great deal of all of the unrest

11     throughout the school district. So I hope that, you know,

12     from this experience, you know, Case has learned some

13     valuable lessons that will serve him better down the road.

14         MS. REID: Could you tell us a little bit about

15     Case's disciplinary history? Is this the first time

16     you're seeing Case in a superintendency line?

17         MR. EVANS: I have not seen Case in the

18     superintendency area and in looking through his

19     disciplinary history, Case has been a good student here at

20     LMCS and has not been one that's frequently in the

21     principal or superintendent's office.

22         MS. REID: How about attendance? Is Case a

23     reasonably dutiful student in terms of attendance?

24         MR. EVANS: Actually, the majority of the

25     disciplinary things that are in his history are being late

26     to class or late to school.

A-288

# EXHIBIT J

A-289



D000121

A-290

# EXHIBIT K



A-292

# EXHIBIT L



A-294

# EXHIBIT M

**A-295**

 Gmail

Shirlee Davis <shirlee.davis@lmcs.us>

### Fwd: ..?
1 message

**Jillian Hoag** <jillian.hoag@lmcs.us>
To: Shirlee Davis <shirlee.davis@lmcs.us>

Tue, Apr 20, 2021 at 7:52 AM

Good Morning Shirlee,

I had a student email me this last night. I responded to the student saying that the district is aware of the situation and is looking into the matter. I also thanked them for showing bravery enough to alert a teacher. I am not sure if the district already has a photograph of this, but note in the student email that on top of the two students in the photograph, the student who is taking the photograph is also identified.

If you need anything further, please let me know.

Thank you,

---------- Forwarded message ---------
From: ███████
Date: Mon, Apr 19, 2021 at 8:47 PM
Subject: ..?
To: Jillian Hoag <jillian.hoag@lmcs.us>

Good evening,

I don't want to interrupt your night but I saw something that got posted on social media by some kids at our school that was beyond uncomfortable to see. I feel like I can confide in you as a teacher so I'm wondering what I am supposed to do. I took a screenshot of the post and I'm going to attach it to this email. I don't know what you can do but I'm hoping you can do something about it. I feel that posts like these can make students feel unsafe in their own school.

Thank you,

███████

(The kids in the picture are M███ M███, Case Leroy, and J███ G███ is taking it)



D000072

A-296



\-\-
Jillian Hoag
High School English Teacher- Grades 11/12
Livingston Manor Central School

D000073